## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

HUAWEI TECHNOLOGIES CO. LTD.,

                Plaintiff,

    v.

VERIZON COMMUNICATIONS, INC., et al.

                Defendants.

---

VERIZON BUSINESS NETWORK
SERVICES, INC., et al.

                Counterclaim-Plaintiffs,

v.

HUAWEI TECHNOLOGIES CO. LTD.,
et al.

                Counterclaim-Defendants.

**No. 2:20-cv-00030-JRG**

Jury Trial Demanded

## HUAWEI'S RESPONSE TO COUNTERCLAIM PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ..................................................................................................... 3

    A.  "Round trip delay" terms.......................................................................... 3

        1.  Verizon's proposal contradicts the prosecution history and ensnares the prior art that this limitation was meant to distinguish................................. 4

        2.  Verizon's attempt to give examples of the "reflects" term's scope lacks intrinsic support further illustrates the term's indefiniteness................... 8

        3.  Verizon's proposal would render the "reflects" limitation superfluous. ................. 11

    B.  "Digital wrapping circuit" ...................................................................... 12

    C.  Time stamp insertion terms .................................................................... 14

    D.  Terms Addressed Under Section 112 ¶ 6. .............................................. 17

        1.  "Module" terms .................................................................................. 17

        2.  "Code to perform"............................................................................... 21

    E.  Moot disputes ......................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advanced Ground Info. Sys. v. Life360, Inc.*
No. 14-80651, 2014 WL 12652322 (S.D. Fla. Nov. 21, 2014.................................. 22

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*
811 F.3d 1334 (Fed. Cir. 2016)............................................................... 11

*Aristocrat Techs., Austl. PTY Ltd. v. Int'l Game Tech.*
521 F.3d 1328 (Fed. Cir. 2008)........................................................ 2, 21, 22

*Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*
533 F.3d 1362 (Fed. Cir. 2008)............................................................ 7, 16

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*
382 F. Supp. 3d 586 (E.D. Tex. 2019)........................................................ 22

*Cypress Lake Software, Inc. v. ZTE (USA)*
No. 6:17-cv-00300-RWS, 2018 WL 4035968 (E.D. Tex. Aug. 23, 2018)............................ 22

*Egenera, Inc. v. Cisco Systems, Inc.*
No. 16-11613, 2018 WL 717342 (D.Mass. Feb. 5, 2018) ....................................... 22

*Global Equity Mgmt. (SA) Pty. Ltd. v. Expedia, Inc.*
No. 2:16-cv-00095-RWS-RSP, 2016 WL 7416132 (E.D. Tex. Dec. 22, 2016)....................... 22

*Grecia v. Samsung Elecs. Am., Inc.*
780 F. App'x 912 (Fed. Cir. 2019) .................................................... 20, 22

*Kinik Co. v. Int'l Trade Comm'n.*
362 F.3d 1359 (Fed. Cir. 2004)............................................................ 7, 16

*Media Rights Techs., Inc. v. Capital One Fin. Corp*
800 F.3d 1366 (Fed. Cir. 2015) ............................................................. 20

*Nautilus, Inc. v. Biosig Instruments, Inc.*
572 U.S. 898 (2014)......................................................................... 3

*Novartis Pharm. Corp. v. Abbott Labs*
375 F.3d 1328 (Fed. Cir. 2004)............................................................ 3, 12

*Power Mosfet Techs., L.L.C. v. Siemens AG*
378 F.3d 1396 (Fed. Cir. 2004)............................................................. 11

*Verint Sys. Inc. v. Red Box Recorders Ltd.*
  166 F. Supp. 3d 364 (S.D.N.Y. Jan. 4, 2016) ........................................................................ 22

**Statutes**

35 U.S.C. § 103 .......................................................................................................................... 11

35 U.S.C. § 112 ..................................................................................................................... passim

## I.   __INTRODUCTION__

Huawei submits this claim construction brief in response to Verizon's opening claim construction brief for the '111 and '288 Patents (the "Verizon Patents") (Dkt. No. 84 "Op. Br.").

As an initial matter, both parties put forward a number of non-"means for" terms to be construed under § 112 ¶ 6 in their cross-briefing.  But as Huawei explained in its opening brief related to the Huawei's patents, § 112 ¶ 6 should not apply to non-"means for" terms where (1) a POSITA would understand the claim term to refer to known structure, including known computing structure such as a general purpose computer or processor or (2) the claim term as a whole specifies an objective and explains how hardware/software operates within the context of the claimed invention to achieve it.  Dkt. 82 at 28 ("Huawei Br.") (citing cases).

As such, step one of the means-plus-function analysis should resolve the issue for both Huawei's patents and Verizon's patents—resulting in none of these non-"means" terms implicating § 112 ¶ 6.  This is because the patents refer to existing OTN technology (such as the G.709 and other standards) that would connote to a POSTIA at least general purpose structural components—a fact on which both parties seem to agree.  *See, e.g.*, Op. Br. at 11-12 ("[A] POSITA would understand these disclosures of an ITU-T G.709 network interface to be a sufficient recitation of structure for performing the claimed functionalities"); Min Decl. at ¶¶ 90, 105, 112 ("However, a POSITA would understand that every G.709 network interface must include, at a minimum, certain structural components, such as a laser (transmit-side), photo sensor (receive-side), frame buffer, and a processor."); *accord* Huawei Br. at 29-30.  Given the disclosures of OTN networks and standards in Huawei's and Verizon's patents, none of these terms should get past the first-step of a means-plus-function analysis under § 112 ¶ 6.

According to Verizon, however, many of Huawei's patents implicate § 112 ¶ 6.  If that is the case, then Verizon's patents also implicate § 112 ¶ 6.  Moreover, Verizon's claims would be invalid under step-two of the means-plus-function analysis for failing to provide any algorithms or any specific structures that correspond to the claimed functionality, beyond general purpose computers.  *See Aristocrat Techs., Austl. PTY Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337 (Fed. Cir. 2008) (noting with respect to step two "[t]he inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing that structure.").

Putting § 112 ¶ 6 aside, there are only three discrete sets of terms for the Court to address: (1) the "reflects" terms, (2) the "digital wrapping circuit" term, and (3) the time stamp insertion terms.  With the first two, the Verizon Patents fail to provide sufficient context for one of ordinary skill in the art to understand the scope of these terms and the associated claims with reasonable certainty.  Verizon's attempts to contrive a scope contradict the intrinsic record and should be rejected.  With the time stamp insertion terms, Verizon, under the guise of plain meaning, attempts to improperly expand these terms' scope to cover the very prior art they were meant to exclude during prosecution.  Huawei's analysis on the other hand is supported by the specification, file history, and extrinsic evidence.  For the reasons discussed below, the Court should adopt Huawei's proposals.

## II.   ARGUMENT

### A.  "Round trip delay" terms

| Term (claims) | Verizon's Proposed Construction | Huawei's Proposed Construction |
|---|---|---|
| "wherein the first time stamp comprises information reflecting a round trip delay of the network" ('111 patent, claims 6, 16, 22, and 30)<br><br>"wherein the information of the first time stamp reflects a round trip delay of a network" ('111 patent, claim 12)<br><br>"wherein the information reflects a round trip delay of a network;" ('111 patent, claims 1 and 26) | Plain and ordinary meaning;<br><br>Alternatively, "wherein the first time stamp comprises information used to determine a round trip time of a signal traveling within the network" / "wherein the information of the first time stamp is used to determine a round trip time of a signal traveling within a network" | Indefinite |

The claims are indefinite because the term "wherein the information of the first time stamp reflects a round trip delay"[1] "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014); Ex. A, ("Melendez Decl.") at ¶¶ 32-46.  As an initial matter, this phrase is not a term of art—it does not have a widely recognized meaning in the field of latency measurements such that technical dictionaries could resolve this dispute.  Melendez Decl. at ¶ 32.  While this alone does not render the term indefinite, it does mean that the patent's intrinsic record must give meaning to the term.  Indeed, "[i]f the disputed claim term 'is a term with no previous meaning to those of ordinary skill in the prior art, its meaning, then, must be found elsewhere in the patent.'" *Novartis Pharm. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1334 (Fed. Cir. 2004) (citation omitted) (finding that the term "lipophilic component" did not have a "well-defined meaning to those of skill in the

---

[1] For clarity, the "reflects" term or limitation will be used in this brief to refer to all three variations of this term since the parties are treating these the same for claim construction purposes.

art" requiring the court to "turn to the intrinsic evidence," even though Novartis and its expert observed "lipophilic" itself has a well-defined meaning to those of skill in the art).[2]  Here, however, the '111 Patent never uses the phrase "reflects a round trip delay" or any variant.  Nor does the '111 Patent provide any hint at how a round trip delay can be "reflected" in information of the first time stamp or what that means.  *See* Melendez Decl. at ¶¶ 32-40.

Having no intrinsic support to give any meaning to this term, Verizon (based solely on extrinsic expert say so) attempts, post hoc, to provide a construction for this term to save the claim—namely, that "information of the first timestamp 'reflects' a round trip delay of the network because it is used as part of the round trip delay measurement."  Op. Br. at 5.  But Verizon's proposal is inconsistent with the intrinsic record and wrong for several reasons: (1) Verizon's proposal would recapture the prior art this limitation was added to overcome, (2) Verizon's examples of how this term would be understood only underscore its ambiguity, and (3) Verizon's proposal renders this claim language superfluous of other limitations.

### 1. Verizon's proposal contradicts the prosecution history and ensnares the prior art that this limitation was meant to distinguish.

Verizon's new proposal would expand the scope of this claim to cover the very prior art this term was added to overcome in prosecution.  *See* Ex. B, VZ-HW-EDTX-0000001–337 at 262-63, 294, 304 ("'111 Patent File History").  After numerous rejections and amendments but before the addition of the disputed term, the PTO examiner rejected the claims under § 103 as being unpatentable over Edmison in view of Ofek and Fujimori.  *Id.* at 262-63.  The examiner mapped most of the elements to Edmison, including the limitations the first time stamp, the second time

---

[2] The issue is not merely what the word "reflect" means, as Dr. Min and Dr. Melendez appear to agree on that word's meaning while still disagreeing on the scope of the phrase "reflects a round trip delay."  *Cf.* Melendez Decl. at ¶ 36 *with* Min Decl. at ¶ 67 n.8.  As such, the "reflects" term must be construed in the context of the '111 Patent's intrinsic record, including the file history.

stamp, information of the first time stamp included in the second time stamp, and measuring the round trip delay. *Id.* Although the examiner found that "Edmison … does not explicitly disclose 'extracting information of the first time stamp,'" he found the extracting functionality was rendered obvious by "using Fujimori to modify Edmison's method." *Id.* at 263-64.

In particular, beginning with the first limitation, the examiner found Edmison's Node Z receives a first time stamp **110** as shown below in red (including information time $T_{A1}$ representing the most current network time at Node A when the stamp was initially transmitted). *See* Melendez Decl. at ¶ 42 (citing prosecution history and annotating Edmison in accordance with examiner's analysis); *see also* Ex. C, Edmison at ¶ 63:



Next, Node Z generates a second time stamp **114** (which includes information of the first time stamp such as time $T_{A1}$) and transmits it back to Node A. *See* Melendez Decl. at ¶ 43; Edmison at ¶¶ 63-64. Time stamp **114** also includes times $T_{Z1}$ (destination receive time) and $T_{Z2}$ (destination transmission time). *See* Melendez Decl. at ¶ 43 (annotating prior art); Edmison at ¶¶ 63-64:



Node A can then calculate the round trip delay by taking the source receive time ($T_{A2}$) minus the

source transmission time ($T_{A1}$) minus the destination delay time ($T_{Z2} - T_{Z1}$).  *See* Melendez Decl.

at ¶ 44 (annotating prior art); Edmison at ¶¶ 50, 65:

> **[0065]**   The probe packet is forwarded to the PPM of the source network element A. Next, the calculation $T_{A2} - T_{A1} - (T_{Z2} - T_{Z1})$ is made and this measures data-plane only round trip delay. Because the time stamps are added in the packet

Notable for the claim construction dispute here, information of the first time stamp ($T_{A1}$)

is used as part of the round trip delay measurement in Edmison ($T_{A2} - \mathbf{T_{A1}} - T_{Z2} - T_{Z1}$), Melendez

Decl. at ¶ 45—**which is the very thing Verizon now argues the "reflects" limitation covers.**

*See* Op. Br. at 5-6 ("[T]he information 'reflects' a round-trip delay because it is used as part of the

round-trip delay measurement.").

In response to this rejection, Verizon added the "reflects" limitation at issue to overcome

the Edmison combination.  '111 Patent File History at 294.  And Verizon expressly represented

that the "reflects" limitation mooted the examiner's arguments and could not be found in the prior

art, including Edmison:

> Applicant respectfully submits that neither the cited portions of Edmison, Ofek, and Fujimori, nor Edmison, Ofek, and Fujimori generally, disclose, or even suggest, "extracting information of the first time stamp from the first overhead of the first optical transport unit frame, <u>wherein the information reflects round trip delay of a network</u>"[.]

*Id.* at 304 (emphasis by Verizon).

In summary, adding the "reflects" limitation and distinguishing it from the prior art was necessary to overcome the examiner's obviousness rejection. Accordingly, Verizon cannot now expand the scope of its claims to recapture the very prior art subject matter this limitation was meant to exclude. *See Kinik Co. v. Int'l Trade Comm'n.*, 362 F.3d 1359, 1365 (Fed. Cir. 2004) ("Claims cannot be construed as encompassing the prior art that was . . . disclaimed during prosecution."). Indeed, it would "effect [a] nonsensical result" to construe these claims to include the very thing they were amended to exclude. *Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1370 (Fed. Cir. 2008) ("[I]f 'syllabic elements' included words, then Rabiner's disclosure of matching with words would teach the portion of claim 10 that was amended to distinguish Rabiner. We decline to adopt a construction that would effect this nonsensical result."). That Verizon's attempt to identify a scope for this term blatantly encompasses the prior art shows these claims do not have a reasonably certain scope.[3]

---

[3] Verizon's Opening Brief fails to meaningfully address Dr. Melendez's analysis of the prosecution history. First, Verizon incorrectly suggests that this limitation was introduced solely to overcome Fujimori. But this is wrong. The examiner's rejection was a § 103 obviousness combination where Fujimori was cited in the combination to disclose the "extracting," and it was Edmison that the examiner cited for the first time stamp, second time stamp, information of the first time stamp, and measuring the round trip delay. *See* '111 Patent File History at 262-63. Next, Verizon and its expert, Dr. Min, incorrectly argue that "in Edmison [$T_{A1}$] is completely rewritten by 'the most current network processor time' and not used to determine a round trip time of a signal traveling within the network." Op. Br. at 7. This argument, parroted from the file history, is plainly false on its face and was repeatedly rejected during prosecution. Edmison explains that $T_{A1}$ represents the "the most current network processor time" when it is "filled in" to probe packet 108 at "source network element A" before being transmitted to destination Z. Edmison at Fig. 4, ¶ 63. Nowhere does Edmison say that $T_{A1}$ is rewritten. To the contrary, Edmison makes clear that

7

### 2. Verizon's attempt to give examples of the "reflects" term's scope lacks intrinsic support further illustrating the term's indefiniteness.

While Verizon and its expert suggest several examples of what Verizon alleges falls within the scope of the "reflects" term, none of them are supported by any intrinsic evidence.  No example comes from the specification.  And there is nothing to tie any of these arguments to the scope of the term "reflects a round trip delay" as set for in the patent.  Rather, these examples merely assume and rely on Verizon's improper construction—that "reflects" means anything used as part of the round trip delay measurement.  At best, these examples show the ambiguity in this term.

For example, Verizon suggests that "the first timestamp can be used to determine the one-way delay, which is merely doubled to obtain the round-trip delay."  At first blush, this simplistic example may seem compelling—however, it contradicts the intrinsic record.  The patent explains "round-trip latency … measures one-way latency from a source to a destination plus one-way latency from the destination back to the source," not just twice the one-way latency from a source to a destination.  '111 Patent at 1:57-60.  The '111 Patent also expressly recognizes that the latency in a network may vary.  *Id.* at 2:3-7.  Moreover, contrary to Verizon's suggestion, nothing in the patent suggest calculating a one-way delay with the first time then and doubling it to find the round trip delay—or describes how that could even work.  Instead, every example in the '111 Patent

---

$T_{A1}$ is still the source transmission time for node A (even after traveling to node z and back) when it describes using $T_{A1}$ to calculate the round trip delay.  *Id.* at ¶¶ 50, 65 (describing $T_{A1}$ in round trip delay measurement as "source transmission time").  Indeed, the formula described in Edmison would be non-sensical if $T_{A1}$ was being updated at every (or any) instance to be the most current network processor time.  *Id.*  If that was not enough, the subscript $_A$ should have given it away that this time relates to network element A.  The examiner obviously understood this.  *See* '111 Patent File History at 262 (describing "tA1, most current processor time ***at node A at the time of transmission***" (emphasis added)).  Frankly, that Dr. Min—Verizon's purported expert—would put forth such a baseless argument suggests that he has not performed a reliable analysis and his testimony should be disregarded.

involves using at least the two time stamps to measure the round trip delay.  Melendez Decl. at ¶¶ 34-35; *see also* '111 Patent at Fig. 6, 606-608, 7:30-56; Fig. 7, 707-709, 8:41-67, 3:66-4:25.  To even provide a hypothetical where doubling the one-way delay would equal a round trip delay, Verizon's expert, Dr. Min, has to "suppose the path taken from a source to a destination is the same" as destination to source, assume "symmetric traffic conditions," and ignore a "possible difference [in] the processing times" in the different directions.  Min. Decl. at ¶ 61.  Even with these assumptions, Dr. Min concedes his illustration is ***still*** a "simplification" because it ignores "processing time associated with the source and destination nodes."  *Id.* at ¶ 62.  Absent these suppositions and assumptions, a doubled one way delay would not equal a later measured round trip delay.[4]  At best Dr. Min's argument, shows a POSITA would be left guessing as to whether this "reflects" limitation should be limited to scenarios where the round trip delay equals twice the one-way delay (that is, where the time stamps travel the same path, the network is synchronous, there are no differences on processing times, there is no processing time associated with the source and destination nodes).  That Verizon seeks a broader construction beyond this scenario highlights the lack of a reasonably discernible scope for this term.

Likewise, Dr. Min's hypothetical in which he suggests that "the first timestamp could be the round trip delay"[5] also relies on unfounded assumptions that contradict the disclosure of the

---

[4] To even calculate a one way delay in Dr. Min's extremely simple example, Dr. Min even has to use **two** time stamps, t1 and t2, to perform the calculation: 2 ms – 0 ms = 2 ms.  Min. Decl. at ¶ 61.  Critically, however, the first time stamp in this example is t1, which is 0 ms, and nothing about 0 ms reflects even a one-way delay (absent Dr. Min's assumption that merely using that information in a calculation equates to "reflect[ing] a round trip delay").

[5] While somewhat unclear, Dr. Min appears to be suggesting that the "counters and 'time tracking devices" in his example are being updated with the current time.  Min. Decl. at ¶ 66.  Otherwise, Dr. Min's argument in this paragraph is internally inconsistent because he states the first time stamp t2 (shown at 2 ms) "could be the round trip delay" while saying that the round trip delay is 4 ms (describing it as "the time the claimed first timestamp [t2] is received").  *Id.*  Mere paragraphs

patent. Min. Decl. at ¶ 66. As an initial matter, Dr. Min's hypothetical conflates what delay is at issue. The '111 Patent talks about "round-trip latency … [being] one-way latency from a **source to a destination** plus one-way latency from the destination **back to the source**." '111 Patent at 1:57-60 (emphasis added). In the '111 Patent, it is the source node that generates the first time stamp. *Id.* at Fig. 6, Fig. 7, 3:16-26; 7:3-7; 8:16-19. As such, the round trip delay that Dr. Min's points to on the left side of his figure in ¶ 66 is wrong because round trip delay is not measured until a second time stamp is sent back to the source in his hypothetical, which is the right side.[6] Regardless, nothing in '111 Patent discloses or even suggests sending a prior one-way or round trip delay measurement in the time stamp. To the contrary, as Dr. Melendez explained, such a system would not "reflect[] 'a round trip delay of a network'" in the manner claimed because "such [an example] would not be the same 'the round trip delay of the network' that would subsequently be measured using the second time stamp" given that network conditions may fluctuate. Melendez Decl. at ¶ 36-39. Dr. Min's response is to suggest that the antecedent basis structure in the claims can be ignored, arguing that "[t]he information may reflect a round-trip delay because it is an approximation or proxy for the actual round-trip delay, which is measured later in the claim." Min Decl. at ¶ 65. But this argument too has no intrinsic support.

---

later, however Dr. Min argues the "reflects" term exclude instances where the value of the time stamp is updated to the current time. *See* Min. Decl. at ¶ 73. Specifically, when attempting (incorrectly) to distinguish the Edmison reference, Dr. Min claims that "[w]hile Edmison may use tA1 in the delay computation, this is not the same tA1 from the first timestamp (because the value has been updated to the most current network processor time)." Min. Decl. at ¶ 73 (citing to Verizon making this argument in prosecution to describe the scope of this claim term). According to that logic, t2 cannot "reflect the round trip delay" because the value of t2 is updated and therefore it is not the same t2 used in any round trip delay measurement.

[6] To make one way delay consistent (and half the round trip delay), Dr. Min implicitly makes the same set of assumptions that he made with his prior hypothetical.

Ultimately, none of Verizon's unsubstantiated examples provide any insight into the meaning of the phrase "information of the first time stamp reflects a round trip delay."  Every example relies on a litany of assumptions that have no support in the intrinsic evidence.  Yet, for these examples to "reflect" a round trip delay as Verizon argues, these assumptions are necessary.  As a result, a POSITA reviewing these claims would be left guessing as to how, when, and under what assumed network conditions this limitation would be met.  At best, Verizon's unsubstantiated examples illustrate how uncertain this term's scope is.

### 3.   Verizon's proposal would render the "reflects" limitation superfluous.

If accepted, Verizon's proposal would render this limitation superfluous, and as such its proposal is wrong.  *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1340; *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("[I]nterpretations that render some portion of the claim language superfluous are disfavored.").  Specifically, the claims at issue already have other limitations that require information from the first time stamp be used to measure the round trip delay.  Taking claim 1 for example, other limitations require:

- "extracting information of the first time stamp",

- including "part of the extracted information of the first time stamp" in a second time stamp, and

- "us[ing the second time stamp] to measure the round trip delay."

*See, e.g.*, '111 Patent, claim 1.  As such, the second time stamp includes extracted information of the first timestamp, which is used to measure the round trip delay.  Therefore, these limitations already require that "information of the first timestamp [namely, the information in the second time stamp] . . . . [be] used as part of the round trip delay measurement."  *Cf.* Verizon's Proposed Construction.  Thus, if Verizon's proposal is accepted, the phrase "information of the first time stamp reflects a round trip delay" would simply be duplicative of these other limitations and

superfluous.  Telling, however, is that the "reflects" term was specifically added in prosecution as the alleged point of novelty to overcome the examiner's §103 prior art rejections during prosecution *even though these other limitations already existed*.  *See* '111 Patent File History at 262-63, 294, 317-318; *see also* Melendez Decl. at p. 14-19.

In sum, "there would be no way for POSITA to somehow know, with any degree of certainty, what the scope of the claim term 'reflect[s]/[ing] a round trip delay of the network' means."  Melendez Decl. at ¶ 40.  Thus, the Court should find these claims indefinite.

### B.  "Digital wrapping circuit"

| Term (claims) | Verizon's Proposed Construction | Huawei's Proposed Construction |
|---|---|---|
| "digital wrapping circuit" ('111 patent and '288 patent, claims 4, 5, 8, 9, 14, 15, 18, 19, 29, 33) | Plain and ordinary meaning; <br><br> Alternatively, "an ITU-T G.709 telecommunications circuit" | Indefinite |

The term is indefinite under § 112 ¶ 2.  The term "digital wrapping circuit" is not a term of art.  Melendez Decl. at ¶ 47 (showing no use of this term other than the Verizon Patents).[7]  While in such circumstances the Court would normally fashion a definition for a term by reference to how the term is described in the specification,[8] here, the specification provides no meaningful way to understand this term.  Melendez Decl. at ¶ 49-50.

---

[7] Verizon and its expert attempt to sidestep this issue by focusing on just "digital wrapper," without the addition of circuit.  But that is not the claim term in dispute.  *Cf. Novartis*, 375 F.3d 1334 (finding that the term "lipophilic component" did not have a "well-defined meaning to those of skill in the art" requiring the court to "turn to the intrinsic evidence," even though Novartis and its expert observed "lipophilic" itself has a well-defined meaning to those of skill in the art).  As such, Verizon's supposed extrinsic evidence, related only to digital wrapping, is besides the point.

[8] *See Novartis*, 375 F.3d 1334 ("If the disputed claim term 'is a term with no previous meaning to those of ordinary skill in the prior art, its meaning, then, must be found elsewhere in the patent.'").

The Verizon Patents' specification does not use the term "digital wrapping circuit" and does not teach a person of skill in the art what a digital wrapping circuit is or what it might do. Melendez Decl. at ¶ 49.  While the term "circuit" is used in the Verizon Patents to refer to an integrated circuit in a different context, the digital wrapping circuit is not an integrated circuit as this would contradict the claim language.  *Id.* at ¶ 49-50.  In particular, the claims require there be an "overhead portion of the digital wrapping circuit," which indicates that the digital wrapping circuit cannot be hardware because hardware, such as an integrated circuit, does not have overhead portions.  *Id.* at ¶ 50; *see also, e.g.*, '111 Patent, claim 5.  And neither Verizon nor Dr. Min have argued that this refers to an integrated circuit.

While Verizon proposes a construction in its Opening Brief, this proposal is wrong.  As an initial matter, Verizon's construction in its Opening Brief is not the same as Verizon's original proposal for this term.  Originally, Verizon claimed that this term referred to an electrical component—that is, "an ITU-T G.709 network interface for generating digitally wrapped signals." Dkt. 59-3 at term No. 55.  But after Dr. Melendez explained the problems with such a construction, Melendez Decl. at ¶ 51-53, Verizon came up with a new "plain meaning" argument, arguing for the first time in its Opening Brief that this term refers to a "connection between nodes," which has nothing to do with generating signals.  Verizon's flip-flopping only affirms that this term lacks a defined plain meaning or discernible scope.

Moreover, Verizon's new construction still is not plausible.  As an initial matter, Dr. Min cites to no evidence for his claim that "circuit" here refers to a "connection between nodes" in the digital wrapping context.  This new argument also runs afoul of the same claim language as Verizon's last proposal because the "connections between nodes" have no overhead portion. Verizon's own extrinsic evidence confirms this.  For example, the Ciena publication explains that

OTN is a protocol for sending data over "optical light paths."  Op. Br. at 9.[9]  Optical light paths

are merely transmission mediums for carrying light.  As such, these "connections" do not have

overhead portions because overhead portion refers to an area in a data frame.  *See* Melendez Decl.

at ¶¶ 50-51.  As such, Verizon's new proposal contradicts the claim language and must be rejected.

Given that there is no discernable scope for this term, the claims are indefinite.  *Id.* at ¶ 54.

### C.  Time stamp insertion terms

| Term (claims) | Verizon's Proposed Construction | Huawei's Proposed Construction |
|---|---|---|
| "wherein the first time stamp was inserted into one of a frame alignment overhead portion, an optical channel transporting unit overhead portion, an optical channel data unit overhead portion, and an optical channel payload unit overhead portion of a first overhead of a first optical transport unit frame based on at least a characteristic of the first time stamp" ('288 patent, claims 1, 12) | Plain and ordinary meaning | "wherein a determination to insert the first time stamp into . . . was based on at least a characteristic of the first time stamp, . . ." |
| "wherein the first time stamp is inserted into one of the frame alignment overhead portion, the optical channel transporting unit overhead portion, the optical channel data unit overhead portion, and the optical channel payload unit overhead portion of the first overhead of the first optical transport unit frame based on at least a characteristic of the first time stamp" ('288 patent, claims 16, 26, 30) | Plain and ordinary meaning | "wherein determining to insert the first time stamp into one of . . . is based on at least a characteristic of the first time stamp, . . ." |

---

[9] To be clear, nothing in this evidence suggests the OTN protocol (or digital wrapping) is itself a
connection or link, and as Dr. Melendez explained a digital wrapper is merely an encapsulation of
frames of data.  Melendez Decl. at ¶¶ 50-51.

| | | |
|---|---|---|
| wherein the first time stamp is inserted into the one of the frame alignment overhead portion, the optical channel transporting unit overhead portion, the optical channel data unit overhead portion, and the optical channel payload unit overhead portion of the first overhead of the first optical transport unit frame based on at least a characteristic of the first time stamp" ('288 patent, claim 22) | Plain and ordinary meaning | "wherein determining to insert the first time stamp into the one of . . . is based on at least a characteristic of the first time stamp, . . ." |
| "transmitting the first time stamp associated with the first location inserted into one of a frame alignment overhead portion, an optical channel transporting unit overhead portion, an optical channel data unit overhead portion, and an optical channel payload unit overhead portion of a first overhead of a first optical transport unit frame based on at least a characteristic of the first time stamp to a second location via a network" ('288 patent, claim 6) | Plain and ordinary meaning | "transmitting the first time stamp associated with the first location, wherein a determination to insert the first time stamp into one of . . . was based on at least a characteristic of the first time stamp, . . ." |

Under the guise of plain meaning, Verizon attempts to read out this limitation—the alleged point of novelty for these patents, *see* Ex. D, Melendez Second Decl. at ¶ 34-39.  But the claims require something specific here: inserting the first time stamp within one of four different overhead potions "**based on**" "at least one of a *size* of the first time stamp, an *amount* of the first time stamp and a *type* of the first time stamp." *Id.* at ¶ 31-32; *see generally* '288 Patent, claims.  As Dr. Melendez explained, a POSITA would understand that "these claim terms require that the specific location(s) of insertion within the overhead, amongst the list of alternatives listed, is not fixed but rather is dependent upon at least a characteristic of *the* first time stamp." *Id.* at ¶ 33.

The specification confirms Dr. Melendez's interpretation:

In an exemplary embodiment, a time stamp may be associated with an Optical Transporting Unit (OTU) frame.  The time stamp may be inserted within an Overhead 301 of an Optical Transporting Unit (OTU) frame.  The size of a time stamp may vary.  For example, amount, size or type of information associated with the time stamp may affect the size of the time stamp.  In addition, other factors may be considered.  Therefore, a time stamp may be inserted within different locations

of Overhead 301 <u>depending on the characteristics</u>, size, amount, type, etc., <u>of the time stamp.</u>

'288 Patent at 6:31-40 (emphasis added).  Because the characteristics of the time stamp may vary, the system must evaluate these characteristics to determine where to insert the time stamp.  *Id.*  Otherwise, the insertion would not be *depending on* or *based on* the specific characteristics.  *See id.*

Moreover, during prosecution, Verizon expressly disclaimed any interpretation of these claim terms where a time stamp is inserted into a portion of the overhead based on simply identifying where the first time stamp is *supposed* to be inserted.

> In addition the "**inserting** the first time stamp into the portion of the optical channel overhead **based on identifying the first time stamp and inserting into the portion of the optical channel overhead that** [sic] [is] **assigned for time stamp**" disclosed by Ofek **is not** inserting the time stamp in one of the overhead portions '**based on at least a characteristic of the first time stamp**, wherein the characteristic of the first time stamp *is at least one of a size of the first time stamp, an amount of the first time stamp and a type of the first time stamp*.

Ex. E, '288 Patent File History p. 238 (bolded emphasis added) (underline and italics in the original); Melendez Second Decl. at ¶ 41.  Verizon cannot now attempt to recapture this claim scope.  *See Kinik*, 362 F.3d at 1365 ("Claims cannot be construed as encompassing the prior art that was . . . disclaimed during prosecution.").

Finally, Verizon's purported "plain meaning" argument seeks to improperly broaden the scope of these claims.  Specifically, Verizon argues that term is "passive" not "active," covering "any means of insertion (by any component)."  Op. Br. at 20.  This is wrong.  First, strictly looking at the claims, the limitations do not cover "any means of insertion," instead requiring the insertion into one of four overhead portions be ***based on*** a specific set of three characteristics.  Melendez Second Decl. at ¶ 31-43; *see also* '288 Patent, claims.  Second, this limitation also must not cover merely inserting the first time

stamp into a fixed portion of the optical channel overhead assigned for that timestamp because it would "effect [a] nonsensical result" to construe these claims to include the very thing they were amended to exclude.  *Bd. of Regents*, 533 F.3d 1370.  Accordingly, a construction is necessary to prevent Verizon from effectively reading out this limitation, which was the alleged point of novelty for these claims.

The intrinsic and extrinsic record make clear that a POSITA would understand the claimed "insertion was not previously assigned (e.g. the portion(s) of an overhead reserved for the first time stamp) based on it being the first time stamp, but rather ***determined*** depending upon evaluation of a feature or quality (characteristic) of the actual time stamp." Melendez Second Decl. at ¶ 34 (emphasis added).[10]  Thus, Huawei's proposal should be adopted.

## D.  Terms Addressed Under Section 112 ¶ 6.

### 1.  Module terms

| Term (claims) | Verizon's Proposed Construction | Huawei's Proposed Construction |
|---|---|---|
| "receiving module" ('111 and '288 patent, claims 12 and 16) | Plain and ordinary meaning; alternatively, if construed as 112(6): Function: receiving a timestamp[11] Structure: an ITU-T G.709 network interface as described, e.g., in 2:8-4:59, 6:55-7:2, and Figs. 1-3. | Based on positions taken by Verizon, these terms are governed by 35 U.S.C. § 112 ¶ 6 and lack corresponding structure Function: As detailed in the corresponding claim limitation. |

---

[10] As an alternative, the Court could simply construe this claim term as **not covering** any insertion "based on identifying the first time stamp and inserting [it] into the portion of the optical channel overhead that [is] assigned for time stamp."  *Cf.* '288 Patent File History p. 238.

[11] This functionality is too limiting as the receiving module must be able to functionally "receive[] a first [or second] time stamp" and (ii) "extract[] information of the first time stamp from the first overhead…[wherein the information of the first time stamp reflects a round trip delay of a network]."  *See* Melendez Decl. at ¶¶ 58, 62.

| "processing module" ('111 and '288 patent, claims 12, 16, and 20) | Plain and ordinary meaning; alternatively, if construed as 112(6): Function: storing the information of the first time stamp from the first overhead of the first optical transport unit frame (claim 12); processing the second time stamp associated with the second location to measure the time of a signal through the network. Structure: a processing unit, a storage unit and/or other various network elements as described, e.g., in the '111 patent at 2:18-5:2; 6:65-7:13; Figs. 1-3. | Based on positions taken by Verizon, these terms are governed by 35 U.S.C. § 112 ¶ 6 and lack corresponding structure |
|---|---|---|
| "generating module" ('111 and '288 patent claims 12, 16) | Plain and ordinary meaning; alternatively, if construed as 112(6): Function: generate a second time stamp based at least in part on the extracted information of the first time stamp associated with the first location (claim 12); generate a first time stamp associated with the first location (claim 16). Structure: an ITU-T G.709 network interface as described, e.g., in the '111 patent at 2:18-5:2; 6:65-7:13; Figs. 1-3. | Based on positions taken by Verizon, these terms are governed by 35 U.S.C. § 112 ¶ 6 and lack corresponding structure |
| "transmission module" ('111 and '288 patent claims 12, 14-16, 18, and 19) | Plain and ordinary meaning; alternatively, if construed as 112(6): Function: transmitting a timestamp Structure: an ITU-T G.709 network interface [as described, e.g., in '111 patent at 2:18-4:59; 6:55-7:3; Figs. 1-3] | Based on positions taken by Verizon, these terms are governed by 35 U.S.C. § 112 ¶ 6 and lack corresponding structure |

According to Verizon, the various "unit" and "module" terms recited in Huawei's patents lack corresponding structure, while the "module" terms recited in Verizon's patents do not.  *See generally* Dkt. 59-1 (Joint Claim Construction and Prehearing Statement, Ex. A).  For example, Verizon contends that the following '433 Patent term is governed by § 112 ¶ 6: "an acquisition unit configured to acquire N 66B coding blocks each of which contains 64B."  Conversely, it contends that the following '288 Patent term is not governed by § 112 ¶ 6: "a receiving module at

a second location to receive a first time stamp associated with a first location inserted into one of a frame alignment overhead portion."  Similar exemplary terms are shown below:

| Huawei Patent Term | Verizon Patent Term |
|---|---|
| "a first processing unit" ('236 patent) | "processing module" |
| "a client signal byte number Cn generating unit" ('505 patent) | "generating module" |
| a sixth unit configured to form an Optical Channel Transport Unit-k (OTUk) frame including the OPUkframe for transmission ('505 patent) | "transmission module" |

Both of these sets of terms recite a "unit" or "module" configured to provide OTN capability, e.g., receive a particular type of data.  According to Verizon, its terms should be treated differently because a POSITA would understand the Verizon Patents to refer to G.709 capability. Op. Br. at 11-12 ("[A] POSITA would understand these disclosures of an ITU-T G.709 network interface to be a sufficient recitation of structure for performing the claimed functionalities.").  But those arguments apply with equal weight to Huawei's G.709 patents as explained in Huawei's opening claim construction brief.  Huawei Br. at 29-30 (explaining that each of the Huawei G.709 patents refer to OTN capability); Dkt. 82-11 at ¶¶ 106-07, 109-10, 112 (testifying that a POSITA would understand the Huawei G.709 patents to refer to known OTN structure).  Indeed, Verizon's expert Dr. Min testified that these "module" terms are structural because: "a POSITA would understand that every G.709 network interface must include, at a minimum, certain structural components, such as a laser (transmit-side), photo sensor (receive-side), frame buffer, and a processor.").  Min Decl. at ¶¶ 90, 105, 112.  Nothing about this statement is specific to the Verizon Patents.  If that statement is correct, it only confirms that the alleged § 112 ¶ 6 terms in Huawei's patents are also structural.

19

As such, Verizon has failed to show that the "module" terms in its patents should be treated differently from the "module" terms in Huawei's patents.  If the "modules" in Verizon's patents provide sufficient disclosure of structure to avoid the application on § 112 ¶ 6 at the first step of the analysis, then Huawei's patents certainly provide that much disclosure and more.  *See* Huawei Op. Br. at 29-30.

If the Court concludes that those terms in Huawei's patents are governed by § 112 ¶ 6, however, it should reach the same conclusion with respect to these "module" terms in the Verizon Patents because Verizon is merely relying on the G.709 standard for general purpose structures.  *See also* Melendez Decl. at ¶¶ 58-89.  Moreover, under step two of the § 112 ¶ 6, Verizon's claims involving the "module" terms would be indefinite.  The Verizon Patents fail to disclose any specific algorithm or specifically configured structures for each of their "module" terms.  As such, under step two of the § 112 ¶ 6 analysis, Verizon's claims would be indefinite.  *See, e.g.*, *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800  F.3d 1366, 1374 (Fed. Cir. 2015) (claimed "compliance mechanism" invalid under § 112 ¶ 6 where "the specification fails to disclose an operative algorithm" for the claimed functions).  Indeed, the claims from Verizon's patents involving "module" terms merely describe "'the results of the operation of an unspecified algorithm' [which] is not sufficient to transform the disclosure of a general-purpose computer into the disclosure of sufficient structure to satisfy § 112 ¶ 6" at step two of the analysis.  *Grecia v. Samsung Elecs. Am., Inc.*, 780 F. App'x 912, 916-17 (Fed. Cir. 2019); *see also* Melendez Decl. at ¶¶ 58-89.  For example, the specification does not describe any algorithm to determine latency in an Optical Transport Network as Verizon claims (Op. Br. at 10)—instead, it just claims a result (i.e. measuring the round trip delay) to be achieved by some undisclosed hardware, software or algorithm.  *Cf.* '111 and '288 Patents, Claims 16 *with* Melendez Decl. at ¶¶ 68-73.  Likewise, the

specification provides no algorithms for how to generate and transmit a first time stamp that specifically comprises information reflecting a round trip delay or that is inserted into a particular overhead portion based on certain characteristics—it merely states that these functions happen. *Cf.* '111 and '288 Patents, Claims 16 *with* Melendez Decl. at ¶¶ 74-89. While one of ordinary skill might be aware of ways to create such algorithms to achieve this functionality, the problem is that the specification discloses none. *Aristocrat*, 521 F.3d at 1337 ("The inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing that structure.") (quotation omitted).

In summary, as Huawei explained, the various "unit" and "module" terms recited in Huawei's patents and Verizon's patents do not implicate § 112 ¶ 6 at step one of the analysis through the disclosure of OTN networks and applicable standards. Huawei Op. Br. at 29-30. That should end the § 112 ¶ 6 analysis for these non-"means" terms. But if that is not the case, then Verizon's patents are invalid under step two of the § 112 ¶ 6 analysis for failing to disclose any algorithms or corresponding structure.[12]

### 2. "Code to perform"

| Term (claims) | Verizon's Proposed Construction | Huawei's Proposed Construction |
|---|---|---|
| "A non-transitory computer readable storage media comprising code to perform the acts of the method of claim [1/6/22]" ('111 and '288 patent, claims 23-25) | Plain and ordinary meaning | Indefinite<br><br>In addition, based on positions taken by Verizon, these terms are governed by 35 U.S.C. § 112 ¶ 6 and lack corresponding structure |

As with the "module" terms, Verizon argues these are not § 112 ¶ 6 terms because "[a] POSITA would have understood the disclosed nodes to provide sufficient disclosure for the

---

[12] In contrast, Huawei has identified algorithms associated with the various "module" and "unit" terms in its asserted patents should § 112 ¶ 6 apply. *See* Dkt. 59-1.

G.709-compliant network interface functionalities recited in these claims." Op. Br. at 10; Min at Decl. ¶ 82. Accordingly, if the Court concludes that a POSITA would understand the "code to perform" of Verizon's patents to refer to known OTN structure, it should reach the same result with respect to Huawei's patents.

Conversely, if the Court concludes that the Huawei patent terms are governed by § 112 ¶ 6, Verizon's "code to perform" claims also implicate § 112 ¶ 6. The mere fact that the claims use the words "code to perform" as opposed to "module" makes no difference if the disclosure of the G.709 standard is not sufficient to avoid the application of § 112 ¶ 6.[13] The Verizon Patents' specification and claims do not describe what code is included in the "code to perform," how the code for the various steps of the incorporated method claims interact with each other, or how the code interacts with other components referenced in the incorporated methods. Melendez Decl. at ¶¶ 55-57. The language itself—"code to perform the acts of [certain] method" claims in their entirety—strongly suggests that these claims were effectively meant to be a black box substitute for functionality. Indeed, the code itself, not even a general purpose processor running the code,

---

[13] *See e.g.*, *Global Equity Mgmt. (SA) Pty. Ltd. v. Expedia, Inc.*, No. 2:16-cv-00095-RWS-RSP, 2016 WL 7416132, at *27-29 (E.D. Tex. Dec. 22, 2016) (construing "code for" under § 112, ¶ 6 because it was "defined only by the function that it performs," and the claims neither recited the "objectives and operations" of the code nor specified "[h]ow the code interacts with other code.") *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 615 (E.D. Tex. 2019) (finding claims reciting "code for" performing the functions of "detecting" user input and "presenting" a "navigation control" or a "visual component" governed by § 112, ¶ 6 because "the term 'code for' is defined only by the function that it performs"); *Cypress Lake Software, Inc. v. ZTE (USA)*, No. 6:17-cv-00300-RWS, 2018 WL 4035968, at *9 (E.D. Tex. Aug. 23, 2018) (finding "the term 'code for' does not connote sufficiently definite structure"); *Egenera, Inc. v. Cisco Systems, Inc.*, No. 16-11613, 2018 WL 717342, *2, 5-6 (D.Mass. Feb. 5, 2018) (finding terms reciting "logic to" perform a special purpose computer function to be governed by § 112, ¶6.); *Advanced Ground Info. Sys. v. Life360, Inc.*, No. 14-80651, 2014 WL 12652322, *6-7, 8 (S.D. Fla. Nov. 21, 2014) (finding various claim terms reciting "CPU software for" performing special purpose computer functions to be governed by § 112 ¶ 6), *aff'd on other grounds*, 830 F.3d 1341 (Fed. Cir. 2016); *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 166 F. Supp. 3d 364, 379-381 (S.D.N.Y. Jan. 4, 2016) (finding "first computer application operative" subject to 112 ¶ 6).

purports to perform these actions.  As noted above, the Verizon Patents fail to disclose any

algorithms for achieving these results (such as measuring round trip delay).  *See also* Melendez

Decl. at ¶¶ 55-57. And describing the results alone does not suffice.  *Grecia*, 780 F. App'x 916-

17.  As such, the claims would be indefinite under step two of the § 112 ¶ 6 analysis.  *See id.*;

*Aristocrat*, 521 F.3d at 1337  ("The inquiry is whether one of skill in the art would understand

the specification itself to disclose a structure, not simply whether that person would be capable of

implementing that structure.") (quotation omitted).

In short, Verizon has failed to show that the "code to perform" terms in its patents should

be treated differently from the "module" terms in Huawei's patents.  If the Court concludes that

those terms in Huawei's patents are governed by § 112 ¶ 6, it should reach the same conclusion

with respect to these "code to perform" terms in the Verizon Patents.  *See also* Melendez Decl. at

¶¶ 55-57.  Moreover, because Verizon's patents do not disclose any algorithms to go with this

claimed "code to perform," these claims would be indefinite if governed by § 112 ¶ 6.  *Id.*

### E.  Moot disputes

| Term (claims) | Verizon's Proposed Construction | Huawei's Proposed Construction |
|---|---|---|
| "processing the second time stamp associated with the second location to measure a round trip delay of the network" ('111 patent, claim 30) | Plain and ordinary meaning;<br><br>Alternatively, "processing the second time stamp associated with the second location to determine the round trip time of a signal traveling within the network" | Indefinite<br><br>Alternatively, "the round trip delay." |

Huawei raised this term in claim construction given the clear antecedent basis issue.

While Verizon's original proposed construction failed to address the issue (*see* Dkt. 59-3 at term

No. 53), it appears the parties now agree this term should read "***the*** round trip delay."

| Term (claims) | Verizon's Proposed Construction | Huawei's Proposed Construction |
|---|---|---|
| "generating a first time stamp associated with the first location" ('111 patent, claims 6, 16, 22, 30; '288 patent, claim 6) | Plain and ordinary meaning; alternatively, "generating a first time stamp associated with a first location" | Indefinite<br><br>Alternatively, "a first location." |

Huawei raised this term in claim construction given the clear antecedent basis issue.

While Verizon's original proposed constructions failed to address the issue (*see* Dkt. 59-3 at term No. 54), it appears the parties now agree this term should read "*a* first location."

| Term (claims) | Verizon's Proposed Construction | Huawei's Proposed Construction |
|---|---|---|
| "the first time stamp is inserted in a first overhead of a first optical transport unit frame" ('111 patent, claim 1) | Plain and ordinary meaning | No construction necessary |
| "the characteristic of the first stamp is at least one of a size of the first time stamp, an amount of the first time stamp and a type of the first time stamp" ('288 patent, claims 1, 6, 12, 16, 22, 26, 30) | Plain and ordinary meaning | No construction necessary |
| "generating a second time stamp based at least in part on the extracted information of the first time stamp associated with the first location" ('111 and '288 patents, claims 1, 12, 22, 26) | Plain and ordinary meaning | No construction necessary |

To reduce the number of disputes, Huawei dropped these terms in connection with its P.R. 4-3 expert indefiniteness disclosure.  While there may have been some confusion on as to whether briefing from Verizon was still required, it appears the parties agree that these terms need not be construed.

Dated: November 20, 2020

Respectfully submitted,

/s/ Bradley W. Caldwell
Bradley W. Caldwell
Texas Bar No. 24040630
bcaldwell@caldwellcc.com
Jason D. Cassady
Texas Bar No. 24045625
jcassady@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
acurry@caldwellcc.com
Justin T. Nemunaitis
Texas Bar No. 24065815
jnemunaitis@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
(214) 888-4848

Gregory P. Love
Texas Bar No. 24013060
greg@lovetrialfirm.com
**LOVE LAW FIRM**
P.O. Box 948
Henderson, Texas 75653
(903) 212-4444

**ATTORNEYS FOR PLAINTIFF/
COUNTERCLAIM DEFENDANT HUAWEI
TECHNOLOGIES CO., LTD. AND
COUNTERCLAIM DEFENDANTS HUAWEI
TECHNOLOGIES USA, INC. AND
FUTUREWEI TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in

compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who

have consented to electronic service on November 20, 2020.  Local Rule CV-5(a)(3)(A).

/s/ Bradley W. Caldwell
Bradley W. Caldwell