IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD., <br><br>          Plaintiff, <br><br>     v. <br><br>VERIZON COMMUNICATIONS, INC., VERIZON BUSINESS NETWORK SERVICES, INC., VERIZON ENTERPRISE SOLUTIONS, LLC, CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, INC., VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, AND VERIZON SERVICES CORP. <br><br>          Defendants. | C.A. 2:20-cv-00030 <br><br> ~~FILED UNDER SEAL~~ <br><br> **REDACTED** |
| VERIZON BUSINESS NETWORK SERVICES, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, VERIZON SERVICES CORP., AND VERIZON PATENT AND LICENSING INC. <br><br>          Counterclaim-Plaintiffs, <br><br>     v. <br><br>HUAWEI TECHNOLOGIES CO. LTD., HUAWEI TECHNOLOGIES USA, INC., AND FUTUREWEI TECHNOLOGIES INC. <br><br>          Counterclaim-Defendants. | |

**VERIZON'S RESPONSE TO HUAWEI'S MOTION TO COMPEL VERIZON'S
<u>RESPONSES TO INTERROGATORIES NO. 16 AND 17</u>**

I.  **PRELIMINARY STATEMENT**

Huawei Technologies Co. Ltd. ("Huawei") has moved to compel further responses to two interrogatories (Nos. 16 & 17).  Huawei cites no authority, however, for the central proposition of its motion—namely, that multiple defenses and counterclaims are each viable "only if" (Mot. at 3) Defendants first formulate a specific royalty rate, royalty base, and other terms that would have complied with RAND if Huawei had offered them.  That may be one way to prove a claim.  But there is no basis for Huawei to say that it is the *only* way.  Huawei's motion reflects a fundamental misunderstanding of the law and of the nature of Defendants' defenses and counterclaims, despite the fact that Verizon's theories are spelled out in detail in 40-plus pages of interrogatory responses Huawei did not attach to its motion.  For these reasons, Huawei's motion to compel should be denied.

II.  **STATEMENT OF RELEVANT FACTS**

This case concerns patents that Huawei contends are essential to standards developed by the ITU Telecommunication Standardization Sector ("ITU-T") and its members—specifically, the G.709 and G.8032 standards.  Dkt. 153 ¶¶ 302-05, 310, 319; Dkt. 27 ¶¶ 270-71.  As a participant in the development of these two standards, Huawei made two contractual promises to ITU-T:  (1) it agreed to disclose patents and patent applications that relate to standards being developed by ITU-T it agreed to disclose any known patents or pending patent applications contained in any ITU-T standard proposal or related to the standards being developed by ITU-T, and (2) to the extent any of Huawei's patented technologies were incorporated into the standards, Huawei agreed to license such patents on RAND terms.  *Id.* ¶¶ 303-04, 323-37.

Defendants Verizon Communications Inc., et al. (collectively "Verizon") intend to show that Huawei failed to live up to *either* of these promises.  Huawei did not disclose its intellectual

1

property rights to the ITU-T during the development of the G.709 and G.8032 standards, even while it made suggestions to the working groups that the technologies Huawei was patenting be incorporated into the standards.  *Id.* ¶¶ 335, 338.  Huawei also flouted its RAND commitments in various ways, including by making only vague royalty demands on an unspecified base and refusing to provide Verizon basic information necessary for Verizon to evaluate Huawei's offers.  *Id.* ¶¶ 353-54.  Huawei refused, for example, to disclose how it arrived at its proposed royalty rate, or whether any other party has paid that rate for a license to the relevant patents.  Dkt. 153 ¶¶ 353-55.  Instead of negotiating in good faith with Verizon, and rather than giving Verizon basic information on why Huawei's proposals were supposedly RAND compliant, Huawei filed this lawsuit in the midst of the parties' negotiations without any impasse having been reached.  Ex. A (Verizon's Responses To Huawei's First Set Of Interrogatories (Nos. 16 and 17)) at 15-16.

During discovery, Verizon made no secret of its RAND-related positions.  They are set forth in detail in Verizon's Second Amended Answer and Counterclaims (Dkt. 153), and Verizon further expanded on them in over 40 pages of responses to Huawei's contention interrogatories.  Huawei, in contrast, ███████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████.[1]

### III. ARGUMENT

    A.    <u>Huawei's arguments about how Verizon must plead and establish its claim are substantively wrong and misunderstand Verizon's claims.</u>

Huawei's motion rests on a flawed premise—that Verizon must identify "an appropriate RAND offer and rate" for a license to Huawei's patents because those are "necessary predicate

---

[1] Verizon has not attached the full set of interrogatory responses in view of page limit requirements for discovery motions.  Verizon respectfully requests permission to submit its interrogatory responses, and Huawei's responses on parallel issues, for the Court's consideration in connection with this motion.

facts" to Verizon's RAND-related claims (Mot. at 4), even claiming that Rule 11 required disclosing the requested information because Verizon "affirmatively accus[ed] Huawei of fraud" (*id*. at 3). According to Huawei, "Verizon's claims are viable only if Verizon can establish that there is a 'real' and significantly lower RAND rate, that Verizon relied on Huawei offering that 'real' and significantly lower RAND rate, that Verizon relied on Huawei offering that 'real' and lower RAND rate, and that Huawei knew its ▮▮▮▮ offer was a 'fake' and higher RAND rate but nonetheless made the offer." (*Id*. at 3.)[2] This is wrong for at least two reasons.

*First*, to the extent Verizon's RAND-related claims implicate Huawei's conduct during its negotiations with Verizon, there is no legal requirement—and Huawei cites no legal support for the proposition—that Verizon must identify a specific RAND rate to establish that Huawei breached its ITU-T RAND obligations. To the contrary, and as this Court recently recognized, "whether … parties breached or complied with their … FRAND obligations" is a "separate legal question" from what "the FRAND royalty rates" are. *Ericsson Inc. v. Samsung Elecs. Co.*, No. 2:20-CV-00380-JRG, 2021 WL 89980, at *6 (E.D. Tex. Jan. 11, 2021). Verizon's claims regarding whether Huawei "breached or complied" with its RAND obligation "ask[] this Court to look at the parties' pre-suit negotiation conduct." *Id.* Verizon's interrogatory responses already make clear that Verizon intends to meet its burden by showing that Huawei failed to negotiate in good faith towards a RAND license ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2]  Huawei cites *Oyster Optics, LLC v. Infinera Corp.*, No. 2:19-cv-257-JRG, 2020 WL 5800923, at *3 (E.D. Tex. Sept. 29, 2020) as support for this assertion. (Mot. at 3.) But *Oyster Optics* held no such thing. *Oyster Optics* involved a settlement agreement, and claims for fraud and for concealment based on statements during negotiations towards that settlement agreement. *Id*. *1-*2 (discussing allegations of "false representations about the scope of the license while in secret negotiations to be acquired by Infinera" during settlement discussions, and allegations that "Coriant failed to disclose material facts during the settlement negotiations with an intent to deceive Oyster about the planned acquisition"). The court dismissed that fraud claim without prejudice, noting that the defendant had not yet identified fraud with sufficient particularity. *Id.* *5 (holding complaint "lacks any specifically identifiable, affirmative representations of fact that are alleged to have been false at the time when made"). Nothing in *Oyster Optics* mentions RAND at all, and nothing in the case—just like nothing in Verizon's complaint—treats a supposed "real" RAND rate as a predicate for anything.

██████████████████████████████████████████████ by showing Huawei never made an actual offer that complies with its RAND obligations (████████████████ ████████████████████████████████████████████ ████████████████ or on basic RAND terms (████████████████████████ ████████████████████████████████████). These facts each support the conclusion Huawei breached, and intended to breach, its obligations, and that it never intended to abide by its RAND obligations in the first place. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1045 (9th Cir. 2015) (ITU-T RAND obligations can be breached by failure to negotiate good faith offer or by pursuit of non-RAND remedy). Huawei cites no law that prohibits Verizon from proving Huawei failed to make a RAND *offer* in this way, without stating affirmatively some single "real" RAND rate that would necessarily be a "significantly lower RAND rate" (Mot. at 3).[3]

*Second*, with respect to Verizon's fraud claims, Huawei's argument ignores Verizon's actual pleading. Dkt. 153 ¶¶ 580-627. Verizon alleges, for example, that during the standards development process, Huawei made a commitment to disclose its intellectual property rights to the ITU-T; that members of the ITU-T, including Verizon, relied on that commitment when determining what technology to include in standards; that Huawei—whose employees, including inventors, attended meetings and sat silently even when asked whether proposals implicated intellectual property rights—knowingly failed to disclose patents and applications Huawei believed covered technologies it submitted to the ITU-T working groups for inclusion in the G.709 and G.8032 standards; that it did so to induce ITU-T members to include Huawei's technology in

---

[3] In a footnote, Huawei cites a case involving a claim under French law, based on a European Telecommunications Standards Institute (ETSI) standard, in which the Court found that both failure to negotiate in good faith and failure to offer a FRAND license are necessary to find a breach of the ETSI IPR policy. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 407 F. Supp. 3d 631, 637 (E.D. Tex. 2019). That decision did not hold that the party alleging breach in that case (HTC) was required to prove that one and only one royalty rate is or could be in the FRAND range. In any event, neither ETSI nor French law is at issue here.

4

the standards; and that implementers like Verizon were harmed by Huawei's deception. *Id.* ¶¶ 340-44, 602, 633, 649-50, 654, 657, 671-74.  Huawei does not—and cannot—explain why Verizon must identify a specific RAND rate to substantiate this kind of fraud claim.  *See Barnes & Noble, Inc. v. LSI Corp.,* 849 F. Supp. 2d 925, 936 n.9 (N.D. Cal. 2012) (concealment of IP interest from standard-setting organization sufficient to support fraud claim).

### B. Huawei Cannot Use A Motion To Compel To Decide How Verizon Should Plead And Make Its Case.

Even if Huawei's substantive arguments about Verizon's claims had merit, Huawei may not use its interrogatories to rewrite Verizon's claims or to force Verizon to prove those claims in a way Huawei might prefer but that Verizon does not.  It is axiomatic that a plaintiff is the master of his claim.  *Aaron v. Nat'l Union Fire Ins. Co.*, 876 F.2d 1157, 1161 n.7 (5th Cir. 1989).  Verizon is free to make its case in any way consistent with the facts of this case and the applicable law.

Huawei's interrogatories are *contention* interrogatories.  Verizon responded to them with detailed descriptions of its contentions and the evidence it intends to rely on to prove its claims. If, at the conclusion of discovery, Huawei believes Verizon's evidence is insufficient to make out its defenses or counterclaims, Huawei can move for summary judgment.  Huawei cannot use a motion to compel to force Verizon to disclose evidence Verizon does *not* intend to rely on for those defenses and counterclaims, simply because *Huawei* wants Verizon to use that evidence.

Nor, in any event, is Huawei correct when it claims that "[t]he parties in this case had a royalty-rate dispute." (Mot. at 1.)  The parties had a licensing dispute.  It included a disagreement about whether key terms—like a royalty *base*—had even been offered or adequately explained. Huawei's myopic focus on "rate" alone tries to sidestep Huawei's failure to offer a RAND *license*, as its commitments require.  Huawei now attempts to flip the burden and asks the Court to order *Verizon* to offer a license, saying that Verizon must now identify not only "what Verizon contends

5

to be an appropriate RAND *rate*" but also "what the appropriate *terms* of a RAND offer would have been" (*e.g.*, a base in addition to the rate), and "under what circumstances Verizon would have *accepted* an offer." (Dkt. 165 at 2). Huawei is essentially asking Verizon to draft a term sheet as an interrogatory response. There is no basis in law or logic for that request, and no element of fraud, unfair competition, or breach of contract that requires this exercise.

The allegations Huawei cites (Mot. 1-2) do not trigger obligations to draft a term sheet in discovery. Verizon did and does allege Huawei "falsely committed to offer licenses on FRAND terms" (Dkt. 163 ¶ 656) and "failed to offer Verizon a single license on FRAND terms" (*id*. ¶ 658). As discussed above, this includes failing to answer basic questions in the parties' discussions, and failing to identify a meaningful royalty base—negotiation conduct that does not turn on "a 'real' RAND rate" (Mot. at 2). Verizon likewise alleges that in "this action for patent infringement against Verizon" Huawei is "seeking damages in excess of FRAND terms" (Dkt. 153 ¶ 658) and seeking "exorbitant license fees" (*id*. ¶ 653) far in excess of a reasonable royalty—issues Verizon has already provided 40 pages of interrogatory responses to substantiate, including Huawei's complete failure to conduct an apportionment analysis. Huawei's objectively outrageous ▮▮▮ demand prior to initiating this lawsuit would be proof enough for these claims. But Verizon *already* has provided chapter and verse on these issues in its interrogatory responses.

    C.    <u>To the Extent Huawei Seeks Expert Testimony, or Information Not Yet Produced in Discovery, Huawei's Requests Are Premature.</u>

Verizon's lengthy interrogatory responses more than comply with its obligations under the Federal Rules of Civil Procedure. To the extent additional relevant information becomes available during discovery—for example, as a result of Verizon's motion to compel Huawei to produce its prior RAND-related positions (Dkt. 128)—Verizon will supplement its responses as required by the Rules. Verizon also will provide any expert evidence on which it intends to rely

in accordance with the Docket Control Order.  Huawei's effort to seek such expert opinions prior to the relevant deadline is impermissible.  *Papst Licensing GmbH & Co., KG v. Apple, Inc.*, 2017 U.S. Dist. LEXIS 223280, at *17 (E.D. Tex. June 16, 2017) (denying motion to compel as "premature in light of the impending … expert discovery").

Huawei's motion to compel is premature, calls for expert discovery, and misunderstands the nature of Verizon's claims. It should be denied.

Dated:  February 1, 2021                                    Respectfully submitted,

By: */s/ Patrick Curran*
    *with permission by E. Glenn Thames, Jr.*
Patrick Curran
patrickcurran@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN
111 Huntington Ave, Suite 520
Boston, Massachusetts 02199
Telephone: 617-712-7100
Fax: 617-712-7200

Charles Verhoeven
charlesverhoeven@quinnemanuel.com
Brian Mack
brianmack@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone: 415-875-6600
Fax: 415-875-6700

Kevin Hardy
kevinhardy@quinnemanuel.com
Deepa Acharya
deepaacharya@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN
1300 I Street, NW, Suite 900
Washington, D.C.  20005
Telephone: 202-538-8000
Fax: 202-538-8100

E. Glenn Thames, Jr.
Texas Bar No. 00785097
glennthames@potterminton.com
POTTER MINTON
A PROFESSIONAL CORPORATION
110 N. College Ave., Suite 500
Tyler, Texas  75702
Tel: (903) 597-8311
Fax: (903) 593-0846

*Attorneys for Verizon Business Network Services, Inc., Cellco Partnership D/B/A Verizon Wireless, Verizon Data Services LLC, Verizon Business Global LLC, Verizon Services Corp., and Verizon Patent and Licensing Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this sealed document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on February 1, 2021, and a copy of this sealed document, in its entirety, via electronic mail. All counsel who are not deemed to have consented to electronic service are being served by U.S. first-class mail.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 41) entered in this case on February 1, 2021.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.