# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD.,<br><br>    Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS, INC., VERIZON BUSINESS NETWORK SERVICES, INC., VERIZON ENTERPRISE SOLUTIONS, LLC, CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, INC., VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, AND VERIZON SERVICES CORP.<br><br>    Defendants. | Civil Action No. 2:20-cv-00030-JRG |
| VERIZON BUSINESS NETWORK SERVICES, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, VERIZON SERVICES CORP., AND VERIZON PATENT AND LICENSING INC.<br><br>    Counterclaim-Plaintiffs,<br><br>v.<br><br>HUAWEI TECHNOLOGIES CO. LTD., HUAWEI TECHNOLOGIES USA, INC., AND FUTUREWEI TECHNOLOGIES INC.<br><br>    Counterclaim-Defendants. | |

**VERIZON'S MOTION TO COMPEL ADDITIONAL EMAIL CUSTODIAN ON ISSUES RELATING TO '253 PATENT AND DEPOSITION OF HUAWEI WITNESS**

I.  **PRELIMINARY STATEMENT**

This Motion arises out of Huawei's misidentification of Yang Yang, a co-inventor of U.S. Patent No. 8,995,253, as one of its "most significant" email custodians despite no longer having any of his emails from the relevant time period. Under the ESI Order, the parties each disclosed their ten "most significant" email custodians in view of the pleaded claims and defenses and could then request emails of four custodians. Huawei's list of "most significant" custodians included Yang Yang, one of two inventors of the '253 patent. It did not include Hao Long, the other named inventor, who was identified in Huawei's Initial Disclosures as having knowledge of the same subject matter as Mr. Yang and is Huawei's corporate witness on topics relating to the patent and development of the G.8032 standard and it did not include anyone else who worked with the inventors during patent development of the G.8032 standard. Because Mr. Yang was the only one on Huawei's list that had any connection to the '253 patent or development of the G.8032 standard, and based on Huawei's representation that he was one of its "most significant" email custodians, Verizon selected Mr. Yang as one of the four custodians from whom it would seek emails.

Due to multiple delays by Huawei, Verizon did not receive Mr. Yang's email production until early January 2021. Upon receiving the production, Verizon discovered that it contained *no* emails from before ▇▇▇ As a result, it included no emails from the time period that is relevant to conception and reduction to practice, the inventors' knowledge of the prior art that forms the basis of Verizon's inequitable conduct claim, or Huawei's participation in development of the G.8032 standard. All of these activities occurred well before ▇▇▇ When asked if more emails were forthcoming, Huawei responded that Mr. Yang's emails only go back to ▇▇▇ because of a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and it would not be producing more documents. Huawei had never before indicated that it no longer has any of Mr. Yang's emails from before ▇▇▇

1

Due to Huawei's delays in producing emails, Verizon only became aware of this issue on **January 14**. Since then, Verizon has on multiple occasions requested an explanation of why Huawei identified Mr. Yang as a "most significant" email custodian, and asked whether it has emails from the relevant timeframe for any other custodians, such as Hao Long.[1] Huawei did not respond, refusing to engage on this subject until a meet and confer on February 1, during which it refused to identify another custodian. Verizon respectfully requests that the Court order Huawei to investigate whether there is a more suitable email custodian for the ▮▮▮▮ produce emails from that custodian, and make its corporate witness available for an additional deposition following that production.

## II.    STATEMENT OF RELEVANT FACTS

### A.    Huawei Identifies Yang Yang As A "Most Significant" Email Custodian.

On June 29, 2020, this Court entered the proposed Order Regarding E-Discovery submitted by the parties. (Dkt. 44). Under the terms of that Order the parties were required to exchange (among other things) a specific identification of the ten most significant email custodians in view of the pleaded claims and defenses, before email requests are served. (Dkt. 44, ¶ 7). Each side may then request emails of four custodians using ten search terms per custodian. (*Id.*, ¶¶ 8-9).

After initial delays, Huawei eventually provided its list of ten "most significant" email custodians on October 2, 2020. (10/2/2020 J. Nemunaitis Email). The list included Yang Yang—one of the two named inventors of the '253 patent, but did not include the other named inventor—Hao Long. None of the other individuals on Huawei's list had any apparent connection to the '253 patent or Huawei's participation in development of the G.8032 standard.

---

[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2

Huawei's First Amended Initial Disclosures described Mr. Yang as follows:

Inventor of the '253 patent

(Ex. A, 10/2/2020 Huawei Initial Disclosures). Huawei also served interrogatory responses describing  Finally, Mr. Yang's LinkedIn profile indicated that he has been continuously employed at Huawei since 2001. (Ex. B).

In short, there was no reason for Verizon to suspect that, despite having identified Mr. Yang as a "most significant" email custodian, Huawei did not have his emails for the time period that Huawei's discovery responses indicate is relevant. Verizon therefore selected Mr. Yang as one of the four custodians for whom it would request emails. (10/23/2020 A. Roberts Email.)

### B. The Parties Negotiate Search Terms.

Verizon proposed ten search terms and date ranges for Mr. Yang's emails. (10/23/2020 A. Roberts Email.) Huawei responded on November 11, agreeing to 4 of the 10 search terms Verizon proposed and proposing revisions for other terms. (11/11/2020 J. Nemunaitis Email). On November 22, Verizon provided proposed revisions to the terms that were not yet agreed, including proposing a narrower date range of 2001-2008 for one term. (11/22/2020 A. Roberts Email.) The parties continued to negotiate terms until reaching agreement in mid-December. At no point during this process did Huawei indicate that it had no emails from Mr. Yang prior to

### C. Huawei's Email Production is Delayed, And Verizon Moves To Compel.

By the December 3, 2020 substantial completion deadline, Verizon substantially completed its email production. Huawei, on the other hand, did not produce *any* emails responsive to

3

Verizon's email requests by that deadline. On December 9, 2020, Verizon moved to compel Huawei to complete production of emails responsive to Verizon's email requests. (Dkt. 116). On December 14, 2020, the parties resolved this dispute shortly before the Court's December 17 hearing on Verizon's motion to compel. Dkt. 121. The parties reached agreement on, among other matters, search terms that Huawei would run in connection with email discovery. (*Id.* at 1).

### D. Huawei Fails to Produce Emails For Mr. Yang For The Relevant Timeframe.

Shortly after the parties came to an agreement on Huawei's email production, Verizon inquired about the status of Huawei's email production for Mr. Yang on January 1, January 3, and January 6. (1/1/2021, 1/3/2021, and 1/6/2021 Watkins Emails). To that point, Verizon had only received 19 documents for which Mr. Yang was identified as a custodian, and none of those documents were emails. (1/1/2021 Watkins Email). On January 6, Huawei finally produced Mr. Yang's emails, attributing the delay to a ▮▮▮▮ and indicating that it was Huawei's counsel's belief that those documents were not ▮▮▮▮ (Ex. C, 1/6/2021 Cassady Email).

On January 11, Verizon informed Huawei that, based on the metadata provided with the January 6 production, Mr. Yang's email production only included emails dating back to ▮▮▮▮ (1/11/2021 Watkins Email). The relevant timeframe for emails relating to the '253 patent is much earlier—▮▮▮▮ For example, Huawei has identified priority and conception and reduction to practice dates for the '253 patent in ▮▮▮▮ Additionally, Huawei claims that the '253 patent is essential to practice the ▮▮▮▮ Development of the ▮▮▮▮ and Huawei's interrogatory responses confirm that ▮▮▮▮ Emails from this timeframe are also relevant to the inventors' knowledge of prior art and Verizon's allegations of inequitable conduct. The ▮▮▮▮ would therefore encompass communications relevant to the parties' claims and defenses relating to the '253 patent. On the

4

other hand, neither party has identified any relevant information from Mr. Yang from after the ▮ timeframe, so it is unclear why Huawei identified Mr. Yang as a "significant" custodian.

Verizon asked Huawei to explain why it identified Mr. Yang as a significant email custodian. On January 14, Huawei disclosed to Verizon for the first time—after *months* of back-and-forth on email production—that it no longer has any of Mr. Yang's emails from prior to ▮ because ▮ (Ex. D, 1/14/2021 Cassady Email). In a January 17 letter, Verizon pointed out that Huawei should have notified Verizon of this issue earlier, particularly in light of the fact that Huawei had previously accepted Verizon's proposal to narrow the timeframe for one of the search terms to ▮ (a time period for which Huawei knew it had no emails). (1/17/2021 Letter from Curran). Verizon also asked Huawei whether it had emails from Hao Long, or others who worked with Mr. Yang or Mr. Long, from the relevant timeframe (2006-2010). (*Id*.). Huawei did not respond.

Verizon requested meet and confers to discuss this issue multiple times since first being informed by Huawei on January 14 that it no longer has emails from Mr. Yang for the relevant timeframe, but received no reply. Verizon took the deposition of Mr. Yang on the date Huawei insisted upon—January 26—and Mr. Yang confirmed that ▮ Huawei refused to engage in any discussion of this issue until a lead and local meet and confer on February 1, during which counsel for Huawei expressed their apparent disbelief that Verizon would have expected Huawei to have any of Mr. Yang's emails from the relevant timeframe, and suggested that Verizon could have asked for a different custodian not on the list. But until Verizon learned on January 14 that Huawei no longer has his emails from the relevant timeframe, Verizon had no reason to doubt Huawei's representation that Mr. Yang was a "significant" email custodian.

███████████████████████████████████████████

### III. ARGUMENT

All available information to Verizon, including Huawei's representations in discovery, indicated that Mr. Yang's relevance to this case related to his work in the ███████████. For example, Huawei represented that Mr. Yang had knowledge of ████████████████████████████████████████████████████ and ████████████████████████████████████████ ███████████████████ (Ex. A, 10/2/2020 Huawei Initial Disclosures). Taking Huawei at its word, and in light of the fact that none of Huawei's other "most significant" custodians had any apparent connection to the '253 patent or development of the G.8032 standard, Verizon selected Mr. Yang as a custodian. Verizon reasonably expected that Huawei would not have identified someone as a "most significant" email custodian if it no longer had any of that person's emails from the time when they were working on issues that Huawei has itself identified as being relevant.

Verizon then proposed search terms and worked with Huawei to narrow the terms and date ranges. Multiple of Verizon's proposed terms were directed to Mr. Yang's work in the ████████ ████████████████████████████████████████████████████████████████████ Verizon also compromised by proposing a narrower date range of ████████ for one term. Verizon did not expect that Huawei would have hidden the fact that, █████████████████████████████, there was no chance that Verizon's proposed terms and date ranges would hit on relevant emails.

When Huawei finally produced emails for Mr. Yang in *early January 2021*—only after Verizon moved to compel this production after months of back and forth—***none*** of those documents corresponded to the relevant time period. Huawei's production included ***no*** emails from the time period that is relevant to conception and reduction to practice for the '253 patent, ***no***

6

█████████████████████████████████████████

emails relating to the inventors' knowledge of prior art, and *no* emails relating to development of the G.8032 standard. There is no reasonable explanation for Huawei's conduct. If Huawei had known sooner that it did not have emails from Mr. Yang from the relevant time period, it should have identified another individual as its "most significant" custodian—for example, the other named inventor on the '253 patent or another individual, such as Ms. He, who worked with Mr. Yang and Mr. Long. It appears as though Huawei did no diligence on Mr. Yang's emails before identifying him as a "most significant" custodian. And since first informing Verizon of this issue with Mr. Yang's email production on *January 14*, Huawei refused to respond to Verizon's requests for additional information until a meet and confer held the day before the close of fact discovery, and at that point simply refused to identify another custodian.

Huawei's conduct on this issue is highly prejudicial to Verizon, effectively depriving Verizon of the ability to explore relevant emails with Mr. Yang and other witnesses related to the '253 patent and to use such emails in its opening expert reports.

### IV.   CONCLUSION

Verizon respectfully requests the Court order Huawei to do the following within 10 days of this Court's order: (1) identify another suitable email custodian for whom Huawei has emails relating to the '253 patent and ███████████████████████████████████████ ██████████ (2) produce emails from that custodian using the terms and date ranges agreed upon by the parties for Mr. Yang's emails; and (3) make Hao Long, Huawei's designated corporate witness on ████████████████████████████████████████████, available for an additional deposition no earlier than two weeks after completion of the email production.

7

███████████████████████████████████

Dated: February 2, 2021                     Respectfully submitted,

                                                   By: */s/ Charles Verhoeven*
                                                       *(by E. Glenn Thames, Jr., with permission)*
                                                       Patrick Curran
                                                       patrickcurran@quinnemanuel.com
                                                       QUINN EMANUEL URQUHART & SULLIVAN
                                                       111 Huntington Ave, Suite 520
                                                       Boston, Massachusetts 02199
                                                       Telephone: 617-712-7100
                                                       Fax: 617-712-7200

                                                       Charles Verhoeven
                                                       charlesverhoeven@quinnemanuel.com
                                                       Brian Mack
                                                       brianmack@quinnemanuel.com
                                                       QUINN EMANUEL URQUHART & SULLIVAN
                                                       50 California Street, 22nd Floor
                                                       San Francisco, California 94111-4788
                                                       Telephone: 415-875-6600
                                                       Fax: 415-875-6700

                                                       Kevin Hardy
                                                       kevinhardy@quinnemanuel.com
                                                       Deepa Acharya
                                                       deepaacharya@quinnemanuel.com
                                                       QUINN EMANUEL URQUHART & SULLIVAN
                                                       1300 I Street NW, Suite 900
                                                       Washington, D.C. 20005
                                                       Telephone: 202-538-8000
                                                       Fax: 202-538-8100


                                                       Deron R. Dacus
                                                       State Bar No. 00790553
                                                       The Dacus Firm, P.C.
                                                       821 ESE Loop 323, Suite 430
                                                       Tyler, TX 75701
                                                       Phone: (903) 705-1117
                                                       Fax: (903) 581-2543
                                                       ddacus@dacusfirm.com

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

                E. Glenn Thames, Jr.
                Texas Bar No. 00785097
                glennthames@potterminton.com
                Potter Minton
                A Professional Corporation
                110 N. College Ave., Suite 500
                Tyler, Texas 75702
                Tel: (903) 597-8311
                Fax: (903) 593-0846

*Attorneys for Verizon Business Network Services, Inc., Cellco Partnership D/B/A Verizon Wireless, Verizon Data Services LLC, Verizon Business Global LLC, Verizon Services Corp., and Verizon Patent and Licensing Inc.*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), the undersigned hereby certifies that counsel for the parties conducted a lead-local meet-and-confer regarding this Motion prior to filing and that the motion is opposed. Specifically, on February 1, 2021, counsel for Verizon, including Charles Verhoeven, Deron Dacus and Glenn Thames, participated in a telephonic conference with counsel for Huawei, including Jason Cassady and Greg Love, regarding the issues raised herein but were unable to reach a resolution because Huawei would not agree to any of the relief Verizon requested. Thus, discussion conclusively ended in an impasse, leaving an open issue for the court to resolve.

                */s/ Charles Verhoeven*
                  Charles Verhoeven

                */s/ E. Glenn Thames, Jr.*
                  E. Glenn Thames, Jr.

████████████████████████████

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this sealed document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on February 2, 2021, and a copy of this sealed document, in its entirety, via electronic mail. All counsel who are not deemed to have consented to electronic service are being served by U.S. first-class mail.

>  */s/ E. Glenn Thames, Jr.*
>  E. Glenn Thames, Jr.


**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 41) entered in this case on June 18, 2020.

>  */s/ E. Glenn Thames, Jr.*
>  E. Glenn Thames, Jr.