IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> VERIZON COMMUNICATIONS, INC., VERIZON BUSINESS NETWORK SERVICES, INC., VERIZON ENTERPRISE SOLUTIONS, LLC, CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, INC., VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, AND VERIZON SERVICES CORP. <br><br> Defendants. | Civil Action No. 2:20-cv-00030-JRG |
| VERIZON BUSINESS NETWORK SERVICES, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, VERIZON SERVICES CORP., AND VERIZON PATENT AND LICENSING INC. <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> HUAWEI TECHNOLOGIES CO. LTD., HUAWEI TECHNOLOGIES USA, INC., AND FUTUREWEI TECHNOLOGIES INC. <br><br> Counterclaim-Defendants. | |

**VERIZON'S MOTION TO COMPEL HUAWEI'S
<u>PRODUCTION OF DOCUMENTS</u>**

## I.     PRELIMINARY STATEMENT

This Motion arises out of Plaintiff and Counterclaim Defendants Huawei Technologies Co. Ltd., Huawei Technologies USA, Inc., and Futurewei Technologies Inc.'s ("Huawei's") improper withholding of materials, including—but not limited to—materials listed on Huawei's January 8, 2021 privilege log. Huawei is holding back materials entirely internal to China as privileged, despite the fact that there is no such protection available under Chinese law, which controls for those communications. Huawei likewise claims privilege over business rather than legal discussions, as well as over adversarial communications with third parties—even claiming privilege over letters *to Verizon*. Huawei's overbroad allegations of privilege are improper. Verizon requests that the Court order immediate production of materials (logged or otherwise) in each of these three categories.[1]

## II.     BACKGROUND

Huawei is indisputably claiming privilege over e-mail communications between Huawei employees in China. *See, e.g.,* Ex. A (excerpt from Privilege Log showing Entries 6-8).[2] Huawei's log identifies memoranda prepared and distributed solely by Huawei employees in China. *See, e.g.,* Ex. B (excerpt from Privilege Log showing Entries 740-746).[3] Huawei's log does not indicate that any U.S. attorney was the author or recipient of these e-materials.

---

[1] Huawei was not required to serve a log for its privilege decisions regarding documents created after the date of this suit. Huawei is withholding an unknown number documents created after the date of this suit, without a log, that are non-privileged discussions internal to China, and internal discussions on business issues. Those unlogged assertions of privilege are also at issue in this motion.

[2] Entries consisting of e-mail communications between Huawei employees in China also include: 2-5, 10-12, 16, 18-25, 27-33, 35-60, 63-70, 72-88, 90-111, 113-131, 140-142, 146-153, 160-219, 222-224, 227-229, 237-247, 249-254, 256-263, 265-267, 269-273, 275-276, 278-292, 294-304, 308-309, 311-320, 323, 327, 329-330, 341-431, 433-451, 453-459, 461-465, 467-469, 471-480, 482, 484-504, 506-524, 526-536, 538-559, 561-565, 567-571, 573-580, 582-583, 585-587, 589, 596-606, 608-609, 611-616, 618-621, 623-626, 628-640, 643-650, 652-687, 689-691, 693-695, 697-711, 713-717, 720-723, 725-739, and 760.

[3] Additional entries for memoranda by Huawei employees include Entries 749, 751-752, 754-759, and 761-764.

Other materials Huawei is withholding as privileged involve internal Huawei communications on business issues. Huawei's log claims privilege over "[f]inancial or business matters," and then makes the conclusory claim that these business discussions relate to legal advice. *See, e.g.*, Ex. A (Entries 10, 12, and 15).[4]  Huawei is further withholding apparently adversarial licensing communications with third parties. For example, Entries 13-14 on Huawei's log are e-mail exchanges with ▮▮▮▮▮▮▮▮▮▮ discussing intellectual property and/or licensing. Ex. A.[5] The log does not indicate any common interest or joint defense that would retain privilege over those third party communications.

Huawei appears to have withheld any materials a custodian marked as "PRIVILEGED" without determining if a privilege exists. Entry 432 on Huawei's log claims privilege over a February 7, 2019 letter from Huawei ***to Verizon***. *See* Ex. A.  That letter was inaccurately marked "PRIVILEGED," and when Verizon first received this letter from Huawei, it pointed out this error to Huawei immediately. Huawei quickly conceded that the letter was not privileged.[6] Huawei quickly conceded that the letter was not privileged. Yet Huawei's log *again* claims privilege over this communication. Ex. A. This suggests Huawei withheld anything marked "PRIVILEGED" without verifying a privilege applies.

---

[4] Entries with the same or a similar generic privilege claim for business communications include: 19, 30-33, 36, 48, 55, 68, 84, 203, 216-219, 237-239, 597-600, 602, 604, 612-614, 656-657, 569, and 713.

[5] Additional entries including emails with employees from third-party companies about intellectual property or licensing issues include Entry 26 (communication with ▮▮▮▮▮▮); Entries 51, 61 (communications with ▮▮); Entry 62 (communication with ▮); Entries 89, 112 (communications with ▮▮▮▮▮▮▮▮▮); Entry 230 (communication with ▮); Entries 255, 274 (communications with ▮); Entries 432, 452, 460, 466 (communications with Verizon's in-house counsel); Entry 470 (communication with ▮); Entries 483, 505, 566 (communications with ▮▮▮▮); Entry 525 (communication with ▮); Entry 572 (communication with ▮▮▮); Entry 560 (communication with ▮▮▮▮▮▮▮); Entry 651 (communication with ▮▮▮▮; Entry 718 (communication with ▮▮▮▮).

[6] Verizon can make this exchange available to the Court if it would like to review it. *See* VZ-HW-EDTX-0090670 (Feb. 18, 2019 letter from Verizon to Huawei); VZ-HW-EDTX-0095424 (Feb. 19, 2019 e-mail from Huawei to Verizon).

On January 12, 2021, Verizon sent a letter notifying Huawei of these deficiencies and requesting a meet and confer the following week.  Huawei did not respond.  Verizon followed up on January 19.  Again, Huawei refused to respond.  Huawei would not meet and confer on this issue until February 1, 2021, and on that date, refused to produce the requested materials.

### III.    ARGUMENT

In general, parties may obtain discovery regarding any unprivileged matter that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1).  "[A] party claim[ing] privilege … must provide a log that provides facts that would suffice to establish each element of the privilege or immunity that is claimed."  *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2016 WL 1031157, at *4 (E.D. Tex. Mar. 15, 2016);  Fed. R. Civ. P. 26(b)(5).

#### A.    Huawei Has Not Substantiated Its Claims Of Attorney-Client Privilege

Huawei cannot establish attorney-client privilege over the categories of materials described in this motion, for multiple reasons.  There is no attorney-client privilege under applicable Chinese law, and thus internal communications between employees in China are not privileged.  Even under U.S. law, communications not made for the purposes of seeking or receiving legal advice would not qualify as privileged.  *Moser as Tr. of Tr. Under Amended Joint Plan of Liquidation of Tango Transp., LLC v. Navistar Int'l Corp.*, No. 4:17-CV-00598, 2019 WL 236722, at *2 (E.D. Tex. Jan. 16, 2019).  Huawei documents regarding business issues and business strategy, including commercial decisions on licensing or commercial discussions with third parties, are business discussions that should be produced.

##### 1.    No Protection Attaches to Huawei's Communications In China.

**Chinese law applies.**  Under the "touch base" analysis used for international privilege conflicts, courts apply the privilege laws of the country with the "predominant interest": "either the place where the allegedly privileged relationship was entered into or the place in which that

relationship was centered at the time the communication was sent." *Wultz v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 486-87 (S.D.N.Y. 2013) (internal quotations and citations omitted); *2M Asset Management, LLC v. Netmass, Inc.*, 2007 WL 666987, at *2-3 (E.D. Tex. 2007) (discussing the "touch base" analysis and finding that German law applied to communications with German patent agent). Internal communications in China, where Huawei is based, are governed by Chinese law, and any allegedly privileged relationship at the time these communications were sent would have been centered in China. Huawei's First Am. Compl. (Dkt. 27) ¶ 1; *see also, e.g.,* Ex. A (Entries 6-8, 10 and 12 are between Huawei employees).[7] Thus, Chinese privilege law applies.

**Chinese law does not protect Huawei's documents.** Huawei "bears the burden of demonstrating that [Chinese] law actually bars the production" of the documents. *Wultz*, 979 F. Supp. 2d at 486. Huawei cannot meet this burden "[b]ecause Chinese law does not recognize the attorney-client privilege or the work-product doctrine." *Id.* at 493. This Court has considered the question previously and explained that "[t]he Court has serious doubts … that there is an attorney-client privilege in China at all." Order Granting Motion to Compel Production (Dkt. 396) at 2, *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00055-JRG-RSP (E.D. Tex. Oct. 18, 2017) (Payne, M.J.) (addressing a similar argument by Huawei).[8] Thus, these materials should be produced.

---

[7] E-mail communications between only Huawei employees also include: Entries 2-5, 16, 18-22 23-25, 27-33, 35-60, 63-70, 72-88, 90-111, 113-131, 140-142, 146-153, 160-219, 222-224, 227-229, 237-247, 249-254, 256-263, 265-267, 269-273, 275-276, 278-292, 294-304, 308-309, 311-320, 323, 327, 329-330, 341-431, 433-451, 453-459, 461-465, 467-469, 471-480, 482, 484-504, 506-524, 526-536, 538-559, 561-565, 567-571, 573-580, 582-583, 585-587, 589, 596-606, 608-609, 611-616, 618-621, 623-626, 628-640, 643-650, 652-687, 689-691, 693-695, 697-711, 713-717, 720-723, 725-739, and 760.

[8] Other U.S. courts and academic scholarship confirm that there is no attorney-client privilege under Chinese law. *See, e.g.,* Order Granting in Part and Denying in Part Defendants' Claim of Attorney-Client Privilege (Dkt. 168), *Circuitronix, LLC v. Shenzhen Kinwong Elec. Co.*, No. 17-22462, 2019 U.S. Dist. LEXIS 3971, *4 (S.D. Fla. Jan. 9, 2019) ("Under Chinese law, there is no attorney-client privilege[.]"); Xu Xi, *A Comparative Study of Lawyers' Ethics in the US and PRC: Attorney-Client Privilege and Duty of Confidentiality*, 1 Tsinghua China L. Rev. 49, 54

        2.      <u>Many Entries On Huawei's Privilege Log Are Unprivileged Business Communications.</u>

Even if attorney-client privilege did apply, Huawei cannot claim privilege over ordinary business communications or commercial discussions, even if lawyers were involved in a business capacity (for example, commercial advice on licensing issues). The party asserting privilege must "evidence that the document 'was created for the purpose of providing or obtaining legal rather than business advice.'" *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 111 (S.D.N.Y. Nov. 8, 2005). "[S]imply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017). Huawei must indicate (1) the challenged communications were made by or to a licensed attorney (2) for the purposes of seeking legal advice. *Moser*, No. 4:17-CV-00598, 2019 WL 236722, at *2; *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003).

Many materials withheld by Huawei do not meet either prong. For example, Huawei's log lists multiple e-mail communications between Huawei employees in China that do not involve any U.S. attorneys,[9] as well as memoranda prepared and distributed solely by Huawei employees in China.[10] Huawei's log does not indicate that any U.S. attorney was the author or recipient of these e-mails or documents. Many other materials Huawei is withholding address business issues rather than legal advice. Huawei's log describes the communications as related to "[f]inancial or business matters" and claims only in conclusory fashion that these business

---

(2009) ("PRC lawyers and their clients do not enjoy attorney-client privilege with respect to their communications under the 2008 Lawyers' Law."). *See also* Ex. B (declaration of Dr. Rachel Stern regarding Chinese law).
[9] For example, Entries 6-8, 10-12, 16, and 18-22 are communications between Huawei employees. Ex. A.
[10] *See, e.g.,* Ex. A (excerpt from Privilege Log showing Entries 740-746).

discussions involved legal advice. *See, e.g.*, Ex. A (Entries 10, 12 and 15).[11]  This does not meet the standard for privilege; as the Fifth Circuit has explained, a log may not substantiate a privilege by "simply describing [a communication] as 'legal.'"  *EEOC*, 876 F.3d at 696.

### B. Huawei Has Not Substantiated Its Claim Of Work Product Protection.

Huawei's assertions of work product doctrine are similarly unavailing.  There is no work product doctrine under applicable Chinese law.  *Wultz*, 979 F. Supp. 2d at 493 ("Chinese law does not recognize … the work-product doctrine"); Ex. B (Stern declaration).  Even if there were, work product requires "the primary motivating purpose behind the creation of the document" be "to aid in possible future litigation," or that the document relate to ongoing or imminent litigation.  *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).  "[T]he work product doctrine … excludes materials assembled in the ordinary course of business."  *Butler v. Am. Heritage Life Ins. Co.*, No. 4:13-CV-199, 2016 WL 367314, at *3 (E.D. Tex. Jan. 29, 2016).  As mentioned above, many of the privilege log entries seem to have been made for business rather than legal purposes—a second, independent ground to defeat Huawei's claim of work product privilege.

### C. Huawei's Third Party Communications Are Not Privileged.

Finally, even if Huawei had attorney-client privilege or work-product doctrine immunity, it waived it by sharing documents with third parties.  "The party asserting a privilege … bears the burden of demonstrating that the privilege has not been waived."  *In re Boyd Veigel, P.C.*, No. 4:12-CV-368, 2013 WL 1222342, at *4 (E.D. Tex. Mar. 24, 2013).  Absent a common interest or joint defense, the presence of a third party on a communication generally constitutes a waiver of privilege or work-product doctrine.[12]  Yet Huawei included many communications

---

[11] Entries with the same or a similar generic privilege claim for business communications include:  19, 30-33, 36, 48, 55, 68, 84, 203, 216-219, 237-239, 597-600, 602, 604, 612-614, 656-657, 569, and 713.

[12] *See Ferko*, 218 F.R.D. at 134 ("Disclosure of attorney-client communications to a third party who lacks a common legal interest waives the attorney-client privilege.") (citing *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992)); *First Am. CoreLogic, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132-TJW, 2010 WL 4975566, at *2 (E.D. Tex. Dec. 2, 2010)

with third parties in its privilege log, with no indication of any joint defense or common interest that would retain privilege. Ex. A.[13] Indeed, Huawei logged a letter that Huawei sent *to its own adversary* Verizon. *Id*. Based on this example, Huawei appears not to have made accurate claims of privilege with regard to waiver—and perhaps did not vet documents to verify that privilege ever existed.

## IV.   CONCLUSION

For the foregoing reasons, Verizon respectfully requests that the Court order Huawei to produce the categories of materials identified above within 10 days of the Court's Order on this motion.   In the alternative, Verizon requests that the Court order Huawei to produce translations of documents in the identified categories for the Court's *in camera* review.

---

(same); *Horn v. Farmers & Merchants Bank of Long Beach*, No. 5:10CV169, 2011 WL 13220139, at *6-7 (E.D. Tex. June 1, 2011) (granting motion to compel in part because attorney-client privilege was waived, where privilege log disclosed communications disseminated to third parties).

[13]   Huawei cannot assert a common interest exception to avoid waiver in these cases, because there is no indication that it made the communications in response to a "palpable threat of litigation." *F.T.C. v. Think All Pub., L.L.C.*, No. 4:07-CV-011, 2008 WL 687456, at *1 (E.D. Tex. Mar. 11, 2008). The joint defense or common interest doctrine provides a "narrowly construed" exception to this general rule. *Id.* It applies to either "communications between co-defendants in actual litigation and their counsel" or "communications between potential co-defendants and their counsel … [where] there [is] a palpable threat of litigation at the time of communication." *Id.* (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 711 (5th Cir. 2001).   However, in its privilege log, Huawei made no indication of any legally cognizable joint defense or common interest that would avoid breaking privilege. For example, in Entry 13, describing its communication with ▮▮▮▮▮, Huawei described the substantive content of the communications as "intellectual property analysis/licensing." Ex. A.  Entry 17 uses the same boilerplate language. *Id.* This description does not suggest that ▮▮▮ and Huawei were actual co-defendants or "potential co-defendants … under palpable threat of litigation" making related communications with counsel. *F.T.C.*, 2008 WL 687456, at *1.

██████████████████████████████████████

Dated:  February 2, 2021                    Respectfully submitted,

                    By: */s/ Charles Verhoeven*
                        *(by E. Glenn Thames, Jr., with permission)*
                        Patrick Curran
                        patrickcurran@quinnemanuel.com
                        QUINN EMANUEL URQUHART & SULLIVAN
                        111 Huntington Ave, Suite 520
                        Boston, Massachusetts 02199
                        Telephone: 617-712-7100
                        Fax: 617-712-7200

                        Charles Verhoeven
                        charlesverhoeven@quinnemanuel.com
                        Brian Mack
                        brianmack@quinnemanuel.com
                        QUINN EMANUEL URQUHART & SULLIVAN
                        50 California Street, 22nd Floor
                        San Francisco, California  94111-4788
                        Telephone: 415-875-6600
                        Fax: 415-875-6700

                        Deepa Acharya
                        deepaacharya@quinnemanuel.com
                        QUINN EMANUEL URQUHART & SULLIVAN
                        1300 I Street NW, Suite 900
                        Washington, D.C.  20005
                        Telephone: 202-538-8000
                        Fax: 202-538-8100

                        Deron R. Dacus
                        State Bar No. 00790553
                        The Dacus Firm, P.C.
                        821 ESE Loop 323, Suite 430
                        Tyler, TX 75701
                        Phone: (903) 705-1117
                        Fax: (903) 581-2543
                        ddacus@dacusfirm.com

E. Glenn Thames, Jr.
Texas Bar No. 00785097
glennthames@potterminton.com
POTTER MINTON
A PROFESSIONAL CORPORATION
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

*Attorneys for Verizon Business Network Services, Inc., Cellco Partnership D/B/A Verizon Wireless, Verizon Data Services LLC, Verizon Business Global LLC, Verizon Services Corp., and Verizon Patent and Licensing Inc.*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), the undersigned hereby certifies that counsel for the parties conducted a lead-local meet-and-confer regarding this Motion prior to filing and that the motion is opposed. Specifically, on February 1, 2021, counsel for Verizon, including Charles Verhoeven, Deron Dacus, and Glenn Thames, participated in a telephonic conference with counsel for Huawei, including Jason Cassady and Greg Love, regarding the issues raised herein but were unable to reach a resolution because Huawei would not agree to any of the relief Verizon requested. Thus, discussion conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Charles Verhoeven*
Charles Verhoeven

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this sealed document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on February 2, 2021, and a copy of this sealed document, in its entirety, via electronic mail. All counsel who are not deemed to have consented to electronic service are being served by U.S. first-class mail.

>  */s/ E. Glenn Thames, Jr.*
>  E. Glenn Thames, Jr.

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 41) entered in this case on June 18, 2020.

>  */s/ E. Glenn Thames, Jr.*
>  E. Glenn Thames, Jr.