**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> VERIZON COMMUNICATIONS, INC., VERIZON BUSINESS NETWORK SERVICES, INC., VERIZON ENTERPRISE SOLUTIONS, LLC, CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, INC., VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, AND VERIZON SERVICES CORP. <br><br> Defendants. | Civil Action No. 2:20-cv-00030-JRG |
| VERIZON BUSINESS NETWORK SERVICES, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, VERIZON SERVICES CORP., AND VERIZON PATENT AND LICENSING INC. <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> HUAWEI TECHNOLOGIES CO. LTD., HUAWEI TECHNOLOGIES USA, INC., AND FUTUREWEI TECHNOLOGIES INC. <br><br> Counterclaim-Defendants. | |

**VERIZON'S MOTION TO COMPEL HUAWEI'S
PRODUCTION OF DOCUMENTS AND TESTIMONY WITHHELD AS PRIVILEGED**

## I.   <u>PRELIMINARY STATEMENT</u>

At no point during the parties' pre-suit negotiations did Huawei provide Verizon with an explanation for how it arrived at the royalty it proposed to Verizon for Huawei's optical patents. Huawei followed suit in this litigation, refusing to provide contentions to explain how Huawei's pre-suit proposal complies with its RAND obligations.  Verizon's interrogatories sought Huawei's contention on this issue early in discovery, including why Huawei contends its offer for its optical patents was a RAND offer, and the factual basis for that contention.  For months, Huawei refused to provide a meaningful response, merely stating that Huawei made a pre-suit license offer to Verizon of ███ and that offer was RAND—period.  Huawei's response did not include any explanation for *why* Huawei contends that offer was RAND-compliant or how it arrived at its proposed royalty rate.

With only a week and a half left in fact discovery, Huawei finally served a supplemental response that purports to explain the basis of its proposed royalty rate and for its contention that its offer was RAND.  But when Huawei's witnesses were questioned about that response in deposition, they testified the royalty proposal was ████████████████████ and refused to provide testimony beyond what is disclosed in the interrogatory response—claiming any further information is attorney-client privileged or work product.  Huawei is thus seeking to waive the privilege for *some* of its communications with counsel, so that it can put forth a narrative regarding why it contends its offer was RAND, but simultaneously preclude Verizon from seeking discovery on the *details* of those communications in order to test that narrative.  This is an improper use of privilege as a sword and a shield.

Verizon respectfully requests that this Court either (1) find that Huawei waived privilege as to why its offer was allegedly RAND, and order Huawei to produce all documents relating to its decision on the offer it made Verizon, and make available for deposition Huawei witnesses to

testify about these subject matters; or (2) preclude Huawei from offering any explanation at trial for why it believes its offer was RAND.

## II.      STATEMENT OF RELEVANT FACTS

### A.      Huawei and Verizon Engage in Pre-Suit Licensing Negotiations and Huawei Makes an "Offer" to Verizon.

Prior to Huawei's initiation of this lawsuit, Huawei and Verizon engaged in negotiations for roughly a year regarding Verizon taking a license to Huawei's patent portfolio.  During the course of those negotiations Huawei offered a license to Verizon for Huawei's optical patents at a rate of ███████████████████████  Huawei did not explain to Verizon the basis for this offer or how Huawei determined it to be appropriate.

### B.      Huawei is Obligated to Offer a License to Verizon on Reasonable and Non-Discriminatory (RAND) Terms[1].

Huawei alleges in its Complaint that each of the asserted patents is essential to an ITU-T standard.  Dkt. 1, at ¶¶ 28-31, 33-35.  Huawei alleges that five of the asserted patents are essential to the ITU-T G.709 standard and the other asserted patent is essential to the ITU-T G.8032 standard.  Dkt. 27, at ¶¶ 35, 39; Dkt. 180.  Huawei is obligated to offer a license to its patents essential to these ITU-T standards on reasonable and non-discriminatory (RAND) terms because it made a commitment to do so.  Dkt. 153, ¶¶ 301, 303-04.

### C.      Verizon Asserts that Huawei Breached its RAND Obligations and Huawei Seeks a Declaration that it Complied with its RAND Obligations.

Verizon asserts (among other claims) that Huawei breached its RAND obligations by refusing to license the asserted patents on RAND terms.  Dkt. 153 ¶¶ 501-17.  Huawei admits it made a guarantee to offer licenses to its ITU-T essential patents on RAND terms (Answer to

---

[1]    The parties have used the terms FRAND, RAND, and FRAND/RAND interchangeably in their pleadings and discovery.  The ITU-T uses the phrase reasonable and non-discriminatory, or RAND.

▮▮▮▮▮▮▮▮▮▮▮▮

Countercls. ¶¶ 29-30, 91).  But it denies that it refused to offer licenses on RAND terms, alleging that its offer complied with its obligations.  *Compare* Dkt. 23, ¶¶ 31, 96 *with* Dkt. 26, ¶¶ 31, 96.

**D.** **Verizon Seeks the Factual Basis for Huawei's Contention that Huawei Complied with its RAND Obligations, and Huawei Refuses to Disclose Such Information for Months.**

Verizon served its First Set of Interrogatories on June 18, 2020.  Interrogatory No. 5 sought basic information going to the core of Verizon's counterclaim that Huawei breached its RAND obligations, and Huawei's denial thereof.  Verizon's Interrogatory No. 5 asks:

> State your contention regarding the fair, reasonable, and non-discriminatory (FRAND) royalty rate(s), on a global and nation-by-nation basis, for a license to one or more of the Huawei Patents-in-Suit, how each such FRAND royalty rate was determined (including, to the extent Huawei contends such rate(s) are different from the rate(s) to Huawei's entire portfolio of patents allegedly Essential to the ITU-T standards, the factual and legal basis supporting any differences), the factual and legal basis supporting for such a license being on FRAND terms, the conditions under which Huawei offers or has offered each such FRAND royalty rate, and the identification of the licensee or class of licensees to whom the FRAND royalty rate(s) have been offered.

Ex. A.  Until January 22, 2021, the *most* information Huawei provided in response to this interrogatory, despite Verizon's repeated requests for more information, was:



*Id.*

**E.** **Huawei Finally Provides a Substantive Response to Interrogatory No. 5, But Claims Privilege and Work Product When Its Witnesses are Cross-Examined on the Response.**

On January 22, 2021, seven months after Verizon served Interrogatory No. 5 and a week and a half before the close of fact discovery, Huawei served a supplemental interrogatory response

███████████████████████████████

that purports to lay out the basis for why it believes its offer was RAND.  Ex. A.  Huawei further

designated a 30(b)(6) witness, ████████ to testify on, among other topics, the response to

Interrogatory No. 5 and all steps taken by Huawei to ensure that it has complied with its RAND

licensing obligations over the course of its license discussions and negotiations with Verizon.  ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

█████████████████████████████████████████████

███████████

██████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████

## III.   <u>ARGUMENT</u>

Although Huawei provided a high level explanation for why it believes its offer was RAND in its interrogatory response and allowed witnesses to testify at a similarly high level about the factors considered as a basis for Huawei's offer, ████████████████████████████████ ██████████████████ and Huawei's witnesses refused to provide any explanation as to how those factors contributed to its decision to offer █████ to Verizon, and Huawei's contention that this offer was RAND, on the ground that such information was protected by privilege or work product.  There is no legitimate basis for Huawei's selective waiver.  Under Federal Rule of Evidence 502(a), Huawei's intentional disclosure of privileged communications—both in Huawei's interrogatory response and in deposition testimony—waives the privilege with respect to any communications or information that concern the same subject matter.  Fed. R. Evid. 502(a) (waiver based on disclosure of a communication or information covered by the attorney-client privilege or work product protection extends to undisclosed communication or information where

██████████████████████████████████

"(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.").

Subject matter waiver is appropriate here, as a matter of fundamental fairness, because Huawei is using the privilege as both a sword and shield.  Where Huawei thinks that privileged communications would advance its case, Huawei selectively disclosed them—providing a narrative explanation for why it believes its offer was RAND ████████████████████ ████████  On the subject of how Huawei arrived at the rate of ██████ to offer to Verizon, and why it contends that offer is RAND, Huawei selectively disclosed ████████████████████ █████████████████████  But Huawei is simultaneously using the privilege as a sword and shield to prevent Verizon from obtaining full discovery into Huawei's decision-making process regarding the offered rate.  Huawei is precluding Verizon from testing Huawei's narrative by precluding its witnesses from testifying on the underlying details on the basis of privilege or work product. Additional discovery, both in documents and testimony, may very well reveal holes in Huawei's self-serving interrogatory response, as well as further evidence that Huawei did not negotiate in good faith and did not have evidence to support its claim that its offer was RAND.  *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349-50 (Fed. Cir. 2005) ("The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter."); *Barry v. Medtronic*, 2016 WL 3583620 (E.D. Tex. May 9, 2016) (explaining waiver arises "when the party attempts to use the privilege both as a shield and a sword by partially disclosing privileged communications or affirmatively relying on them to support its claim or defense and then shielding the underlying communications from scrutiny."); *TiVo, Inc. v. EchoStar Comm., Corp.*, 2005 WL 4131649, at *5 (E.D. Tex. Sept. 26, 2005) ("[c]onsiderations of fairness require that a litigant should not be able

████████████████████████████████

to claim reliance on advice of counsel as a defense, and hence a sword in litigation, while at the same time asserting attorney-client privilege or work product doctrine as a shield to protect against the opposing party testing the legitimacy of that claim").

Huawei's waiver therefore extends to all privileged testimony ██████████████████ ████████ and documents on the subject of how Huawei decided to make a license offer of ████ and the bases for contending that offer is RAND.  *Barry*, 2016 WL 3583620, at *11 (waiver "applies to all other communications relating to the same subject matter" and granting motion to compel discovery on waived subject matter).  Verizon requests that the Court order that Huawei has waived the attorney-client privilege and work product protection on these subject matters, that Huawei must produce all written documents and documents on these subject matters, and that Verizon be permitted to fully examine Huawei's witnesses about these subject matters.

In the alternative, the Court should preclude Huawei from offering any explanation for why it believes its offer was RAND on the ground that Huawei has not fully disclosed these facts during discovery.  Fed. R. Civ. P. 37(c).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Verizon respectfully requests that the Court order that Huawei has waived the attorney-client privilege and work product protection on the subject matters of Huawei's decision to make an offer to Verizon at ████ and Huawei's contention that its offer was RAND, and order Huawei to produce all documents on these subject matters, and make available for deposition Huawei witnesses to testify about these subject matters.

In the alternative, the Court should preclude Huawei from offering any explanation for why it believes its offer was RAND.

███████████████████████████████████

Dated:  February 2, 2021

Respectfully submitted,

By:  */s/ Charles Verhoeven*
     *(by E. Glenn Thames, Jr., with permission)*
     Patrick Curran
     patrickcurran@quinnemanuel.com
     QUINN EMANUEL URQUHART & SULLIVAN
     111 Huntington Ave, Suite 520
     Boston, Massachusetts 02199
     Telephone: 617-712-7100
     Fax: 617-712-7200

     Charles Verhoeven
     charlesverhoeven@quinnemanuel.com
     Brian Mack
     brianmack@quinnemanuel.com
     QUINN EMANUEL URQUHART & SULLIVAN
     50 California Street, 22nd Floor
     San Francisco, California  94111-4788
     Telephone: 415-875-6600
     Fax: 415-875-6700

     Kevin Hardy
     kevinhardy@quinnemanuel.com
     Deepa Acharya
     deepaacharya@quinnemanuel.com
     QUINN EMANUEL URQUHART & SULLIVAN
     1300 I Street NW, Suite 900
     Washington, D.C.  20005
     Telephone: 202-538-8000
     Fax: 202-538-8100

     Deron R. Dacus
     State Bar No. 00790553
     The Dacus Firm, P.C.
     821 ESE Loop 323, Suite 430
     Tyler, TX 75701
     Phone: (903) 705-1117
     Fax: (903) 581-2543
     ddacus@dacusfirm.com

E. Glenn Thames, Jr.
Texas Bar No. 00785097
glennthames@potterminton.com
POTTER MINTON
A PROFESSIONAL CORPORATION
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

*Attorneys for Verizon Business Network Services, Inc., Cellco Partnership D/B/A Verizon Wireless, Verizon Data Services LLC, Verizon Business Global LLC, Verizon Services Corp., and Verizon Patent and Licensing Inc.*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), the undersigned hereby certifies that counsel for the parties conducted a lead-local meet and confer regarding this Motion prior to filing.  Specifically, on February 2, 2021, counsel for Verizon (Charles Verhoeven, Deron Dacus, Kevin Hardy, Andrea Roberts, and Glenn Thames) participated in a telephonic conference with counsel for Huawei (Jason Cassady, Austin Curry, and Greg Love) regarding the issues raised herein but were unable to reach a resolution.  Thus, this Motion is opposed.

*/s/ Charles K. Verhoeven*
Charles K. Verhoeven

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this sealed document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on February 2, 2021, and a copy of this sealed document, in its entirety, via electronic mail.  All counsel who are not deemed to have consented to electronic service are being served by U.S. first-class mail.

*/s/ E. Glenn Thames Jr.*
E. Glenn Thames, Jr.

### CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 41) entered in this case on June 18, 2020.

*/s/ E. Glenn Thames Jr.*
E. Glenn Thames, Jr.