**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD., <br><br> Plaintiff, <br> v. <br> VERIZON COMMUNICATIONS, INC., et al. <br><br> Defendants. | **No. 2:20-cv-030-JRG** <br><br> Jury Trial Demanded |
| VERIZON BUSINESS NETWORK SERVICES, INC., et al. <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> HUAWEI TECHNOLOGIES CO. LTD., et al. <br><br> Counterclaim-Defendants. | |

**HUAWEI'S MOTION TO STRIKE AND EXCLUDE CERTAIN PORTIONS OF
THE EXPERT TESTIMONY OF DR. PAUL PRUCNAL**

~~FILED UNDER SEAL~~
PUBLIC VERSION

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     LEGAL STANDARDS ........................................................................................... 1

        A.      Expert reports may not introduce new theories not disclosed in contentions............ 1

        B.      Unreliable expert opinions must be excluded under *Daubert*. ................................. 1

III.    ARGUMENT .......................................................................................................... 2

        A.      Dr. Prucnal's report contains new infringement theories not disclosed
                in Verizon's infringement contentions that should be excluded............................... 2

        B.      Dr. Prucnal applied the wrong legal standard in establishing an earlier
                priority date for the '111 Patent. ............................................................................. 5

        C.      Dr. Prucnal's estimate of the cost of an alleged non-infringing alternative
                to Huawei's customers is an entirely conclusory *ipse dixit*. ..................................... 7

IV.     CONCLUSION ....................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Better Mouse Co., LLC v. SteelSeries APS*
No. 2:14-cv-198-RSP, 2016 WL 7665892 (E.D. Tex. Jan. 8, 2016) ........................................ 1

*Bmc Software, Inc. v. Servicenow, Inc.*
No. 2:14-cv-903-JRG, 2016 WL 379620 (E.D. Tex. Feb. 1, 2016) ........................................ 8

*Brown v. Barbacid*
436 F.3d 1376 (Fed. Cir. 2006) ............................................................................................ 6

*Daubert v. Merrell Dow Pharms., Inc.*
509 U.S. 579 (1993) ......................................................................................................... 1, 2

*Gen. Elec. Co. v. Joiner*
522 U.S. 136 (1997) ......................................................................................................... 2, 9

*Genband US LLC v. Metaswitch Networks Corp.*
No. 2:14-cv-33-JRG-RSP, 2016 WL 3475688 (E.D. Tex. Jan. 7, 2016) .................................. 9

*In re Jolley*
308 F.3d 1317 (Fed. Cir. 2002) .......................................................................................... 5, 6

*Kumho Tire Co., Ltd. v. Carmichael*
526 U.S. 137 (1999) ............................................................................................................ 2

*Mahurkar v. C.R. Bard, Inc.*
79 F.3d 1572 (Fed. Cir. 1996) .............................................................................................. 6

*Medichem, S.A. v. Rolabo, S.L.*
437 F.3d 1157 (Fed. Cir. 2006) ............................................................................................ 6

*Perfect Surgical Techs., Inc. v. Olympus Am., Inc.*
841 F.3d 1004 (Fed. Cir. 2016) ............................................................................................ 6

*ROY-G-BIV Corp. v. ABB, Ltd.*
63 F. Supp. 3d 690 (E.D. Tex. Aug. 8, 2014) .................................................................. 1, 4, 5

*Viterbo v. Dow Chem. Co.*
826 F.2d 420 (5th Cir. 1987) ............................................................................................ 2, 7

**Rules**

Fed. R. Evid. 702 ........................................................................................................... 1, 9

P.R. 3–1........................................................................................................................... 1

## I.       INTRODUCTION

Huawei respectfully moves to strike and exclude certain opinions contained in the Expert Report of Paul Prucnal regarding the alleged infringement of claims 1, 6, 12, 15, and 16 of U.S. Patent Nos. 8,121,111 ("'111 Patent") and 8,983,288 ("'288 Patent") ("Asserted Claims"). Specifically, Huawei moves to strike a new infringement theory improperly introduced in Dr. Prucnal's report that never disclosed in Verizon's Infringement Contentions ("ICs"), and to exclude under *Daubert* certain opinions of Dr. Prucnal because they are based on an erroneous understanding of the law or are entirely conclusory and unreliable.

## II.      LEGAL STANDARDS

### A.       Expert reports may not introduce new theories not disclosed in contentions.

Under the Local Patent Rules, a party asserting infringement must serve infringement contentions that "set forth specific theories of infringement at the outset of the case." *ROY-G-BIV Corp. v. ABB, Ltd.*, 63 F. Supp. 3d 690, 699 (E.D. Tex. Aug. 8, 2014) (discussing P.R. 3–1 and citing cases). The purpose of the Rules is "to require the parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Better Mouse Co., LLC v. SteelSeries APS*, No. 2:14-cv-198-RSP, 2016 WL 7665892, at *1 (E.D. Tex. Jan. 8, 2016). Thus, "[e]xpert infringements reports may not introduce theories not previously set forth in infringement contentions." *ROY-G-BIV*, 63 F. Supp. 3d at 699.

### B.       Unreliable expert opinions must be excluded under *Daubert*.

The Federal Rules of Evidence allow expert testimony to be admitted only when "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702. The Court acts as a gatekeeper to determine whether expert testimony meets this standard. *See, e.g.*, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-93

1

(1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-152 (1999). "If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury" and must be excluded. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). Moreover, nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## III.   ARGUMENT

### A.   Dr. Prucnal's report contains new infringement theories not disclosed in Verizon's infringement contentions that should be excluded.

Dr. Prucnal's report improperly introduces a new infringement theory as to how the Accused Products allegedly extract certain required information from the overhead of an optical transport unit (OTU) frame. All of the Asserted Claims require that "information of a first timestamp" be extracted "from the first overhead of the first optical transport unit frame. *See, e.g.*, Ex. A ("'111 Patent") Claim 1 ("extracting information of the first time stamp from the first overhead of the first optical transport unit frame"); Ex. B ("'288 Patent") Claim 1 (same); '111 Patent Claim 6 ("information of the first time stamp extracted from the first overhead of the first optical transport unit frame"); '288 Patent Claim 6 (same); '111 Patent Claim 16 (same); '288 Patent Claim 16 (same); '111 Patent Claim 12 ("extract information of the first time stamp from the first overhead of the first optical transport unit frame"); '288 Patent Claim 12 (same).

In his infringement report, Dr. Prucnal relies on the Accused Products' alleged generation of time value "t4," among other things, as meeting these limitations requiring extraction of "information of the first time stamp." Ex. C █████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████

2

███████████████████████████████████[1] Dr. Prucnal acknowledges that, unlike the other items he relies on as being the claimed extracted information, time value "t4" is not contained in the Delay_Req message at all, but is instead generated by the receiving device.  *See* Prucnal Inf. Rep. ¶ 180 ████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████

Verizon's infringement contentions never identified time value "t4" as the extracted information it was relying on for these limitations.   Rather, Verizon's Amended ICs identified four specific elements of the Delay_Req message as being the extracted information: the originTimestamp, correctionField, sequenceID, and sourcePortIdentity fields.  *See, e.g.*, Ex. D ("'111 ICs") at 41 ("At least the "*originTimestamp*" and/or "*correctionField*" is information extracted . . . from the overhead of the OTU frame" (emphasis added)), 43 ("*sequenceID* and *sourcePortIdentity* fields are also extracted" (emphasis added)); Ex. E ("'288 ICs") at 31, 35 (same).  Correspondingly, the contentions included highlighted excerpts of various documents in which the highlighting was applied to the portions that discussed these specific elements of the Delay_Req message.  '111 ICs at 42-44; '288 ICs at 31-36.

Verizon's contentions made no such statement regarding time value "t4."  The contentions do not identify "t4" as information extracted from the Delay_Req message.  And

---

[1] Dr. Prucnal's analysis for the analogous limitations in the other Asserted Claims refers back to his analysis for Claim 1 of the '111 Patent, which is in Section VIII(A)(3) of his report. ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

certainly nothing in Verizon's contentions suggests Verizon planned to rely on information that is **not even contained within the identified Delay_Req message** as somehow being information that could be extracted from that message.  This infringement theory raises new issues of claim scope that were not addressed by the parties during claim construction because of Verizon's failure to timely disclose the theory in its contentions, as the Local Patent Rules require.  The Court should exclude this untimely theory.  *ROY-G-BIV*, 63 F. Supp. 3d at 699.

Dr. Prucnal's expert report also raises an improper new doctrine of equivalents theory based on the time value "t4."  Prucnal Inf. Rep ¶ 193.  Just as with literal infringement, Verizon's doctrine of equivalents recitation in its ICs provides no notice that Verizon intended to point to time value "t4" as the extracted information.  *See, e.g.*, '111 ICs at 45; '288 ICs at 35.  Certainly, the doctrine of equivalents recitation itself makes no mention of t4.  And as discussed above, neither do Verizon's contentions for the extracting limitation.  Indeed, the specific function-way-result theory Verizon disclosed in its contentions makes no sense when applied to time value "t4" because "t4" is not actually part of the received message.  Accordingly, Dr. Prucnal needed to provide a different function-way-result analysis to support the opinion in his report.  The chart below compares the two, revealing the shift away from Verizon's original theory based on the extracted information being an element contained in the message.

|  | **Verizon's Amended ICs** | **New Theory in Dr. Prucnal's Report** |
|---|---|---|
| Function | extracting information relating to a timestamp *from the overhead* of an optical transport unit frame | █████████████████████ ████████ |
| Way | using a value of *a field in a received timestamp message* to copy or add to a corresponding field in another timestamp message | ████████████████████████ ████████ |
| Result | obtaining information *from the first timestamp* | ███████████████████████ ███████ |

4

*Compare* '111 ICs at 45 (emphasis added) *with* Prucnal Report ¶ 193. As with literal infringement, this previously undisclosed theory raises new claim construction issues and should be excluded.

Thus, given that Verizon's contentions did not disclose any theory in which the time value "t4" could be the extracted information required by the Asserted Claims, Dr. Prucnal's opinions based on this new, undisclosed theory should be stricken. *ROY-G-BIV*, 63 F. Supp. 3d at 699.

**B.      Dr. Prucnal applied the wrong legal standard in establishing an earlier priority date for the '111 Patent.**

Dr. Prucnal opines that the '111 Patent is entitled to an earlier priority date, but he applied an improper understanding of the law in forming his opinion. He opines that " ███

████████████████████████████████████████████████████████

████████████████████████████Prucnal Inf. Rep. ¶ 125. Critically, however, Dr. Prucnal's sole factual basis for his opinion that Mr. Freiberger was diligent is the testimony of Mr. Freiberger himself. But the law requires that the alleged inventor's testimony regarding diligence be corroborated by other evidence.

An inventor who was first to conceive but second to reduce an invention to practice is "required to demonstrate diligence in reducing the invention to practice for a period extending from just prior to [the other party]'s conception . . . through [the inventor's] own reduction to practice." *In re Jolley*, 308 F.3d 1317, 1326 (Fed. Cir. 2002). Diligence requires reasonably continuous activity toward reduction to practice so that the invention's conception and reduction to practice are substantially one continuous act. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). Importantly, well-settled Federal Circuit precedent holds that the inventor's testimony alone is insufficient to establish diligence. *Medichem, S.A. v. Rolabo, S.L.*,

5

437 F.3d 1157, 1170 (Fed. Cir. 2006) ("Even the most credible inventor testimony is *a fortiori* required to be corroborated by independent evidence."); *see also Brown v. Barbacid*, 436 F.3d 1376, 1380 (Fed. Cir. 2006) ("Precedent requires that an inventor's testimony concerning his diligence be corroborated.") (citing *In re Jolley*, 308 F.3d at 1328).

In this case, Dr. Prucnal's opinion that Mr. Freiberger was diligent is based on only one source of information—uncorroborated inventor testimony. *See* Prucnal Inf. Rep. ¶¶ 124-25. While Dr. Prucnal purports to rely on "███████████████████████████████ ███████████ Dr. Prucnal fails to cite any draft patent applications, prosecution invoices, or email correspondence (either within Verizon or with prosecution counsel). Indeed, the only document beyond inventor testimony that Dr. Prucnal relies for his opinion regarding the earlier priority date is an unsigned Invention Disclosure Form ("IDF"), which he claims demonstrates conception. *See id.* ¶ 123. But even if this unwitnessed IDF corroborated the alleged conception, it necessarily fails to evidence any events that occurred ***after*** the IDF was drafted (*i.e.*, after the alleged conception). Thus, the IDF cannot possibly corroborate any alleged diligence in reducing the alleged invention to practice in the time between its drafting and the filing of the patent application.

At most, the IDF confirms that ██████████████████████████████████ ████████████████████████████████████—for which there is no independent corroboration of Mr. Freiberger's testimony regarding his purported diligence. The law is clear that "[a]n inventor's explanations for inactivity must be corroborated." *Perfect Surgical Techs., Inc. v. Olympus Am., Inc.*, 841 F.3d 1004, 1016 (Fed. Cir. 2016). Consequently, Dr. Prucnal's reliance on Mr. Freiberger's testimony alone to form an opinion that he was diligent during that five-month gap renders his opinion legally unsupportable and unreliable, and thus unhelpful to the

6

jury. Dr. Prucnal's opinion regarding Mr. Freiberger's alleged diligence should therefore be excluded. *See Viterbo*, 826 F.2d at 422 ("fundamentally unsupported opinions" offer "no expert assistance to the jury").

Because Dr. Prucnal's opinion that the '111 Patent should be entitled to an earlier priority date of ███████████████████████████████████) relies upon his faulty diligence analysis, it is likewise unreliable and should be excluded. As a result, Dr. Prucnal should also be precluded from offering an opinion that any of Huawei's asserted references do not qualify as prior art because their priority dates fall between ██████████████ ████

**C.     Dr. Prucnal's estimate of the cost of an alleged non-infringing alternative to Huawei's customers is an entirely conclusory *ipse dixit*.**

Dr. Prucnal also offers his opinion regarding the cost that Huawei's customers would allegedly incur by switching to a non-infringing alternative: a GPS-based solution for time synchronization. Prucnal Inf. Rep. ¶ 87. Dr. Prucnal's opinion—which cites no independent evidence for support—is that ████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ ████████████████████████████████████ ████████████"[2]

---

[2] Dr. Prucnal's opinion in turn is the linchpin of one of Mr. Bakewell's (Verizon's damages expert) estimates of damages for the Verizon Patents. Ex. F ("Bakewell Op. Rep.") ¶ 138. Mr. Bakewell simply takes Dr. Prucnal's *ipse dixit* per-customer cost estimate, further estimates an hourly rate for the labor, and scales it up based on the total number of Huawei customers at issue. *Id.* ¶ 139, n.295. Should the Court grant Huawei's motion to exclude Dr. Prucnal's testimony as unreliable, Mr. Bakewell should likewise not be permitted to rely upon the excluded opinion to calculate damages.

7

Dr. Prucnal offers nothing to support his opinion that those customers ████████  ████████████████████████████████████████████ Prucnal Inf. Rep. ¶ 87.   He does not cite factual support that would show that any of Huawei's customers actually use the Accused Products with a base station at all.[3]  His "experience" cannot save his defective opinion because he did not bother to find out even the barest information about Huawei's customers that would have been necessary for him to apply his experience to this question.  As he admitted at his deposition, he does not even know who Huawei's customers for the Accused Products are because he ████████████████████████████████████ Ex. G ("Prucnal Dep.") at 114:25-116:12, 120:19-24.  He does not know their business models, *id.* at 121:4-12, or whether any of them operate ████████████████████████████████ *id.* at 124:12-19.  Above all, he does not know whether any of Huawei's customers were wireless mobile providers, such that they would even operate base stations.  *Id.* at 123:16-22; 125:6-20

In view of Dr. Prucnal's complete ignorance regarding Huawei's customers, his opinion that each of Huawei's customers would ████████████████████████ is pure speciation, based on nothing more than his own *ipse dixit*. Consequently, his opinion regarding the average cost for Huawei's customers to switch to a GPS alternative is unreliable and should be excluded.  *See Bmc Software, Inc. v. Servicenow, Inc.*, No. 2:14-cv-903-JRG, 2016 WL 379620, at *2 (E.D. Tex. Feb. 1, 2016) (striking expert whose "opinions [were] nothing more than *ipse dixit* statements") (citing *Gen. Elec.*, 522 U.S. at 146); *see also Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 3475688, at *2 (E.D. Tex. Jan.

---

[3] Base stations are not the Accused Products, but rather are other devices that could be used in one of many potential applications for networks involving the Accused Products.  Yet it is not the case that all networks with optical transport equipment such as the Accused Products would necessarily have base stations, and Dr. Prucnal does not contend otherwise.

7, 2016) ("Conclusory opinions unsupported by 'facts or data' and based on no discernable 'principles and methods' are not admissible under Fed. R. Evid. 702.").

## IV.   CONCLUSION

For the reasons discussed above, the Court should strike Dr. Prucnal's opinions and preclude him from testifying as set forth above.

Dated:  March 29, 2021

Respectfully submitted,

*/s/ Jason D. Cassady*
Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
Justin Nemunaitis
Texas Bar No. 24065815
Email: jnemunaitis@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848

Gregory P. Love
Texas Bar No. 24013060
greg@lovetrialfirm.com
**LOVE LAW FIRM**
P.O. Box 948
Henderson, Texas 75653
Telephone: (903) 212-4444

David M. Barkan
California Bar No. 160825
barkan@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070


**ATTORNEYS FOR PLAINTIFF HUAWEI TECHNOLOGIES CO. LTD., AND COUNTERCLAIM DEFENDANTS HUAWEI TECHNOLOGIES USA, INC., AND FUTUREWEI TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on all counsel via electronic mail on March 29, 2021.

*/s/ Jason D. Cassady*
Jason D. Cassady

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order submitted in this case.

*/s/ Jason D. Cassady*
Jason D. Cassady

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for Huawei conferred with counsel for Defendants and that the relief requested herein is opposed.

*/s/ Jason D. Cassady*
Jason D. Cassady