IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> VERIZON COMMUNICATIONS, INC., VERIZON BUSINESS NETWORK SERVICES, INC., VERIZON ENTERPRISE SOLUTIONS, LLC, CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, INC., VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, AND VERIZON SERVICES CORP. <br><br> Defendants. | C.A. 2:20-cv-00030-JRG |
| VERIZON BUSINESS NETWORK SERVICES, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, VERIZON SERVICES CORP., AND VERIZON PATENT AND LICENSING INC. <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> HUAWEI TECHNOLOGIES CO. LTD., HUAWEI TECHNOLOGIES USA, INC., AND FUTUREWEI TECHNOLOGIES INC. <br><br> Counterclaim-Defendants. | |

**VERIZON'S SUR-REPLY IN SUPPORT OF ITS OPPOSITION TO
HUAWEI'S MOTION FOR SUMMARY JUDGMENT OF
<u>VERIZON'S BREACH OF CONTRACT COUNTERCLAIM</u>**

███████████████████████████████████████

**NOTES ON CITATIONS**

1. "Mot." refers to Huawei's Motion for Summary Judgment on Verizon's Breach of Contract Counterclaim (Dkt. 262). "Mot. 8" refers to page 8 of Dkt. 262.

2. "Opp." refers to Verizon's Opposition to Huawei's Motion For Summary Judgment Of Verizon's Breach Of Contract Counterclaim (Dkt. 304). "Opp. 3" refers to page 3 of Dkt. 304. "Opp. Ex. Z at 1" refers to page 1 of Exhibit Z to Dkt. 304.

3. "Reply" refers to Huawei's Reply In Support Of Its Motion For Summary Judgment Of Verizon's Counterclaim Of Breach Of Contract (Dkt. 340). "Reply 1" refers to page 1 of Dkt. 340.

4. "Mondini Rpt." refers to the Expert Report of Andrea Mondini, previously provided to the Court on March 29, 2021. "Mondini Rpt. ¶ 28" refers to Paragraph 28 of Dr. Mondini's report.

███████████████████████████████████████

███████████████████████

6. Ex. B refers to the Supplemental Declaration of Andrea Mondini, LLM.

7. Ex. C refers to excerpts from Andrea Mondini's Deposition Transcript.

## I.     HUAWEI'S MISCONSTRUCTION OF VERIZON'S CLAIM IS FATAL.

Verizon has consistently claimed that Huawei breached its RAND obligations through a wide range of conduct during the parties' pre-suit license negotiations. That Huawei continues to ignore (Reply 1–3) the basis for Verizon's claim does not make it go away. In its complaint, Verizon alleged that "Huawei . . . singl[ed] out Verizon on a discriminatory basis in violation of its licensing declarations and FRAND obligations" (Dkt. 153 ¶ 512); that Huawei "failed to offer Verizon a single license on FRAND terms for any of the asserted patents" (*id.* ¶ 511); and that Huawei "s[ought] damages in excess of FRAND terms in violation of its licensing declarations and FRAND obligations" (*id.*); and it incorporated those allegations, and more, into its breach of contract claim. (*See* Opp. at 6–7.)

Verizon further explained the nature and scope of its claim in its responses to Huawei's contention interrogatories. In response to Huawei's interrogatory requesting that Verizon "[d]escribe the basis for [its] assertion that Huawei breached a FRAND/RAND commitment,"[1] Verizon clearly set forth the wide basis for its breach claim: Huawei's decision to single out Verizon for discriminatory and retaliatory treatment (Opp. Ex. A at 18, 22); Huawei's failure to negotiate in good faith with Verizon towards a license on RAND terms (*id.*); Huawei's pursuit of excessive royalties in violation of its RAND commitments and failing to provide a sound economic rationale for its royalty framework (*id.* at 19); its failure to provide a basis for its purportedly RAND offer (*id.*); its decision to abruptly sever negotiations to initiate this lawsuit and make

---

[1] Huawei now claims (Reply 2 n.1) that "Interrogatory 16 is not explicitly about Verizon's [sic] breach of contract." But Interrogatory No. 16 expressly requests the basis for Verizon's assertion that Huawei breached the underlying contractual agreement in this case. And Verizon *explicitly incorporated its answer to Interrogatory No. 16* into the interrogatory that Huawei now cites as evidence that Verizon's claim is narrower (Reply 2 (citing Ex. A)); Ex. A at 58 ("Verizon hereby incorporates by reference its responses to Interrogatories 8, 16, 17, and 18, and all supplements thereto."). If Huawei misunderstood Verizon's response—which unambiguously laid out how "Huawei breached a FRAND/RAND commitment" and how that formed "the factual and legal basis . . . [of] Verizon's breach of contract counterclaim" (*id.* at 58)—it should have sought clarity during discovery, not summary judgment.

additional non-RAND royalty demands therein (*id.* at 25); and more.  Though Huawei may wish (Reply 2) that "all of this alleged conduct [was] nothing more than . . . build up" to Verizon's claim, it has no right to summary judgment based on that plain misreading of Verizon's claim and contentions.  *Harbison-Fischer, Inc. v. JWD Int'l*, No. MO-07-CA-58-H, 2008 WL 11334524, at *3 (W.D. Tex. Dec. 22, 2008) (no summary judgment where moving party tried to "strawman" non-movant's claim).[2]

## II.   HUAWEI ADMITS THERE ARE NUMEROUS DISPUTES OF FACT AT ISSUE.

The issue of whether Huawei breached its RAND obligations is fact-intensive.  *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00052, 2017 WL 3954108, at *3 (E.D. Tex. Aug. 29, 2017) ("Whether Huawei's conduct was consistent with its FRAND commitment is a highly factual inquiry.").  Huawei does not disagree that there are a multitude of factual disputes; it simply, and incorrectly, contends that those disputes are immaterial.  (Reply 3–4.)

## III.  HUAWEI'S ONLY REPLY IS AN UNSUPPORTED READING OF SWISS LAW.

Having admitted to numerous disputed issues of fact, Huawei's only response is to argue (Reply 2–3) that these disputes are somehow irrelevant under Swiss law.  But that argument is wrong, unsupported and, as explained in the next section, untimely.  The parties' Swiss law experts ***agree*** that Huawei's RAND commitments obligated it to negotiate in good faith with Verizon towards a RAND license.  And while Huawei now claims that a breach of that obligation only

---

[2]  *See also Islam v. Bridgeton*, 804 F. Supp. 2d 190, 196 (D.N.J. 2011) ("In our adversarial system of law, there is a limit to the order that this Court can independently impose. . . . Since Defendants have decided to move for summary judgment despite their confusion over the content of Plaintiff's claims, it is their burden to show that they are entitled to judgment as a matter of law. . . . [T]he Court must examine the claim the way Plaintiff presents it . . . . [If] Defendants fail to address the material elements of a given claim as explained . . . their motions will be denied regardless of the Court's own assessment of the . . . . pleading or evidence[.]").

gives rise to a defense, and not an affirmative claim, the law is otherwise.[3]

### A. Huawei's expert acknowledges its Swiss duty of good faith RAND negotiation.

Huawei's motion for summary judgment is based on two false premises: first, that Verizon's claim is limited to the allegation that Huawei breached its RAND obligations "by filing this suit for damages before making a RAND-compliant offer," (Mot. 1; id. 6–7, 9); and second, that Huawei's RAND obligations are relevant only insofar as they prevent Huawei from seeking injunctive relief (Mot. 3–4). The incorrectness of the first premise is addressed above. As for the second, as Verizon explained in its Opposition, Huawei's RAND obligations are not as limited as Huawei contends. They require Huawei to engage in "good faith negotiation of a license, the terms and conditions of which are RAND." (Opp. at 8 (quoting Mondini Rpt. ¶ 32).) Notably, Huawei's Swiss law expert *agrees*. (Opp. Ex. Z 55:20–56:1 ("Q Do you agree that under Swiss law, once Huawei approached Verizon for a license to its patents, it was obligated to negotiate in good faith with Verizon? A The good faith applies to the negotiation yes, so the obligation of -- yeah. It's an obligation of good faith in negotiations."); Opp Ex. Y ¶ 64.)

### B. Swiss law recognizes a claim for breach of Huawei's RAND obligations.

Although Huawei concedes that, under Swiss law, its RAND commitments obligate it to negotiate in good faith with implementers such as Verizon, Huawei claims that Swiss law provides no remedy for a breach of that obligation and, worse, that Verizon's Swiss law expert supposedly agreed that there is no such remedy. Huawei is wrong on both counts.

As Verizon's expert explained at his deposition and reiterates in the attached Supplemental Declaration, "*a claim for damages for breach of a RAND obligation is a viable claim under*

---

[3] While Swiss substantive law applies to Verizon's breach of contract claim, it bears noting that Swiss procedural law does not. *See Randall v. Arabian Am. Oil Co.*, 778 F.2d 1146, 1152 (5th Cir. 1985) (under *Erie*, foreign procedural rules do not apply).

***Swiss law***." (Ex. B (Supp. Decl. of Andrea Mondini, LLM) ¶ 8.)  Dr. Mondini has consistently explained that Huawei's RAND commitments are "obligations" under Swiss law (as opposed to "incumbencies"). (*Id.* ¶ 3.) And "[u]nder general principles of Swiss law, the breach of an obligation to negotiate in good faith may trigger a claim for damages under the theory of '*culpa in contrahendo*', which in Latin means 'fault when negotiating.'" (*Id.* ¶ 4.) As Dr. Mondini explains, Swiss courts have expanded the *culpa in contrahendo* theory to a broader doctrine of liability for "reliance," which likewise supports an affirmative claim for damages. (*Id.* ¶¶ 5–7.) And the existence of such a claim makes sense. If there were no affirmative claim for damages for breach of a RAND obligation, "then an implementer would have no recourse against an SEP holder who in bad faith caused that implementer to incur needless costs in the negotiations."[4] (*Id.* ¶ 8.)

Dr. Mondini's deposition testimony was entirely consistent with these points—indeed, he expressly invoked the theories of *culpa in contrahendo* and reliance to explain how a party could secure compensation for damages caused by a counter-party that breached its obligation to negotiate in good faith. (*See* Ex. C 26:10–27:2.) Even so, Huawei claims that Dr. Mondini somehow "agree[d] that an implementer cannot sue for breach of contract because an SEP-holder is unreasonable in pre-suit negotiations." (Reply 3 (citing Ex. C 41:18-42:6).) That is not an accurate characterization of Dr. Mondini's testimony. In the snippet of testimony cited by Huawei, Dr. Mondini was asked a hypothetical about whether an implementer could sue an SEP holder for

---

[4] Huawei does not cite its own Swiss law expert in support of its arguments on this issue. (*See* Reply 3.) Rather, it cites to an article by Brunner. But Brunner's reasoning on this point is inconsistent and has not been adopted by a Swiss court. Brunner's article is inconsistent insofar as it agrees that the RAND commitment "creates an *obligation* to negotiate . . . in good faith with the third party." (Ex. B. (Mondini Supp. Decl. ¶ 11) (quoting Florian Brunner, FRAND-Obliegenheiten bei standardessenziellen Patenten aus vertrags- und kartellrechtlicher Perspektive, 2019 SIC! 5 (2019), p. 8).) Indeed, "[i]n support of his position, Brunner cites Prof. Felix Dasser who further explains that the breach of this obligation to negotiate in good faith triggers damages like under *culpa in contrahendo*." (*Id.* (citing OFK-Dasser, OR 22, no. 7).) Brunner then pivots to say that "RAND declarations are not real obligations but just 'incumbencies' ('*Obliegenheiten*')." (*Id.*) As Dr. Mondini explains, "Brunner does not provide compelling reasons why the general principles I discussed above should not apply to RAND cases; indeed, there is no indication in his article that he considered the doctrines of *culpa in contrahendo* and the doctrine of liability for reliance." (*Id.*)

4

breach of the RAND obligation if the implementer simply thought the SEP holder's offer was unreasonable. (*See* Ex. C 41:18–42:6 (cited at Reply 3).) Dr. Mondini testified that, in such a case, the implementer could not sue for breach just because the offer was too high. (*Id.*) That hardly supports Huawei's claim that an implementer can **never** sue for breach of a RAND commitment, and as explained above, that is not Dr. Mondini's opinion. (Ex. B ¶¶ 8–10.)

In sum, Swiss law recognizes a claim for damages based on an SEP holder's bad faith breach of its RAND obligations; Verizon has pled such a claim; and there are a multitude of disputed facts that prevent Huawei from obtaining summary judgment on that claim.

### IV. THE NEW ARGUMENTS IN HUAWEI'S REPLY ARE WAIVED.

Finally, even if Huawei's Swiss law arguments had merit (and they do not), they come too late. Huawei chose to move for summary judgment on the narrow ground that Verizon's claim was limited to the allegation that Huawei violated its RAND commitments "by filing this suit for damages before making a RAND-compliant offer," and that Swiss law did not support such a claim. (Mot. 1; *id*. 6–7, 9.) For the reasons above, Verizon's claim is not so limited, and in recognition of that fact, Huawei now has come forward with a new argument that "Verizon does not have any evidence that Swiss law permits the breach of contract theories it now seeks." (Reply 2–3.) That argument—made for the first time in Huawei's Reply—is waived. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-CV-911, 2015 WL 5786501, at *5 (E.D. Tex. Sept. 30, 2015) (Gilstrap, J.) ("LG raises a new issue for the first time in its Reply brief . . . . ***The Court does not consider arguments raised for the first time in a reply brief.***" (emphasis added)).

### V. CONCLUSION

For the reasons above, this Court should deny Huawei summary judgment on Verizon's breach of contract counterclaim.

|  |  |
|---|---|
| Dated:  April 28, 2021 | Respectfully submitted,<br><br>By: */s/ Charles Verhoeven*<br>      *(by E. Glenn Thames, Jr., with permission)*<br>Patrick Curran<br>patrickcurran@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN<br>111 Huntington Ave, Suite 520<br>Boston, Massachusetts 02199<br>Telephone: 617-712-7100<br>Fax: 617-712-7200<br><br>Charles Verhoeven<br>charlesverhoeven@quinnemanuel.com<br>Brian Mack<br>brianmack@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN<br>50 California Street, 22nd Floor<br>San Francisco, California  94111-4788<br>Telephone: 415-875-6600<br>Fax: 415-875-6700<br><br>Kevin Hardy<br>kevinhardy@quinnemanuel.com<br>Deepa Acharya<br>deepaacharya@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN<br>1300 I Street NW, Suite 900<br>Washington, D.C.  20005<br>Telephone: 202-538-8000<br>Fax: 202-538-8100<br><br>Deron R. Dacus<br>State Bar No. 00790553<br>The Dacus Firm, P.C.<br>821 ESE Loop 323, Suite 430<br>Tyler, TX 75701<br>Phone: (903) 705-1117<br>Fax: (903) 581-2543<br>ddacus@dacusfirm.com |

E. Glenn Thames, Jr.
Texas Bar No. 00785097
glennthames@potterminton.com
POTTER MINTON
A PROFESSIONAL CORPORATION
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

*Attorneys for Verizon Business Network Services, Inc., Cellco Partnership D/B/A Verizon Wireless, Verizon Data Services LLC, Verizon Business Global LLC, Verizon Services Corp., and Verizon Patent and Licensing Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with notice of the filing of this sealed document via the Court's CM/ECF system pursuant to Local Rule CV-5(a) on April 12, 2021, and a copy of this sealed document, in its entirety, via electronic mail. All counsel who are not deemed to have consented to electronic service are being served by U.S. first-class mail.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 41) entered in this case on June 18, 2020.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.