*Exhibit A*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO. LTD., | |
|       Plaintiff, | |
|       v. | No. 2:20-cv-00030-JRG |
| VERIZON COMMUNICATIONS, INC., VERIZON BUSINESS NETWORK SERVICES, INC., VERIZON ENTERPRISE SOLUTIONS, LLC, CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, INC., VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, VERIZON SERVICES CORP., AND VERIZON PATENT AND LICENSING INC. | JURY TRIAL DEMANDED |
|       Defendants. | FILED UNDER SEAL PUBLIC VERSION |
| VERIZON BUSINESS NETWORK SERVICES, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON DATA SERVICES LLC, VERIZON BUSINESS GLOBAL LLC, VERIZON SERVICES CORP., AND VERIZON PATENT AND LICENSING INC. | |
|       Counterclaim-Plaintiffs, | |
|       v. | |
| HUAWEI TECHNOLOGIES CO. LTD., HUAWEI TECHNOLOGIES USA, INC., AND FUTUREWEI TECHNOLOGIES INC. | |
|       Counterclaim-Defendants. | |

**[PROPOSED] FIRST AMENDED JOINT PRETRIAL ORDER**

The Pretrial Conference is scheduled on June 16–17, 2021, at 9:00 a.m. in Marshall, Texas, pursuant to the Court's Second Amended Docket Control Order (Dkt. No. 275), and Rule 16 of the Federal Rules of Civil Procedure.  The following parties submit this First Amended Joint Pretrial Order: Plaintiff and Counterclaim Defendants Huawei Technologies Co. Ltd. ("Huawei" or "Plaintiff"), Huawei Technologies USA, Inc. and Futurewei Technologies Inc. (collectively with Huawei, "Counterclaim Defendants") and Defendants Verizon Communications Inc., Verizon Business Network Services, Inc., Verizon Enterprise Solutions, LLC, Cellco Partnership d/b/a Verizon Wireless, Verizon Data Services LLC, Verizon Business Global LLC, Verizon Services, Corp. and Verizon Patent and Licensing Inc. ("Verizon" or "Defendants"). Subject to the other rulings made at the Pretrial Conference, the Court enters this Order.

## I.    COUNSEL FOR THE PARTIES

### Attorneys for Plaintiff Huawei Technologies Co. Ltd.:

Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
Kevin L. Burgess
Texas Bar No. 24006927
Email: kburgess@caldwellcc.com
Brian D. Johnston
Texas Bar No. 24080965
Email: bjohnston@caldwellcc.com
Daniel R. Pearson
Texas Bar No. 24070398
Email: dpearson@caldwellcc.com
Justin T. Nemunaitis
Texas Bar No. 24065815

Email: jnemunaitis@caldwellcc.com
Hamad M. Hamad
Texas Bar No. 24061268
Email: hhamad@caldwellcc.com
Robert Seth Reich Jr.
Texas Bar No. 24088283
Email: sreich@caldwellcc.com
Bailey A. Blaies
Texas Bar No. 24109297
Email: bblaies@caldwellcc.com
Alexander A. Waldrop
Texas Bar No. 24102619
Email: awaldrop@caldwellcc.com
Haley S. Grissom
Texas Bar No. 24122838
Email: hgrissom@caldwellcc.com
Warren J. McCarty, III
Texas Bar No. 24107857
Email: wmccarty@caldwellcc.com
John F. Summers
Texas Bar No. 24079417
Email: jsummers@caldwellcc.com
Xu Zhou
Texas Bar No. 24121219
Email: xzhou@caldwellcc.com
Christopher S. Stewart
Texas Bar No. 24079399
Email: cstewart@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Gregory P. Love
Texas Bar No. 24013060
greg@lovetrialfirm.com
**LOVE LAW FIRM**
P.O. Box 948
Henderson, Texas 75653
Telephone: (903) 212-4444

David M. Barkan
California Bar No. 160825
barkan@fr.com
**FISH & RICHARDSON P.C.**

500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

Adam R. Shartzer
DC Bar No. 994420
shartzer@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Ave., S.W. Suite 1000
Washington, D.C. 20024

Lawrence K. Kolodney
Massachusetts Bar No. 556851
kolodney@fr.com
**FISH & RICHARDSON P.C.**
One Marina Park Drive
Boston, MA 02210

Matthew A. Colvin
Texas Bar No. 24087331
colvin@fr.com
Thomas Howard Reger, II
Texas Bar No. 24032992
reger@fr.com
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, Texas 75201

Oliver J. Richards
California Bar No. 310972
orichards@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130

**Attorneys for Defendant Verizon Communications Inc.:**

Deron R. Dacus
State Bar No.  00790553
Shannon Marie Dacus
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com
sdacus@dacusfirm.com

3

Charles Kramer Verhoeven
Brian Mack
Bina Patel
**QUINN EMANUEL URQUHART & SULLIVAN**
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone: 415-875-6600
Fax: 415-875-6700
charlesverhoeven@quinnemanuel.com
brianmack@quinnemanuel.com
binapatel@quinnemanuel.com

Patrick Curran
Anne-Raphaelle Aubry
Hannah Dawson
**QUINN EMANUEL URQUHART & SULLIVAN**
111 Huntington Ave, Suite 520
Boston, Massachusetts 02199
Telephone: 617-712-7100
Fax: 617-712-7200
patrickcurran@quinnemanuel.com
anneraphaelleaubry@quinnemanuel.com
hannahdawson@quinnemanuel.com

Kevin Hardy
Deepa Acharya
Patrick James Stafford
Courtney Kasuboski
**QUINN EMANUEL URQUHART & SULLIVAN**
1300 I Street NW, Suite 900
Washington, D.C.  20005
Telephone: 202-538-8000
Fax: 202-538-8100
kevinhardy@quinnemanuel.com
deepaacharya@quinnemanuel.com
patrickstafford@quinnemanuel.com
courtneykasuboski@quinnemanuel.com

Andrea Pallios Roberts
**QUINN EMANUEL URQUHART & SULLIVAN**
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
Fax: (650) 801-5100
andreaproberts@quinnemanuel.com

Brett Nelson Watkins
Texas Bar No. 24106816
**QUINN EMANUEL URQUHART & SULLIVAN**
711 Louisiana, Suite 500
Houston, TX 77002
Telephone: 713-221-7000
Fax: 713-221-7100
brettwatkins@quinnemanuel.com

Zhaoxin Yin
**QUINN EMANUEL URQUHART & SULLIVAN**
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: 213-443-3000
Fax: 213-443-3100
johnyin@quinnemanuel.com

E. Glenn Thames, Jr.
Texas Bar No. 00785097
glennthames@potterminton.com
**POTTER MINTON**
**A PROFESSIONAL CORPORATION**
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

## II.    STATEMENT OF JURISDICTION

- **Huawei's Statement Regarding Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 1 *et seq*.  This Court has subject matter jurisdiction over Huawei's declaratory judgment claim under 28 U.S.C. §§ 1331, 1338(a), 1367, 2201, and 2202.

Venue and personal jurisdiction are not disputed in this case.

- **Verizon's Statement Regarding Jurisdiction**

Jurisdiction in this case is based on the United States patent laws, 35 U.S.C. §§ 1, *et seq*.

This Court has jurisdiction over the subject matter of this action under at least 28 U.S.C. §§ 1331, 1338(a), and 1367.  The Court's jurisdiction over the subject matter is not disputed.

The Court has personal jurisdiction over the parties.  The Court's jurisdiction over the parties is not disputed.

Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

## III.   NATURE OF ACTION

- **Huawei's Statement Regarding the Description of the Case**

Huawei brought this patent infringement lawsuit. Huawei alleges that Defendant Verizon directly and indirectly infringes claims 1, 4, 7, and 10 of U.S. Patent No. 8,406,236 ("the '236 patent"); claims 1 and 4 of U.S. Patent No. 8,824,505 ("the '505 patent"); and claims 1, 7, 9, and 12 U.S. Patent No. 9,312,982 ("the '982 patent") (collectively "Huawei Asserted Claims"). Huawei further alleges that Verizon's infringement is and has been willful.  Huawei seeks both pre-verdict and post-verdict damages up to the time of judgment to compensate Huawei for Verizon's alleged acts of infringement, but in no event less than a reasonable royalty for past and on-going infringement. Huawei also seeks an order requiring Verizon to pay ongoing royalties. Huawei also seeks prejudgment and post judgment interests and costs, pursuant to 35 U.S.C. § 284, and attorneys' fees, pursuant to 35 U.S.C. § 285, as well as an exceptional case finding and treble damages against Verizon as enhancement pursuant to 35 U.S.C. § 284.

Verizon brought counterclaims alleging patent infringement.  Verizon alleges counterclaim-defendant Huawei infringes claims 1 and 12 of U.S. Patent No. 8,121,111 ("the '111 Patent") and claims 1 and 12 of U.S. Patent No. 8,983,288 ("the '288 Patent") (collectively "Verizon Asserted Claims"), directly and/or by inducing infringement by a third party.  Verizon seeks damages in the form of a reasonable royalty (which it contends may be *de minimis*) and does not include any claim that it is entitled to lost profits.  Verizon alleges that Huawei is a willful

infringer.  Verizon further alleges that Huawei is liable for prejudgment and post-judgment interest on any damages awarded, pursuant to 35 U.S.C. § 284, and attorneys' fees pursuant to 35 U.S.C. § 285.

Counterclaim Defendants deny that they or their customers have infringed or infringe the Verizon Asserted Claims. Counterclaim Defendants further contends that they do not induce and have not induced direct infringement of the Verizon Asserted Claims.  Counterclaim Defendants have filed *inter partes* review petitions challenging the validity of the Verizon Asserted Claims based on obviousness and anticipation.  Counterclaim Defendants further contend in this case that the Verizon Asserted Claims are invalid because they are unpatentable under 35 U.S.C. § 101.

Verizon also brought common law counterclaims alleging a declaration of obligation for Huawei to license its SEPs on FRAND/RAND terms, breach of contract, Huawei engaged in unfair competition under Texas law, and Texas common law fraud.  Verizon seeks damages for its costs, expenses, disbursements, and attorneys' fees incurred in connection with this action.

- **Verizon's Statement Regarding the Description of the Case**

Verizon is one of America's most innovative companies and provides a key portion of America's telecommunications infrastructure.  Verizon offers industry-leading connectivity to its customers, connecting millions of people, companies and communities through its award-winning networks.  Verizon has led the way in 4G LTE network reliability and speeds, and holds over seven thousand United States patents for its inventions.  Verizon's patented ideas are the technologies that support Verizon's networks.

This is an action for infringement of Verizon's patents wherein Verizon will seek to prove that Huawei has infringed and continues to infringe Claims 1 and 12 of U.S. Patent No. 8,121,111 (the "'111 Patent") and Claims 1 and 12 of U.S. Patent No. 8,983,288 (the "'288 Patent")

(collectively, the "Verizon Patents-in-Suit").   Verizon alleges that Counterclaim Defendants directly infringe the Verizon Patents-in-Suit pursuant to 35 U.S.C. § 271(a), and Counterclaim Defendants induce infringement of the Verizon Patents-in-Suit by others pursuant to 35 U.S.C. § 271(b).  Verizon seeks damages to compensate for Counterclaim Defendants' infringement of the Verizon Patents-in-Suit in an amount no less than a reasonable royalty, as well as attorneys' fees and costs, pursuant to 35 U.S.C. §§ 284 and 285.  Verizon further will seek to prove that Huawei willfully infringes the Verizon Patents-in-Suit.

Verizon also asserts breach of contract, wherein Verizon seeks to prove that Huawei has contractual obligations arising out of its licensing declarations to the International Telecommunications Union (ITU) Telecommunication Standardization Sector ("ITU-T"), including the obligation to license its patents or pending patents that Huawei alleges are essential to practice the ITU-T G.709 Recommendation on reasonable and non-discriminatory (RAND) terms; to treat implementers equally without discriminating between them; and to negotiate in good faith with implementers towards a license on RAND terms, including by making a RAND offer and disclosing sufficient information to permit standard implementers to assess RAND compliance.  Verizon seeks to prove that Huawei breached these obligations by singling out Verizon for discriminatory and retaliatory treatment, failing to negotiate in good faith with Verizon towards license(s) for covered patents on RAND terms, pursuing excessive royalties, failing to provide a sound economic basis for its royalty demands, failing to provide a basis for its allegedly RAND offer, seeking damages in excess of a RAND royalty, and abruptly severing negotiations to begin this lawsuit.  Verizon seeks compensatory damages and consequential damages to cover the costs it has incurred during negotiations and litigation.

Verizon also seeks to prove that Huawei committed common law fraud by failing to provide mandatory disclosures of intellectual property rights ("IPR") to the ITU-T during the standardization process, and by falsely stating in its licensing declarations to the ITU-T that it would license its standard essential patents on RAND terms and conditions.  Verizon seeks to prove that, in response to patent calls at ITU-T meetings, Huawei intentionally withheld IPR that it was required to disclose under the ITU's Common Patent Policy and Guidelines, injuring Verizon as an entity relying on Huawei's representations that it would comply with the Common Patent Policy and Guidelines.  Verizon further seeks to prove that Huawei made misstatements in its licensing declarations because it has not offered a license to the Huawei Patents-in-Suit, which Huawei contends are essential, on RAND terms and conditions.  Verizon seeks damages to put it in the position it would have been in had Huawei not committed its fraud, including costs of negotiation and litigation, and any licensing costs incurred as a result of the incorporation of the Huawei Patents-in-Suit into the standard that would not have been incorporated absent the fraud.

Finally, Verizon seeks to prove that Huawei engaged in unfair competition under Texas law by showing that Huawei's misconduct in connection with its disclosure failures and false statements to the ITU-T interfered with Verizon's ability to conduct its business.  Verizon seeks to recover damages to compensate it for its business injuries, including the costs of negotiations and litigation.

Verizon denies that it has in the past or currently infringes any of the Huawei Patents-in-Suit and denies that Verizon owes Huawei any damages.  Verizon also contends that each of the asserted claims of the Huawei Patents-in-Suit is invalid under at least 35 U.S.C. §§ 101, 102, and/or 103.  Verizon also asserts various affirmative defenses, including non-infringement; invalidity and ineligibility; prosecution history estoppel; damages and cost limitations; failure to mark; non-

compliance with SSO and breach of FRAND/RAND obligations; unenforceability due to waiver, implied waiver, acquiescence, equitable estoppel, unclean hands, patent misuse, unfair competition, and/or fraud based on standards activities; no causation; no exceptional case; no willful infringement; and unenforceability due to inequitable conduct.  Verizon also denies that Huawei is entitled to damages and disputes the amount of damages to which Huawei is entitled if it should establish infringement and the Huawei Patents-in-Suit are held not invalid.

## IV.     CONTENTIONS OF THE PARTIES

- **Huawei's Statement of Its Contentions**

By providing these contentions, Huawei and Counterclaim Defendants do not concede that all of these issues are appropriate for trial.  In addition, Huawei and Counterclaim Defendants do not waive any of its motions *in limine* or motions for summary judgment.

1.      In this case, Huawei contends that Verizon directly infringes, and induces infringement of, claims 1, 4, 7, and 10 of the '236 patent; claims 1 and 4 of the '505 patent; and claims 1, 7, 9, and 12 of the '982 patent under 35 U.S.C. §§ 271(a)–(b) and 281–285 by making, using, offering for sale, selling, and/or importing into the United States systems and/or devices that comply with the G.709 Standard that practice the inventions of the '236, '505, and '982 patents, without authority or license from Huawei.

2.      Huawei contends the '236 patent has a filing date of May 17, 2011 and a priority date of June 15, 2007.

3.      Huawei is the owner of all rights, title, and interest in and to the '236 patent and possesses all rights of recovery under the '236 patent.

4.      Huawei contends the '505 patent has a filing date of October 25, 2011 and a priority date of April 17, 2007.

10

5. Huawei is the owner of all rights, title, and interest in and to the '505 patent and possesses all rights of recovery under the '505 patent.

6. Huawei contends the '982 patent has a filing date of December 10, 2014 and a priority date of March 9, 2009.

7. Huawei is the owner of all rights, title, and interest in and to the '982 patent and possesses all rights of recovery under the '982 patent.

8. Huawei contends that it has been damaged by Verizon's conduct and seeks pre-verdict and post-verdict damages up to the time of judgment adequate to compensate for the infringement by Verizon, but in no event less than a reasonable royalty, as well as prejudgment and post-judgment interest and costs as fixed by the Court. Huawei also seeks an ongoing royalty.

9. Huawei contends that Huawei complied with 35 U.S.C. § 287 by providing actual notice to Verizon on February 7, 2019.

10. Huawei contends this case is exceptional and that Huawei is entitled to reasonable attorneys' fees and costs (including consultants' fees and costs) pursuant to 35 U.S.C. § 285.

11. Huawei contends that Verizon's infringement is and has been willful and thus requests that the Court award to Huawei enhanced damages pursuant to 5 U.S.C. § 284, as well as supplemental damages for any continuing post-verdict infringement up until entry of final judgment and an accounting for damages if necessary.

12. Huawei denies all of Verizon's defenses in its Second Amended Answer.

13. Huawei denies all of Verizon's Counterclaims and declaratory judgment claims.

14. Huawei contends that venue is proper in the United States District Court for the Eastern District of Texas.

15.     Huawei contends that Verizon has made, used, sold, and/or offered for sale in , used, and/or imported into the United States infringing systems and/or devices that comply with the G.709 Standard in connection with Verizon's optical transport network systems. ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████

16.     Huawei contends it fully complied with its RAND commitment by, for example, not suing Verizon for an injunction, and by seeking a license on RAND terms.

17.     Counterclaim Defendants deny Verizon's counterclaims.

18.     Counterclaim Defendants contend that they do not infringe and have not infringed, directly or indirectly any of the Verizon Asserted Claims of the '111 or '288 patents.

19.     Counterclaim Defendants contend that Verizon cannot meet its burden of proving by a preponderance of the evidence that Counterclaim Defendants or any of Counterclaim Defendants' customers directly infringe any Verizon Asserted Claim of the '111 or '288 patents.

20.     Counterclaim Defendants contend that Verizon cannot meets its burden of proving by a preponderance of the evidence that Huawei induces or induced infringement of any Verizon Asserted Claim of the '111 or '288 patents.

21.     Counterclaim Defendants contend that Verizon cannot meets its burden of proving by a preponderance of the evidence that Counterclaim Defendants or any of Counterclaim

Defendants' customers infringed under the doctrine of equivalents any Verizon Asserted Claim of the '111 or '288 patents.

22.     Counterclaim Defendants contend that Verizon cannot meets its burden of proving by a preponderance of the evidence direct infringement by third parties of any Verizon Asserted Claim of the '111 or '288 patents.

23.     Counterclaim Defendants contend that Verizon cannot meet its burden of proving by a preponderance of the evidence that Counterclaim Defendants had knowledge of infringement and the specific intent to cause direct infringement required for induced infringement.

24.     Counterclaim Defendants contend that the Verizon Asserted Claims of the '111 patent and '288 patent are invalid because they are unpatentable under 35 U.S.C. § 101.

25.     Counterclaim Defendants contend that Verizon's claims of patent infringement are barred by prosecution history estoppel and/or disclaimer.

26.     Counterclaim Defendants contend its commitment to license its SEPs on RAND terms is not a contractual, or otherwise legally binding, obligation. Even so, Counterclaim Defendants content it did not breach any obligation to license its SEPs on RAND terms because it negotiated with Verizon prior to filing this lawsuit for RAND-damages and did not seek an injunction.

27.     Counterclaim Defendants contend that they did not engage in unfair competition or common law fraud because Verizon cannot show by a preponderance of the evidence that Huawei falsely committed to license its SEPs on RAND terms, Huawei intended to induce Verizon to adopt its ITU-T contributions by making a RAND commitment, Verizon actually and justifiably relied on Huawei's RAND commitment in supporting Huawei's ITU-T G.709 contributions, that the

13

ITU-T would have adopted a different contribution but for Huawei's representation, nor that Verizon was damaged as a result of Huawei's RAND commitment.

28.     Counterclaim Defendants contend that they did not engage in unfair competition or common law fraud by non-disclosure because Verizon cannot show by a preponderance of the evidence that Huawei failed to disclose its SEPs in accordance with the ITU-T's patent policy, Huawei intended to induce Verizon to adopt its ITU-T contributions by only generally and not specifically disclosing the existence of its SEPs, Verizon actually and justifiably relied on Huawei's general disclosure, that the ITU-T would have adopted a different contribution but for Huawei's general disclosure, nor that Verizon was damaged as a result of Huawei's general disclosure.

29.     Counterclaim Defendants contend that any alleged damages suffered by Verizon related to its unfair competition or common law fraud claims are barred by the Texas Economic Loss Rule.

30.     Counterclaim Defendants contend that any of Verizon's alleged damages are limited or barred from a failure to mark under 35 U.S.C. §§ 286, 287, and/or 288.

31.     Counterclaim Defendants contend that Verizon's counterclaims are limited or barred because Counterclaim Defendants are not liable for the acts of others over whom they have no control.

32.     Counterclaim Defendants contend that Verizon's claims of patent infringement are barred by the equitable doctrines of unclean hands, waiver, implied waiver, acquiescence, and/or equitable estoppel.

33.     Huawei contends that Verizon's Texas state law counterclaims are barred by the doctrine of laches, statute of frauds, and the *Noerr-Pennington* doctrine. Huawei further contends that Verizon failed to mitigate damages with respect to its breach of contract claim.

34.     Counterclaim Defendants deny that Verizon is entitled to compensatory damages, costs, pre-judgment or post-judgment interest, a declaration that this case is exceptional, ongoing royalties, and attorneys' fees.

35.     Huawei objects to Verizon's contentions that were not properly disclosed as Verizon's contentions pursuant to the Court's Patent Rules, Discovery Rules, and other orders of the Court in this case. Huawei further objects to Verizon's contentions regarding issues excluded by agreement and/or by rulings of the Court.

36.     Huawei objects to any contention that is subject to a currently pending motion in this matter.

37.     Huawei objects to the relitigation of any issue that has already been determined by the Court.

38.     Huawei objects to Verizon's contentions which state:

"Verizon seeks damages to put it in the position it would have been in had Huawei not committed its fraud, including litigation costs that would not have been incurred had Verizon not incorporated these standards into its network."

"Verizon seeks to recover damages to compensate it for its business injuries, including the costs of negotiations and litigation."

Huawei objects to the above-mentioned contentions as untimely, not previously disclosed to Huawei through fact and expert discovery, and Huawei objects to these contentions to the extent they rely on theories not properly disclosed in this case.  To date, Verizon has never identified what damages its seeks on its common law fraud and unfair competition counterclaims.  Verizon similarly has not put forward a cognizable damage's theory on its common law fraud and unfair

competition counterclaims. Further, Verizon, through fact and expert discovery, has not disclosed evidence of damages "to put it in the position it would have been in had Huawei not committed its fraud" nor evidence of damages "to compensate it for its business injuries."

39.     Huawei objects to Verizon's contentions to the extent that they are inconsistent with the factual record.

40.     Huawei objects to Verizon raising the issue that Verizon Communications Inc. is not a proper party to this lawsuit for the first time in this Joint Proposed Pretrial Order.

- **Verizon's Statement of Its Contentions**

By providing these contentions, Verizon does not concede that all of these issues are appropriate for trial.  In particular, Verizon does not waive any of its motions *in limine,* motions for summary judgment, motions to strike, or *Daubert* motions, which, if granted, would render some or all of these issues moot.  Verizon's contentions in this case are detailed in part in Verizon's answers and affirmative defenses, Verizon's pending motions (*see* Part IX below), including its motions for summary judgment, motions to strike, *Daubert* motions, motions *in limine*, Verizon's invalidity contentions, and Verizon's expert reports, which are all incorporated by reference herein.  In sum, Verizon contends the following:

1.     Verizon does not infringe and has not infringed, either directly or indirectly, any asserted claim of the '982 patent.

2.     Verizon does not infringe and has not infringed, either directly or indirectly, any asserted claim of the '236 patent.

3.     Verizon does not infringe and has not infringed, either directly or indirectly, any asserted claim of the '505 patent.

4.      Verizon contends that the functionalities that Huawei contends infringe the '982, '236, and '505 patents, are performed in ASIC/FPGA chips in line cards that Verizon purchases from third party vendors.

5.      The asserted claims of the '982 patent are invalid under 35 U.S.C. § 101 and § 103. The '982 patent is obvious in light of the following prior art: (1) E.P. Application Publication No. 1826926 ("Zou") in view of U.S. Pub. No. 2003/0048813 ("Lahav"); (2) Ciena, Cortina, and Cisco Contribution 116 ("Contribution 116") in view of Lahav; (3) PMC Sierra Contribution 35 ("Contribution 35") in view of Lahav; and (4) Contribution 116 in view of Contribution 35 and Lahav.

6.      The asserted claims of the '236 patent are invalid under 35 U.S.C. § 102 and § 103. The '236 patent is anticipated by or rendered obvious in light of the following prior art: (1) ITU-T Recommendation G.709 (03/2003) ("G.709 (03/2003)") and ITU-T Recommendation G.707 (12/2003) ("G.707 (12/2003)") in view of G.709 Living List (2006-05); (2) Next Generation Transport Networks ("Ellanti") in view of G.709 Living List (2006-05); and (3) E.P. Patent Publication No. 1 494 377 ("Roberts 377").

7.      The asserted claims of the '505 patent are invalid under 35 U.S.C. § 102 and § 103. The '505 patent is anticipated by or rendered obvious in light of the following prior art: (1) ITU-T Recommendation G.709 (03/2003) ("G.709 (03/2003)"); (2) G.709 (03/2003) in view of G.709 Living List (2006-05); (3) E.P. Patent Application Publication No. 1 826 926 ("Zou") in view of G.709 (03/2003); and (4) Next Generation Transport Networks ("Ellanti") in view of G.709 Living List (2006-05).

8.      Huawei is not entitled to damages on its claims of infringement.  To the extent damages are to be awarded, Huawei's calculation of a reasonable royalty relies on an improper

methodology and improper evidence, and Huawei has failed to provide a suitable basis on which damages may be properly calculated.

9.      Huawei's claim for damages, if any, against Verizon for alleged infringement is limited by 35 U.S.C. §§ 286 and 287 and its recovery of costs is limited under 35 U.S.C. § 288.

10.     Huawei failed to mark its products that allegedly practice the Huawei Patents-in-Suit, and Verizon did not have knowledge of its alleged infringement of any of the Huawei Patents-in-Suit prior to March 29, 2019.

11.     Huawei is barred from pre-suit damages dating prior to March 29, 2019 for the Huawei Patents-in-Suit.

12.     Huawei is not entitled to an ongoing royalty.

13.     Huawei is not entitled to pre-judgment or post-judgment interest or costs.

14.     Huawei is not entitled to an award of its attorneys' fees.

15.     Verizon has engaged in all relevant activities in good faith, thereby precluding Huawei, even if it prevails, from recovering its reasonable attorneys' fees or costs under 35 U.S.C. § 285.

16.     This is an exceptional case entitling Verizon to attorneys' fees, costs, and interest.

17.     Huawei's claims for relief are barred in whole or in part by Huawei's non-compliance with SSO and breach of RAND obligations.

18.     Huawei's claims for relief are barred in whole or in part by unenforceability due to waiver, implied waiver, acquiescence, equitable estoppel, the doctrine of unclean hands, patent misuse, unfair competition, and/or fraud based on standards activities.

19.     Huawei's claims for relief are barred under the doctrine of inequitable conduct.

20.     Verizon cannot be liable for induced infringement prior to the filing of the complaint because Huawei failed to provide pre-suit notice of alleged infringement of any Huawei Patent-in-Suit.

21.     Verizon Communications Inc. is not a proper party to this lawsuit.   Verizon Communications Inc. is a holding company.

22.     Huawei directly infringes and induces infringement of the following claims (the "asserted claims"): claims 1 and 12 of the '111 patent and claims 1 and 12 of the '288 patent.

23.     Verizon contends that Huawei has made, used, sold, offered for sale and/or imported into the United States infringing systems and/or devices that practice the asserted claims of the '111 and '288 patents, including, but not limited to: █████████████████████████████████████████████████████████

24.     The '111 patent has a filing date of March 29, 2007.

25.     The asserted claims of the '111 patent were conceived of at least as early as November 10, 2006 by Michael Freiberger and diligently reduced to practice by March 29, 2007 when the application that led to the '111 patent was filed.

26.     Verizon is the owner of all rights, title, and interest in and to the '111 patent and possesses all rights of recovery under the '111 patent.

27.     The '288 patent has a filing date of January 6, 2012.

28.     Verizon is the owner of all rights, title, and interest in and to the '288 patent and possesses all rights of recovery under the '288 patent.

29.     Huawei had notice of infringement of the Verizon Patents-in-Suit at least as early as the filing of Verizon's counterclaims.

30.     Each of the Verizon Patents-in-Suit has been issued by the United States Patent and Trademark Office ("USPTO") and therefore is entitled to a presumption of validity, and that Huawei cannot prove that any of the asserted claims is invalid by clear and convincing evidence.

31.     Verizon is entitled to damages, together with interest (both prejudgment and post-judgment), adequate to compensate it for Huawei's infringement, in an amount no less than a reasonable royalty for the use made of the invention by Huawei.

32.     Huawei submitted one or more declarations to the ITU-T committing to grant licenses on "reasonable and non-discriminatory" ("RAND") terms for its patents essential to the G.709 Recommendation ("Huawei's G.709 RAND Declarations").

33.     Huawei's G.709 RAND Declarations are contracts with the ITU-T for the benefit of third-party implementers, including Verizon.

34.     Huawei also submitted a general declaration that it would license its patents incorporated into any ITU-T standard on RAND terms.

35.     Huawei sent its first letter regarding a patent license to Verizon on February 7, 2019.

36.     ██████████████████████████████████████████████████████
████████

37.     ██████████████████████████████████████████████████████
████████████████████████████████████████████████

38.     Huawei breached its obligations to the ITU-T (and to Verizon, as an implementer and third-party beneficiary) in connection with the licensing of Huawei's optical portfolio, including the Huawei Patents-in-Suit, which Huawei contends are essential to the G.709 Recommendation.  Huawei submitted licensing declarations to the ITU-T, committing to license

20

its standard essential patents on RAND terms.  Huawei breached its obligations to license its patents or pending patent applications that Huawei alleges are essential to practice the G.709 Recommendation on RAND terms; to treat implementers equally without discriminating between them; and to negotiate in good faith with implementers towards a license on RAND terms, including by making a RAND offer and disclosing sufficient information to permit standard implementers to assess RAND compliance.  Huawei has never previously licensed its optical patent portfolio to any other party other than as part of a broad portfolio license.  Huawei has never previously licensed any of the individual Huawei Patents-in-Suit by themselves.  Huawei is aware of entities that practice the G.709 Recommendation, other than Verizon.  Yet, Huawei has not filed a patent infringement lawsuit in the United States against any party practicing the G.709 Recommendation, other than Verizon.

39.     Verizon was damaged by Huawei's breach of contract because it had to incur negotiation and litigation costs in connection with defending against Huawei's patent infringement claims.

40.     Verizon further seeks declaratory judgment that Huawei has an obligation to license its standard essential patents on RAND terms based on Huawei's licensing declarations to the ITU-T.

41.     Huawei committed common law fraud by failing to provide mandatory disclosures to the ITU-T and by misstating that it would license standard essential patents on RAND terms and conditions.  With regard to the former, Huawei did not disclose IPR in response to patent calls at ITU-T meetings, as required under the ITU's Common Patent Policy and Guidelines, injuring Verizon as an entity relying on Huawei's representations that it would comply with the Common Patent Policy and Guidelines.  Verizon relied on Huawei's failure to disclose its IPR to the ITU-

T, as well as Huawei's misstatement that it would license standard essential patents on RAND terms, in making business decisions to incorporate ITU-T standards into its network.  Verizon seeks damages to put it in the position it would have been in had Huawei not committed its fraud, including litigation costs that would not have been incurred had Verizon not incorporated these standards into its network.

42.     Huawei committed unfair competition under Texas law by failing to make required disclosures to the ITU-T and misstating that it would license standard essential patents on RAND terms, and that failure to disclose and misstatement interfered with Verizon's ability to conduct its business.  Verizon seeks to recover damages to compensate it for its business injuries, including the costs of negotiations and litigation.

43.     Verizon denies all of Huawei's defenses in Huawei's Answer to Verizon's Counterclaims.

44.     Verizon denies all claims by Huawei seeking declaratory judgment.

## V.     STIPULATIONS AND UNCONTESTED FACTS

The parties agree to the following stipulations and uncontested facts.

- **The Parties' Statement of Uncontested Facts**

1.     Plaintiff Huawei Technologies Co. Ltd. is a Chinese corporation with its principal place of business at Bantian, Longgang District, Shenzen, China.

2.     Defendant Verizon Communications Inc. is a Delaware corporation located in New York.

3.     Defendant Verizon Business Network Services LLC is a Delaware corporation located in Virginia.

4.     Defendant Verizon Enterprise Solutions LLC is not an active entity.

5.      Defendant Cellco Partnership d/b/a/ Verizon Wireless, Inc. is a Delaware general partnership located in New Jersey.

6.      Defendant Verizon Data Services LLC is a Delaware limited liability company located in Florida.

7.      Defendant Verizon Business Global LLC is a Delaware corporation located in New Jersey.

8.      Defendant Verizon Services Corp. is a Delaware corporation located in Virginia

9.      Defendant Verizon Patent and Licensing Inc. is a Delaware corporation located in New Jersey.

10.     The '236 patent was issued on March 26, 2013 and claims priority to a Chinese application filed on June 15, 2007.

11.     The '236 patent is entitled "Method and Apparatus for Transporting Client Signal in Optical Transport Network."

12.     Claims 1, 4, 7, and 10 of the '236 patent are at issue and asserted in this case against Verizon.

13.     The named inventors of the '236 patent are Limin Dong and Qiuyou Wu.

14.     Huawei is the owner of all rights, title, and interest in and to the '236 patent.

15.     The '505 patent was issued on September 2, 2014 and claims priority to a Chinese application filed on April 17, 2007.

16.     The '505 patent is entitled "Method and Apparatus for Transporting Client Signals in an Optical Transport Network."

17.     Claims 1 and 4 of the '505 patent are at issue and asserted in this case against Verizon.

23

18.     The named inventors of the '505 patent are Limin Dong and Qiuyou Wu.

19.     Huawei is the owner of all rights, title, and interest in and to the '505 patent.

20.     The '982 patent was issued on April 12, 2016 and claims priority to a Chinese application filed on March 9, 2009.

21.     The '982 patent is entitled "Method and Apparatus for Mapping and De-Mapping in an Optical Transport Network."

22.     Claims 1, 7, 9, and 12 of the '982 patent are at issue and asserted in this case against Verizon.

23.     The named inventors of the '982 patent are Maarten Vissers, Qiuyou Wu, Xin Xiao, and Wei Su.

24.     Huawei is the owner of all rights, title, and interest in and to the '982 patent.

25.     The '111 patent was issued on February 21, 2012 and was filed on March 29, 2007.

26.     The '111 patent is entitled "Method and System for Measuring Latency."

27.     Claims 1 and 12 of the '111 patent are at issue and asserted in this case against Huawei.

28.     The named inventor of the '111 patent is Michael Freiberger.

29.     Verizon is the owner of all rights, title, and interest in and to the '111 patent.

30.     The '288 patent was issued on March 17, 2015 and claims priority to U.S. Patent Application No. 11/693,211, filed on Mar. 29, 2007.

31.     The '288 patent is entitled "Method and System for Measuring Latency."

32.     Claims 1 and 12 of the '288 patent are at issue and asserted in this case against Huawei.

33.     The named inventor of the '288 patent is Michael Freiberger.

34.     Verizon is the owner of all rights, title, and interest in and to the '288 patent.

- **Stipulation for Trial Management Procedures**

The parties agree to the following procedures for trial management, except where competing proposals are set forth below:

1.     The parties will exchange by email copies of all documentary, graphic, slide, animation, and any other form of Demonstratives they plan to use at trial for use during direct examination—but not for cross-examination—and an identification of witnesses each such Demonstrative will be used with on direct examination, by 7:00 p.m. the night before their intended use.  In other words, if a demonstrative will be used on a Wednesday, it must be exchanged or made available by 7:00 p.m. on the previous Tuesday.  The parties shall exchange objections to these demonstratives by 9:00 p.m. on the day the exhibits are received.  The parties will meet and confer by 9:15 p.m. to attempt to resolve any objections or other issues relating to the disclosed Demonstratives.  If any disputes remain following this conference, the parties shall apprise the Court the following morning before the jury is seated.  Demonstratives exchanged will not be used by the opposing party prior to being used by the disclosing party.

a.     **"Demonstratives"** are exhibits specifically created for the purpose of the trial and ***do not include*** (1) exhibits created in the courtroom during testimony or opening at trial, (2) the enlargement, highlighting, ballooning, etc. of trial exhibits or transcripts of testimony, or (3) demonstratives previously displayed in the course of the trial.  Reasonable non-substantive edits or corrections of typographical and similar errors to demonstrative exhibits may be made to such exhibits prior to use.

b.     However, Demonstratives for direct examination or opening, as well as trial exhibits used during direct examination or opening must be cleared of

any outstanding objections before being shown to the jury. Additionally, any transcripts of testimony (excluding testimony given during this trial) must have been previously designated by the parties and cleared of outstanding objections before being shown to the jury during opening or on direct examination.  On cross-examination, transcripts of testimony may be used so long as it is not in violation of a motion in limine or other exclusionary order, or rule of evidence, regardless of whether it was previously designated by the parties.

2.      The parties will make available for inspection physical exhibits (including any to be used in live product demonstrations) they plan to use at trial for use during direct examination or opening—but not for cross-examination—by 7:00 p.m. two nights before their intended use.  In other words, if a physical exhibit will be used on a Wednesday, it must be exchanged or made available by 7:00 p.m. on the previous Monday.  The parties shall exchange objections to these physical exhibits by 9:00 p.m. the day after disclosures are made.  The parties will meet and confer by 9:15 p.m. to attempt to resolve any objections or other issues relating to these physical exhibits. If any disputes remain following this conference, the parties shall apprise the Court the following morning before the jury is seated.  Materials exchanged or made available under this paragraph will not be used by the opposing party prior to being used by the disclosing party.

3.      At **[Huawei position:** 7:00 p.m.] **[Verizon position:** 4:00 p.m.] the day before opening statements will be given, the parties shall exchange their opening statement Demonstratives.  At **[Huawei's position:** 9:00 p.m.] **[Verizon's position:** 5:00 p.m.] that same day, the non-offering party shall notify the offering party of any objections to the proposed opening statement Demonstratives.  The parties will meet and confer by **[Huawei's position:** 9:15 p.m.]

26

**[Verizon's position:** 6:00 p.m.**]** to attempt to resolve any objections or other issues relating to the disclosed demonstrative.  If any disputes remain following this conference, the parties shall apprise the Court the following morning before the jury is seated.  Demonstratives exchanged will not be used by the opposing party prior to being used by the disclosing party.

4.      With respect to both Demonstratives to be used on direct examination of a witness and opening Demonstratives, parties are to provide color demonstratives natively or by other electronic means such that animations and builds are readily ascertainable.

5.      The parties will exchange by email lists of exhibits they intend to use during direct examination by 7:00 p.m. the night before their intended use, and an identification of the witnesses each such exhibit will be used with on direct examination or by deposition designation.  The parties' disclosures will reflect a good faith estimate of the exhibits that will be used with a particular witness and all efforts will be made to streamline disclosures such that they do not include excessive numbers of exhibits that do not ultimately get used.  The parties shall exchange objections to these exhibits, to the extent not pre-admitted, by 9:00 p.m. on the day the lists are received.  The parties will meet and confer by 9:15 p.m. to attempt to resolve any objections or other issues relating to the disclosed exhibits.  If any disputes remain following this conference, the parties shall apprise the Court the following morning before the jury is seated.

6.      The parties will identify by email witnesses to be called live (in the order of call) and by deposition at 7:00 p.m., two days in advance of the day of trial during which the witnesses will testify.  In other words, if a witness will testify on a Wednesday, the witness must be identified by 7:00 p.m. on the previous Monday.  If the opposing party has any objections to disclosed witnesses, the party shall provide such objections by 9:00 p.m. on the day the list is received.  The parties will meet and confer by 9:15 p.m. to attempt to resolve any disputes relating to disclosed

witnesses.  If any disputes remain following this conference, the parties shall apprise the Court the following morning before the jury is seated.  The parties further agree to identify which witness they intend to be their final witness after which they will rest their case when that individual is disclosed pursuant to these procedures.

7.     For deposition designations, the parties will provide a list of any deposition designations to be played by 7:00 pm two days before the designation is to be played.  Counters and objections to the 7:00 pm designations are due by 9:00 pm the same evening.  The parties will meet and confer by 9:15 p.m. to attempt to resolve any disputes regarding deposition designations, and any unresolved objections will be raised with the Court the next morning before the jury is seated.  The party that seeks to read or play the deposition testimony must also provide the opposing party by 7:00 p.m. one day before the deposition testimony is to be played, a workable copy of the actual recordings to be played (or testimony to be read), including all designations and counter-designations.  The parties agree to remove counsel's objections or any discussion between counsel from the video clips that are to be shown to the jury.  The parties shall cooperate in good faith to prepare the designated portions of the depositions for presentation at trial.  The deposition designations and counter-designations shall be played in the order in the transcript.  The time available for each side's trial presentation shall be reduced by the length of its designations or counter-designations actually played or read at trial.  If played, such time shall be measured by the amount of time of each party's designations.  If read, such time shall be measured by the lines of testimony each party designates as a percentage of the total number of lines read.

8.     Each party may use an exhibit that is listed on an opposing party's exhibit list to the same effect as though it were listed on its own exhibit list, subject to any applicable evidentiary objections, and provided that the disclosure requirements discussed above are followed.

28

9.     If a party removes an exhibit from its exhibit list, it will notify the opposing party in the service email of the amended exhibit list.  The opposing party may add the withdrawn exhibit to its own exhibit list.  The parties reserve the right to object to the timeliness of the addition of such withdrawn exhibits.

10.     The listing of an exhibit on a party's exhibit list is not an admission that the exhibit is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the exhibit.  Each party reserves the right to object to the relevancy or admissibility of any evidence offered by the other party in accordance with the disclosure schedule set forth above, or if during cross-examination at the time such evidence is offered, in view of the specific context in which such evidence is offered.  The parties will meet and confer in good faith to identify exhibits that can be pre-admitted or admitted without the need for additional foundational testimony.

a.     For the ease of reference for the jury, Court, and parties, translations of foreign language exhibits will be included as part of the same exhibit with the same exhibit number as the foreign language exhibit.  To the extent both parties have competing translations of a foreign language exhibit, both competing translations will be included as part of the same exhibit, with a notation indicating which party submitted each competing translation (e.g., Ex. 1.V for Verizon's translation of exhibit 1 or Ex. 1.H for Huawei's translation of exhibit 1).  The inclusion of a party's translation of a foreign language exhibit on that party's exhibit list is not an admission that the foreign language exhibit or the opposing party's translation is relevant, admissible, or accurate.  The foreign language

exhibit, Huawei's translation of the foreign language exhibit, and
Verizon's translation of the foreign language exhibit should be treated as
three separate exhibits for admission purposes

11.     The parties agree that any exhibit listed on a party's own exhibit list as to which no objection remains pending at the time of opening statements may be shown to the jury by that party during opening statements if the exhibit will be the subject of testimony and explained to the jury by a witness at trial.

12.     **[Huawei Position:** Verizon's proposed language in this paragraph is unnecessary and contrary to the Federal Rules of Evidence and the practices of this Court.**] [Verizon Position:** Except for documents solely used for impeachment or as Demonstratives and subject to the provisions of this Pretrial Order, no party may use an exhibit not present on its own or on an opposing party's exhibit list absent good cause shown.**]**

13.     The parties agree to exchange lists of "Admitted Exhibits" by 10:00 p.m. the night before the lists are to be submitted to the Court.

14.     The parties agree to exchange binders containing a printed copy of any slides to be used during a party's closing argument immediately prior to giving its closing argument.  To the extent a particular slide is not used in a party's closing, the other party may not use that slide.

15.     The parties agree to continue to meet and confer to resolve their objections to the other party's deposition designations and exhibits.

## VI.      CONTESTED ISSUES OF FACT AND LAW

The Parties identify the following issues of fact that remain to be litigated.  To the extent any issue of law discussed below is deemed to be an issue of fact, it is incorporated into this section.  The Parties reserve the right to identify additional factual or legal issues that may arise,

including issues raised in any motions *in limine*.  The parties set forth below their contested issues of fact and law for trial.  The parties do not agree that each contested issue listed is properly raised in the jury trial or that each contested issue may be properly raised in the jury trial. The parties reserve all rights and objections.

- **Huawei's Statement of Contested Issues of Fact and Law**

By providing this statement, Huawei does not concede that all of these issues are appropriate for trial.  Huawei also does not waive any of its pending motions.

1. Whether Verizon directly and/or indirectly infringes claims 1, 4, 7, and 10 of the '236 patent.

2. Whether Verizon directly and/or indirectly infringes claims 1 and 4 of the '505 patent.

3. Whether Verizon directly and/or indirectly infringes claims 1, 7, 9, and 12 of the '982 patent.

4. Whether Verizon's infringement is willful.

5. Whether Huawei is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and if so, the dollar amount of the enhancement.

6. Whether Huawei is entitled to damages to compensate for Verizon's infringement, and, if so, the dollar amount of pre-verdict and post-verdict damages to the time of judgment adequate to compensate for the infringement of the patent-in-suit, but in no event less than a reasonable royalty.

7. Whether Huawei is entitled to costs, and, if so, the dollar amount of their costs.

8. Whether Huawei is entitled to prejudgment and post-judgment interest, and, if so, the dollar amount of prejudgment and post-judgment interest.

9. Whether Huawei is entitled to ongoing royalties from Verizon.

10.    Whether this case is an exceptional case pursuant to 35 U.S.C. § 285 and whether Huawei is entitled to an award of attorneys' fees.

11.    Whether Verizon has proven by clear and convincing evidence that the claims of Huawei's patents-in-suit are anticipated by Verizon's prior art references under 35 U.S.C. § 102.

12.    Whether Verizon has proven by clear and convincing evidence that the claims of Huawei's patents-in-suit are obvious under 35 U.S.C. § 103 in view of Verizon's prior art references.

13.    Whether Huawei directly and/or indirectly infringes claims 1 and 12 of the '111 patent.

14.    Whether Huawei directly and/or indirectly infringes claims 1 and 12 of the '288 patent.

15.    Whether Verizon is entitled to damages to compensate for Huawei's infringement, and, if so, the dollar amount of pre-verdict and post-verdict damages to the time of judgment adequate to compensate for the infringement of the patent-in-suit, but in no event less than a reasonable royalty.

16.    Whether Verizon is entitled to costs, and, if so, the dollar amount of their costs.

17.    Whether Verizon is entitled to prejudgment and post-judgment interest, and, if so, the dollar amount of prejudgment and post-judgment interest.

18.    Whether this case is an exceptional case pursuant to 35 U.S.C. § 285 and whether Verizon is entitled to an award of attorneys' fees.

19.    Whether Huawei has proven by clear and convincing evidence that the Verizon Asserted Claims are invalid under 35 U.S.C. § 101.

20.    Whether Huawei breached its contractual RAND commitment.

21.     Whether Verizon has proven by a preponderance of the evidence that Huawei falsely represented it would license its SEPs to the G.709 standard on RAND terms.

22.     Whether Verizon has proven by a preponderance of the evidence that Huawei knew its representation that it would license its SEPs to the G.709 standard on RAND terms was false.

23.     Whether Verizon has proven by a preponderance of the evidence that Huawei intended to induce the ITU-T to adopt or Verizon to support its contributions to the G.709 standard by representing it would license its SEPs on RAND terms.

24.     Whether Verizon has proven by a preponderance of the evidence that Verizon actually and justifiably relied on Huawei's representation it would license its SEPs to the G.709 standard on RAND terms.

25.     Whether Verizon has proven by a preponderance of the evidence that the ITU-T would have adopted a different standard as well as the substance of that standard but for Huawei's representation it would license its SEPs to the G.709 standard on RAND terms.

26.     Whether Verizon has proven by a preponderance of the evidence that Verizon suffered an injury as a result of Huawei's representation it would license its SEPs to the G.709 standard on RAND terms.

27.     Whether Verizon has proven by a preponderance of the evidence that Huawei had a duty to specifically disclose the patent and patent application numbers of its SEPs.

28.     Whether Verizon has proven by a preponderance of the evidence that Huawei deliberately failed to disclose its patent and patent application numbers of its SEPs in violation of the ITU-T patent policy.

29.     Whether Verizon has proven by a preponderance of the evidence that Verizon was ignorant of Huawei's SEPs and did not have an equal opportunity to discover the existence of Huawei's SEPs.

30.     Whether Verizon has proven by a preponderance of the evidence that Huawei intended the ITU-T to adopt and Verizon to support its contributions to the G.709 standard.

31.     Whether Verizon has proven by a preponderance of the evidence that Verizon actually and justifiably relied Huawei's general as opposed to specific patent disclosure.

32.     Whether Verizon has proven by a preponderance of the evidence that Verizon suffered injury as a result of Huawei's general patent disclosure.

33.     Whether Verizon has proven by a preponderance of the evidence that Huawei violated Texas Unfair Competition Common Law because Huawei engaged in an illegal act that interfered with Verizon's ability to conduct business.

34.     Any issues of fact that are determined to constitute issues of law are hereby designated as such, and vice versa.  Huawei also incorporates by reference the contested issues raised in its pending motions.

- **Verizon's Statement of Contested Issues of Fact and Law**

1.     Whether Huawei directly infringes and induces infringement of the asserted claims of the Verizon Patents-in-Suit.

2.     Whether Verizon is entitled to damages, together with interest (both prejudgment and post-judgment), adequate to compensate it for Huawei's infringement, in an amount no less than a reasonable royalty for the use made of the invention by Huawei.

3.     Whether Huawei breached its obligations to the ITU-T by failing to comply with its commitment to license standard essential patents on RAND terms.

4.      Whether Verizon is entitled to damages to compensate it for Huawei's breach of its RAND obligations.

5.      Whether Huawei committed fraud by failing to make required disclosures of IPR to the ITU-T during the standardization process.

6.      Whether Huawei committed fraud by misstating in its licensing declarations that it would license standard essential patents on RAND terms.

7.      Whether Verizon is entitled to damages to compensate it for Huawei's fraud.

8.      Whether Huawei engaged in unfair competition by failing to make required disclosures of IPR to the ITU-T during the standardization process.

9.      Whether Huawei engaged in unfair competition by misstating in its licensing declarations that it would license standard essential patents on RAND terms.

10.     Whether Verizon is entitled to damages to compensate it for Huawei's unfair competition.

11.     Whether Verizon infringes one or more asserted claims of the '982 patent.

12.     Whether Verizon infringes one or more asserted claims of the '236 patent.

13.     Whether Verizon infringes one or more asserted claims of the '505 patent.

14.     Whether Huawei infringes one or more asserted claims of the '111 patent.

15.     Whether Huawei infringes one or more asserted claims of the '288 patent.

16.     Whether the asserted claims of the '111 patent were conceived of at least as early as November 10, 2006 by Michael Freiberger and diligently reduced to practice by March 29, 2007 when the application that led to the '111 patent was filed.

17.     Whether acceptable non-infringing alternatives to the '982 patent existed at the time of standardization.

18.     Whether acceptable non-infringing alternatives to the '236 patent existed at the time of standardization.

19.     Whether acceptable non-infringing alternatives to the '505 patent existed at the time of standardization.

20.     Whether the asserted claims of the '982 patent are invalid under 35 U.S.C. § 101 and/or § 103.

21.     Whether the asserted claims of the '236 patent are invalid under 35 U.S.C. § 102 and/or § 103.

22.     Whether the asserted claims of the '505 patent are invalid under 35 U.S.C. § 102 and/or § 103.

23.     Whether Huawei is entitled to damages on its claims of infringement.

24.     Whether Huawei's claim for damages, if any, against Verizon for alleged infringement is limited by 35 U.S.C. § 287 to pre-suit damages beginning on March 28, 2019.

25.     Whether Huawei's claim for damages, if any, against Verizon for alleged infringement is limited by 35 U.S.C. §§ 286 and 287 and its recovery of costs is limited under 35 U.S.C. § 288.

26.     Whether Huawei has proven damages for the alleged infringement of the '982 patent.

27.     Whether Huawei has proven damages for the alleged infringement of the '236 patent.

28.     Whether Huawei has proven damages for the alleged infringement of the '505 patent.

36

29.     Whether Huawei is entitled to an ongoing royalty for the alleged infringement of any of the Huawei Patents-in-Suit.

30.     Whether Huawei is entitled to pre-judgment or post-judgment interest or costs in connection with the alleged infringement of any of the Huawei Patents-in-Suit.

31.     Whether Huawei is entitled to an award of its attorneys' fees.

32.     Whether this is an exceptional case entitling Verizon to attorneys' fees, costs, and interest.

33.     Whether Huawei's claims for relief are barred in whole or in part by the doctrine of unclean hands.

34.     Whether Huawei's claims for relief are barred in whole or in part by fraud.

35.     Whether Huawei's claims for relief are barred in whole or in part by breach of contract.

36.     Whether Huawei's claims for relief are barred under the doctrine of inequitable conduct.

37.     Whether Verizon can be liable for induced infringement prior to the filing of the complaint in view of Huawei's failure to provide pre-suit notice of alleged infringement of any Huawei Patent-in-Suit.

38.     Any issues of fact that are determined to constitute issues of law are hereby designated as such, and vice versa.  Verizon also incorporates by reference the contested issues raised in its pending motions.

- **Huawei's Statement Regarding Issues to be Decided by the Court**

1.     Huawei reserves the right to object to the language and substance of any proposed instructions and questions on the issues of obviousness.

2.      Huawei contends that any limitations on claim scope under the doctrine of equivalents requires determination by the Court, should not be submitted to the jury, and the jury should not be advised of the defense.

3.      Huawei contends that all issues related to Huawei's claims for post-trial issues such as ongoing royalties, exceptional case, enhanced damages, attorney's fees, post and pre-trial interest, and post-trial damages require determination by the Court.

4.      Huawei contends that all issues related to Verizon's equitable defenses require determination by the Court, should not be submitted to the jury, and the jury should not be advised of the defenses.

5.      Huawei contends that whether Verizon has proven by clear and convincing evidence that the asserted claims of Huawei's '982 Patent are invalid under 35 U.S.C. § 101 requires determination by the Court.

6.      Huawei contends that whether Huawei has proven by clear and convincing evidence that Verizon Asserted Claims are invalid under 35 U.S.C. § 101 requires determination by the Court.

7.      Huawei contends that whether Swiss law applies to Verizon's breach of RAND counterclaim requires determination by the Court.

8.      Huawei contends that the scope of each party's contractual obligations under RAND requires determination by the Court.

9.      Huawei contends that whether Huawei had a duty to disclose patent and/or patent application numbers to the ITU-T requires determination by the Court.

10.     Huawei contends that if the Court determines there is a duty to disclose patents and/or patent application numbers to the ITU-T, the scope of that duty requires determination by the Court.

- **Verizon's Statement Regarding Issues to be Decided by the Court**

1.     Whether the asserted patents claim patentable subject matter under 35 U.S.C. §101 is to be decided by the Court, but the factual underpinnings should be decided by the jury.

2.     Verizon's inequitable conduct defense should be resolved by the Court, but the factual underpinnings including materiality and intent should be decided by the jury.

3.     Verizon does not object that its other equitable defenses should be resolved by the Court, and tried by the Court to the extent facts are reasonably disputed.

4.     Whether this is an exceptional case is to be decided by the Court.

## VII.   LIST OF WITNESSES AND DEPOSITION DESIGNATIONS

Pursuant to the Court's Second Amended Docket Control Order (Dkt. No. 275) the parties exchanged initial deposition designations on March 22, 2021.  The parties exchanged objections to initial deposition designations and counter-designations on April 8, 2021.  The parties exchanged objections to counter-designations and cross-designations on April 15, 2021.  Verizon served objections to Huawei's cross-designations on April 22, 2021.  Huawei served objections to Verizon's cross-designations on April 29, 2021.  The designations are attached herein as described below:

- Huawei's Initial Deposition Designations are attached as Exhibit A.

- Verizon's Objections to Huawei's Initial Deposition Designations and Verizon's Counter Designations are attached as Exhibit B.

- Huawei's Objections to Verizon's Counter Deposition Designations and Huawei's Cross Deposition Designations are attached as Exhibit C.

- Verizon's Objections to Huawei's Cross Deposition Designations are attached as Exhibit D.

- Verizon's Initial Deposition Designations are attached as Exhibit E.

- Huawei's Objections to Verizon's Initial Deposition Designations and Huawei's Counter Deposition Designations are attached as Exhibit F.

- Verizon's Objections to Huawei's Counter Deposition Designations and Verizon's Cross Deposition Designations are attached as Exhibit G.

- Huawei's Objections to Verizon's Cross Deposition Designations are attached as Exhibit H.

The Parties will meet and confer regarding their respective objections in order to strive to resolve all objections and issues prior to presenting them to the Court.

Pursuant to the Court's Second Amended Docket Control Order (Dkt. No. 275) the parties have filed trial witness lists and objections.  These lists are attached herein as detailed below:

- Huawei's Witness List is attached as Exhibit I.

- Verizon's Objections to Huawei's Witness List is attached as Exhibit J.

- Huawei's Rebuttal Witness List is attached as Exhibit K.

- Verizon's Second Amended Witness Lists is attached as Exhibit L.

- Verizon's Rebuttal Witness List is attached as Exhibit M.

- Huawei's Objections to Verizon's Second Amended Witness List and Rebuttal Witness List is attached at Exhibit N.

## VIII.   LIST OF EXHIBITS

Huawei's exhibit list is attached as Exhibit O. Verizon's objections to Huawei's exhibit list is attached as Exhibit P. Verizon's exhibit list is attached as Exhibit Q.  Huawei's objections to Verizon's exhibit list is attached as Exhibit R.  The Parties will meet and confer regarding their respective objections, including exhibit numbering, in an effort to resolve all objections and issues prior to presenting them to the Court.

## IX.    LIST OF PENDING MOTIONS

| Docket Number | Motion |
|---|---|
| 250 | Verizon's Motion for Summary Judgment to Limit Pre-Suit Damages for Huawei's Failure to Comply with 35 U.S.C. 287. |
| 252 | Huawei's Motion to Strike and Exclude Certain Portions of the Expert Testimony of Dr. Paul Prucnal[1] |
| 253 | Verizon's Motion to Strike and Exclude the Testimony of Bruce Schofield |
| 254 | Huawei's Motion to Strike and Exclude in Part Opinions of Mr. Mark Lanning |
| 255 | Huawei's Motion for Partial Summary Judgment of No Invalidity Because Verizon Cannot Prove that Certain References are Prior |
| 256 | Huawei's Motion for Summary Judgment of Non-Infringement of U.S. Patent Nos. 8, 121, 111 and 8,983,288 |
| 258 | Huawei's Motion for Summary Judgment on Verizon's Unfair Competition Counterclaim |
| 260 | Verizon's Motion to Exclude the Testimony of James E. Malackowski |
| 261 | Huawei's Motion for Summary Judgment on Verizon's Counterclaim for Common Law Fraud |
| 262 | Huawei's Motion for Summary Judgment of Verizon's Breach of Contract Counterclaim |
| 263 | Huawei's Motion to Strike and Exclude Certain Portions of the Expert Testimony of David Djavaherian |
| 285 | Verizon's Motion to Exclude Expert Opinions of Justin R. Blok |
| 324 | Huawei's Motion to Seal the March 19, 2021 Hotline Hearing Transcript |

---

[1] Huawei's arguments in this motion regarding Dr. Prucnal's opinions on the validity of Verizon's asserted patents are moot in light of Huawei's recent decision to drop its invalidity defenses under 35 U.S.C. §§ 102, 103, and 112.

| 361 | Joint Notice of Agreed Motions *In Limine* |
| 366 | Verizon's Motions *in Limine* |
| 367 | Huawei's Motions *in Limine* |
| 395 | Huawei's Motion to Strike New Declaration of Dr. Mondini and the Related Portion of Verizon's Sur-Reply |

## X.    LENGTH OF TRIAL

Huawei: Huawei estimates the probable length of trial will be 5 days.  Huawei requests 12 hours per side for direct, cross, and rebuttal examination.  Huawei further requests 60 minutes per side for voir dire, and 45 minutes per side for an opening statement, and 45 minutes per side for closing arguments.

Verizon: Verizon requests 16 hours per side for direct, cross, and rebuttal examination.  Verizon further requests 30 minutes per side for *voir dire*, 30 minutes per side for opening statements, and 45 minutes per side for closing arguments.

## XI.    CERTIFICATIONS

The undersigned counsel for each of the parties to this action does hereby certify and acknowledge the following:

1.      Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders;

2.      The parties have complied with discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.[2]  The parties have stipulated

---

[2]  This representation is subject to any matters addressed in pending motions and/or objections.

and moved this Court on various issues altering discovery limitations, which have been approved by this Court.

3.      Each exhibit in the Lists of Exhibits herein:

        (a)     is in existence;

        (b)     is numbered; and

        (c)     has been disclosed and shown to opposing counsel.

DATED:  June 9, 2021

Respectfully submitted,

**CALDWELL CASSADY & CURRY**

*/s/ Jason D. Cassady*
Bradley W. Caldwell
Texas Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas Bar No. 24059636
Email: acurry@caldwellcc.com
Justin Nemunaitis
Texas Bar No. 24065815
Email: jnemunaitis@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848

Gregory P. Love
Texas Bar No. 24013060
greg@lovetrialfirm.com
**LOVE LAW FIRM**
P.O. Box 948
Henderson, Texas 75653
Telephone: (903) 212-4444

David M. Barkan
California Bar No. 160825
barkan@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**ATTORNEYS FOR PLAINTIFF HUAWEI TECHNOLOGIES CO. LTD., AND COUNTERCLAIM DEFENDANTS HUAWEI TECHNOLOGIES USA, INC., AND FUTUREWEI TECHNOLOGIES, INC**.

*/s/ Deron R. Dacus*
Charles Verhoeven

44

charlesverhoeven@quinnemanuel.com
Brian Mack
brianmack@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN**
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone: 415-875-6600
Fax: 415-875-6700

Patrick Curran
patrickcurran@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN**
111 Huntington Ave, Suite 520
Boston, Massachusetts 02199
Telephone: 617-712-7100
Fax: 617-712-7200

Kevin Hardy
kevinhardy@quinnemanuel.com
Deepa Acharya
deepaacharya@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN**
1300 I Street NW, Suite 900
Washington, D.C.  20005
Telephone: 202-538-8000
Fax: 202-538-8100

Deron R. Dacus
State Bar No.  00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

**ATTORNEYS FOR VERIZON
COMMUNICATIONS INC., VERIZON
BUSINESS NETWORK SERVICES, INC.,
VERIZON ENTERPRISE SOLUTIONS,
LLC, CELLCO PARTNERSHIP D/B/A
VERIZON WIRELESS, VERIZON DATA
SERVICES LLC, VERIZON BUSINESS
GLOBAL LLC, VERIZON SERVICES
CORP., AND VERIZON PATENT AND
LICENSING INC.**

45

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document served on all counsel via electronic

mail on June 9, 2021.

/s/ Jason D. Cassady
Jason D. Cassady


## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal

pursuant to the Protective Order submitted in this case.

/s/ Jason D. Cassady
Jason D. Cassady